**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **HIGH POINT SARL,** ) | |
| ) | |
| **Plaintiff and Counterclaim** ) | |
| **Defendant,** ) | **CIVIL ACTION** |
| ) | |
| v. ) | **Case No. 09-2269-CM-DJW** |
| ) | |
| **SPRINT NEXTEL CORP., et al.,** ) | |
| ) | |
| **Defendants and** ) | |
| **Counterclaimants.** ) | |

**MEMORANDUM AND ORDER**

Pending before the Court is Sprint's Motion to Compel Production of High Point's Licensing Communications (ECF No. 544). Pursuant to Fed. R. Civ. P. 37(a), Sprint seeks an order compelling High Point to produce its patent licensing communications with third parties. High Point objects to producing its confidential, unconsummated licensing negotiations with third parties beyond the initial offer letters, arguing that the information is not relevant, cumulative, inadmissible under Fed. R. Evid. 408, as well as its disclosure being highly prejudicial to High Point. For the reasons discussed below, the motion is granted.

**I.      BACKGROUND**

High Point SARL (hereinafter, "High Point") filed this patent infringement action against Sprint Nextel Corporation; Sprint Spectrum L.P.; SprintCom, Inc.; Sprint Communications Company L.P.; Sprint Solutions, Inc.; APC PCS, LLP; APC Realty and Equipment Company, LLC; and STC Two LLC (collectively referred to as "Sprint"). High Point alleges that Sprint's cellular telephone networks infringe upon four United States patents assigned to High Point. The patents and their foreign counterparts are directed to telecommunications equipment for a wireless cellular

telephone network. High Point seeks a declaratory judgment of infringement, a permanent injunction against Sprint, a declaration that this is an exceptional case under 35 U.S.C. § 285 and an award of attorney's fees, actual damages not less than a reasonable royalty under 35 U.S.C. § 284, treble damages under 35 U.S.C. § 284, and interest and costs under 35 U.S.C. § 284. Sprint has asserted a counterclaim for declaratory judgment of invalidity and/or non-infringement as to each of the four patents.

High Point acquired the patents-in-suit and their foreign counterparts on March 13, 2008. On March 17, 2008, High Point sent initial letters offering licenses in those patents to several telecommunications companies in the United States and abroad. When the offers to license the patents were not accepted, this and other litigation ensued.

Throughout the course of discovery, High Point has refused to disclose its third-party licensing and/or settlement correspondence beyond the initial letters of offers to license. Sprint has requested the correspondence (or information regarding or contained within the correspondence) via three avenues: its requests for production,[1] its interrogatories,[2] and its deposition topics for High Point's Rule 30(b)(6) deposition.[3] High Point consistently asserted objections to each of these requests. As a representative example, Document Request No. 9 of Sprint's First Set of Requests for Production requests that High Point produce:

---

[1] Defendants-Counterclaimants' First Set of Requests for Production to High Point SARL (ECF No. 544-3) (Document Request Nos. 9, 74, and 75).

[2] Defendants-Counterclaimants' First Set of Interrogatories to High Point SARL (ECF No. 544-5) (Interrogatory Nos. 8 and 15).

[3] Notice of Deposition of High Point SARL Pursuant to Rule 30(b)(6) (ECF No. 544-6) (Topic Nos. 2, 4, 9, and 21).

> All documents evidencing or referencing communications with third parties regarding High Point's Asserted Patents, the Related Patents, the Related Applications and the Corresponding Applications, including, but not limited to, all opinions and/or evaluations of High Point's Asserted Patents, the Related Patents, the Related Applications and the Corresponding Applications, all negotiations regarding obtaining or granting of a license to High Point's Asserted Patents, the Related Patents, the Related Applications and the Corresponding Applications or discussion of third party products involving the Technology at Issue.[4]

High Point responded in pertinent part to Document Request No. 9 as follows:

> High Point objects to this request to the extent it seeks production of third-party confidential documents or documents that High Point is under an obligation not to disclose pursuant to a non-disclosure agreement, protective order, or other legal restriction. High Point objects to providing information about communications or negotiations with potential licensees where those communications or negotiations have not yet culminated in a license agreement. Such information would be inadmissible under Rule 408, and discovery of such information before the culmination of a license would make it highly difficult, if not impossible, to continue such communications or negotiations. For cases where High Point's discussions have not culminated in a license, High Point objects to providing information other than its initial letters to potential licensees.[5]

The Court construes this representative discovery response as making three objections: (1) confidentiality, (2) inadmissibility pursuant to Federal Rule of Evidence 408, and (3) prejudicial effect. High Point also questions the relevance of such communications and asserts in its response brief that such requests are cumulative of other previously produced discovery. The parties conferred as required by Federal Rule of Civil Procedure 37(a)(1) and D. Kan. Rule 37.2 to no avail. This discovery dispute remains unresolved. Sprint filed the instant motion on February 8, 2011,

---

[4] Defendants-Counterclaimants' First Set of Requests for Production to High Point SARL (ECF No. 544-3) at 8.

[5] Plaintiff's and Counterclaim-Defendant's Responses to Defendants-Counterclaimants' First Set of Requests for Production (ECF No. 544-4) at 9.

3

taking issue with the grounds upon which High Point is withholding disclosure of information and materials responsive to these requests.

## II. DISCUSSION

In response to Sprint's motion, High Point generally asserts four stand-alone objections to the discoverability of the requested information: (1) confidentiality; (2) cumulativeness; (3) relevance; and (4) inadmissibility pursuant to the policy considerations of Federal Rule of Evidence 408. The Court addresses each in turn. In addition to those stand-alone objections, and interrelated with (3) and (4), is High Point's prejudicial effect objection. The Court will consider prejudicial effect with regard to both relevance and Fed. R. Evid. 408, because harm to the disclosing party may outweigh a "marginal" relevance, precluding discovery, and the prejudice entailed by a chilling effect on negotiations is a consideration underlying Rule 408.

### A. Confidentiality Objection

High Point's objection that the requests seek confidential business information is unavailing for two reasons. First, "[a] concern for protecting confidentiality does not equate to a privilege."[6] In fact, "it is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery."[7] The federal rules simply provide no basis upon which High Point may refuse to disclose relevant, nonprivileged discovery merely because the discovery request seeks information it considers confidential.

---

[6]*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 1246216, at *2 (D. Kan. Apr. 27, 2007).

[7]*Dean v. Anderson*, No. 01-2599-JAR, 2002 WL 1377729, at *3 (D. Kan. June 6, 2002) (citing *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 689-90 (D. Kan. 2000); *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 196 (D. Kan. 1996)).

Second, there is a confidentiality agreement in place in this case that can be used to protect High Point and any alleged third-party infringers. "Confidentiality concerns in many cases may be addressed with an appropriate protective order."[8] On facts similar to those surrounding this discovery dispute, the Eastern District of Missouri recently noted "'other courts have routinely recognized that license agreements relating to the patent-in-suit, and entered into in connection with settlement, are discoverable' despite a plaintiff's confidentiality concerns."[9] That court held that the confidentiality agreement already in place was sufficient to allay such concerns. Similarly, here, the Court notes that a protective order[10] has already been entered, which serves to protect the confidentiality of certain documents and information produced in this case. The Court therefore overrules High Point's confidentiality objection.

### B.     Cumulativeness Objection

The Court is not persuaded by High Point's argument that Sprint's requests for its licensing correspondence is cumulative of previously disclosed discovery in this case or discovery that High Point is under a continuous obligation to produce. The Court is required by Federal Rule of Civil Procedure 26(b)(2)(C) to "limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative."[11]  Thus, in certain circumstances, if

---

[8]*Dean*, 2002 WL 1377729, at *3 (citing *Mackey*, 167 F.R.D. at 196).

[9]*Pandora Jewelry, LLC v. Bajul Imports, Inc.*, No. 1:10-CV-135 SNLJ, 2011 WL 976623, at *2 (E.D. Mo. Mar. 17, 2011) (quoting *Wyeth v. Orgenus Pharma Inc.*, No. 09-3235, 2010 WL 4117157 (D.N.J. Oct. 19, 2010)).

[10]ECF No. 169, amended by ECF No. 498.

[11]Fed. R. Civ. P. 26(b)(2)(C).

5

one discovery request seeks information duplicative of another, the Court must limit the discovery even if both are relevant requests.

Though High Point claims to have agreed to produce discovery relating to each of Sprint's stated purposes for requesting the licensing correspondence, High Point has not sufficiently shown that all of the information sought would be cumulative of other discovery requests. High Point in effect concedes this point by thus far zealously protecting the material contained in its licensing correspondence.

The Court agrees with Sprint that High Point may not "pick and choose" which aspects of the requested discovery it will produce, if such discovery is in fact relevant and nonprivileged as required by Federal Rule of Civil Procedure 26(b)(1). High Point has not shown that Sprint's requests for third-party licensing correspondence are unreasonably cumulative of other discovery already produced or to be produced. The Court will now consider relevance and privilege as they relate to High Point's third-party licensing correspondence.

### C. Relevance Objection

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery. It provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[12] Furthermore, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[13] To reach the issue of relevance, the Court must first separate High Point's relevance objection from its objection based upon Fed. R. Evid. 408.

---

[12] Fed. R. Civ. P. 26(b)(1).

[13] *Id.*

6

### i. Separation of Relevance and Rule 408-Based Objections

The Court notes initially that, although High Point concedes that Federal Rule of Evidence 408 does not govern discovery (or, therefore, dictate the outcome of a relevance inquiry), High Point nonetheless intertwines its relevance and Federal Rule of Evidence 408 arguments. The two must be considered separately.

High Point's logic in coupling the two objections appears to be as follows: the communications would be inadmissible at trial pursuant to Rule 408, therefore, their discovery is not calculated to lead to admissible evidence, therefore, the requested discovery is irrelevant. This logic conflates whether the requests may be admitted at trial with whether they must be disclosed in the discovery process as a party forms its position for trial. As the text of Federal Rule of Civil Procedure 26(b)(1) makes clear, *admissibility* and *discoverability* are not one and the same, and in fact the standards are far from identical. Because the standard for the former is "much more encompassing than the latter," an objection based on "inadmissibility at trial is not a proper objection to discovery in a civil case."[14] Though the Court need not reach the question of whether the licensing correspondence would be admissible at trial, High Point *has* put in issue the question of whether the public policy underlying Fed. R. Evid. 408, that is, a policy in favor of settling disputes out of court, should be a valid basis on which to withhold the licensing correspondence.

In sum, although High Point intertwines these two objections, the Court will consider each in turn. As discussed in further detail below, the Court will treat High Point's Rule 408-based objection as claiming a "settlement privilege" that has been recognized by some courts as

---

[14]*Orleman v. Jumpking, Inc.*, No. 99-2522-CM, 2000 WL 1114849, at *2 (D. Kan. July 11, 2000).

7

prohibiting discovery, and the Court will consider it separately from the discovery's relevance to this litigation.

### ii.     Relevance Standard

Having separated the Rule 408 objection from the relevance objection, the Court now considers the relevance of third-party licensing correspondence to the instant action between High Point and Sprint. The federal discovery rules broadly construe relevance, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[15] A discovery request "should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action."[16] When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that (1) the requested discovery does not come within the broad scope of relevance as defined under Rule 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure.[17]

### iii.    Whether Licensing Communications Between High Point and Third-parties is Relevant

Because the requested discovery relates to the courses of action followed by similarly situated alleged infringers of the patents-in-suit, the Court finds that these discovery requests seek, on their face, information relevant to the claims or defenses of the parties. Thus, High Point has the

---

[15]*McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 643 (D. Kan. 2003) (citation omitted).

[16]*Snowden v. Connaught Labs., Inc.*, 137 F.R.D. 336, 341 (D. Kan. 1991).

[17]*Id.* (citation omitted); *see also DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 684 (D. Kan. 2004).

burden of showing the requested discovery does not come within the broad scope of relevance or is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure. The Court is not persuaded by High Point's conclusory statement that, because most of the correspondence regards its attempts to license its patents outside the United States, the requests are not relevant because its "patent claims in foreign jurisdictions are different, infringement positions based on other[']s systems are necessarily different, and foreign patent law governing infringement and validity is different."[18] High Point has not shown that, for example, the defense of a foreign company operating a similar telecommunications network under a similar alleged infringement threat would be irrelevant to Sprint's defenses in this case.

High Point next argues that the requests seek irrelevant communications because the communications cannot be considered for one of Sprint's admitted reasons for seeking the requested materials or information. Though it may be true, as High Point suggests, that the licensing correspondence would be inadmissible to calculate a reasonable royalty,[19] the discovery of the correspondence is nonetheless relevant, for other purposes, to the claims or defenses of the parties. Sprint asserts that the requests are relevant to the availability and terms of potential licenses, the valuation of the patents, and the reasoning expressed by third parties accepting or declining licenses in the patents-in-suit.

---

[18] High Point's Mem. in Opp. to Sprint's Mot. to Compel Produc. of High Point's Licensing Communications (ECF No. 566) at 12.

[19] *See Clear with Computers, LLC v. Bergdorf Goodman, Inc.*, 753 F. Supp. 2d 662, 663 (E.D. Tex. 2010) ("[S]ome courts have held that settlement licenses are admissible to prove a reasonable royalty while other courts have held that they are not.").

Other courts have found a patent holder's correspondence with third parties related to licensing negotiations to be relevant in patent infringement suits.[20] Courts have found it relevant to ascertaining the extent of liability, formulating an appropriate litigation strategy,[21] infringement and validity of the patents at issue,[22] whether prior licenses are comparable, and calculation of reasonable royalty.[23]

High Point argues that the Court should limit discovery to correspondence pertaining to consummated licensing agreements. The Court is not persuaded by this argument. As noted by the court in *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, requiring the disclosure of only consummated agreements would "fail[] to acknowledge that licensing and infringement positions may be taken and discarded or otherwise changed over time based on a myriad of extrinsic factors

---

[20]*See, e.g.*, *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582 (N.D. Cal. 2008) ("There are a multitude of ways in which Phoenix's correspondences with third parties related to license negotiations could be relevant to this litigation," including helping Wells Fargo to "ascertain the extent of its liability to Phoenix and to formulate an appropriate litigation strategy."); *Conopco, Inc. v. Warner-Lambert Co.*, No. Civ. A. 99-101(KSH), 2000 WL 342872, at *6 (D.N.J. Jan. 26, 2000) (holding that licensing correspondence, because it could contain admissions against interest, "may be considered by a court when construing the scope of a patent and are relevant to the issues of infringement and validity"). *See also MSTG, Inc. v. AT&T Mobility LLC*, No. 08 C 7411, 2011 WL 841437, at *3 (N.D. Ill. Mar. 8, 2011) (finding communications, including settlement negotiations with third-party licensees of patents at issue relevant to whether prior licenses are comparable to patents in suit in calculating a reasonable royalty); *Tyco Healthcare Grp. LP v. E-Z-EM, Inc.*, Civ. A. No. 2:07-CV-262 (TJW), 2010 WL 774878, at *2 (E.D. Tex. Mar. 2, 2010) (recognizing a shift in approach toward discoverability of settlement negotiations and compelling production of settlement negotiations of patent license agreement between the defendant and a third party).

[21]*Phoenix Solutions*, 254 F.R.D. at 582.

[22]*Conopco,* 2000 WL 342872, at *6.

[23]*MSTG,* 2011 WL 841437, at *3.

10

that could well be relevant to another party accused of infringement."[24] The Court agrees, especially where, as here, there have been no successful executions to date. Thus, High Point's offer to disclose consummated agreements rings hollow.

Additionally, the Court is hard pressed to distinguish High Point's licensing agreements from its settlement agreements on the facts of the record before the Court. The two are interrelated in that High Point seeks compensation either for the use or for the infringement of the patents-in-suit. Furthermore, absent consummated agreements of either variety, the correspondence of either licensing or settlement negotiations may be the best reflection of the value of the patents.[25] The Court finds persuasive Sprint's argument that *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*[26] is distinguishable on these grounds.

Nor has High Point shown that the discovery sought has merely "marginal" relevance. Having determined that the requests seek relevant documents or information, the Court considers whether, as High Point argues, the relevance is so "marginal" as to be outweighed by the harm to High Point if disclosed. Courts have found that "when the requests approach the outer bounds of

---

[24]*Phoenix Solutions*, 254 F.R.D. at 582.

[25]*See Clear with Computers*, 753 F. Supp. 2d at 664 (finding that settlement agreements were likely "the only licenses of the patents-in-suit, making an accurate understanding of them more important," and it had not been shown that there were "other non-litigation licenses that reflect[ed] the value of the invention"); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) (prior license agreement that resulted from litigation can be a "most reliable" evidence of hypothetical reasonable royalty); *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*, No. 1:05CV955, 2011 WL 2470460 (M.D.N.C. June 20, 2011) (concluding that in general settlement-derived licenses are relevant to the question of a reasonable royalty at the discovery stage).

[26]No. 05-2164-MLB-DWB, 2007 WL 1246216, at *5 (D. Kan. Apr. 27, 2007) (compelling production of settlement agreements, but finding preceding settlement negotiations not relevant and likely to have "chilling effect" on settlement negotiations).

11

relevance and the information requested may only marginally enhance the objectives of providing information to the parties or narrowing the issues, the Court must then weigh that request with the hardship to the party from whom the discovery is sought."[27] High Point, however, has not shown that the requested discovery to be nearing the "outer bounds" of relevance. The relevance of the information sought to Sprint's case is far from being marginal. Furthermore, though some harm may be occasioned by the disclosure of this correspondence, the Court finds this harm is of the sort incidental to full disclosure and the equal factual footing envisioned by the federal discovery process.

### D.     Fed. R. Evid. 408-Based Objection

As noted above, the Court treats High Point's objection based upon Fed. R. Evid. 408 as an assertion of a version of a "settlement privilege" that would protect its unconsummated settlement and/or licensing negotiations. Though High Point argues that it is *not* asserting a legal privilege over negotiations, it seems to be doing just that by disputing whether it must disclose such negotiations. As noted above, the Court does not find that a Rule 408-based objection can be logically intertwined with a relevance objection. And because the Court finds the discovery sought relevant and non-cumulative, the only remaining grounds on which the discovery may be withheld is by some privilege that protects it from disclosure.[28]

Federal Rule of Evidence 408 precludes the admission of evidence of compromise and offers to compromise. Under the Rule, the following evidence is not admissible when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to

---

[27]*Carlson Companies, Inc. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1088 (D. Minn. 1974).

[28]*See* Fed. R. Civ. P. 26(b)(1).

12

impeach through a prior inconsistent statement or contradiction:

> (1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.[29]

The Advisory Committee notes to Rule 408 state as a basis for the rule the "promotion of the public policy favoring the compromise and settlement of disputes." The Sixth Circuit has recognized the existence of a "settlement privilege" based upon Fed. R. Evid. 408 by expanding the protection afforded by that rule based on its underlying policy considerations.[30] The courts recognizing such a privilege agree with High Point that the disclosure of such settlement communications could have a chilling effect on the settlement of disputes.[31] Some courts have found the "prejudicial effect" of producing settlement-related discovery can be addressed by entry of a protective order limiting the parties' use and disclosure of the information.[32]

Furthermore, as the court noted in *Heartland Surgical Speciality Hospital LLC v. Midwest Division, Inc.,* "courts have reached widely divergent conclusions about whether or not a federal

---

[29]Fed. R. Evid. 408.

[30]*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003).

[31]*Software Tree, LLC v. Red Hat, Inc.,* No. 6:09-CV-097, 2010 WL 2788202, at *4 (E.D. Tex. June 24, 2010); *Mondis Tech., Ltd. v. LG Elecs., Inc.*, Civ. A. Nos. 2:07–CV–565–TJW–CE, 2:08–CV–478–TJW, 2011 WL 1714304, at *5 (E.D. Tex. May 4, 2011).

[32]*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 1246216, at *4 (D. Kan. Apr. 27, 2007); *DIRECTV,* 224 F.R.D. at 687.

13

settlement privilege exists."[33] In *Heartland*, the court, in the absence any controlling Tenth Circuit authority on the issue, declined to recognize a federal settlement privilege under either Fed. R. Evid. 408 or under Fed. R. Evid. 501.[34] The Court has found no such direction from the Tenth Circuit since the *Heartland* case, and thus will similarly not recognize such a settlement privilege here. The Court therefore overrules High Point's objections to discovery of its third-party licensing communications based upon Fed. R. Evid. 408.

## III. EXPENSES

Under Fed. R. Civ. P. 37(a)(5)(A), if a motion to compel is granted, then the court after providing an opportunity to be heard, must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses, including attorney's fees, incurred in making the motion. But the court must not order this payment if the opposing party's response or objection was substantially justified.[35] Sprint does not request expenses in its motion to compel. Upon review of the briefing, the Court finds that all of High Point's objections, except its confidentiality objection, to the discovery requests were substantially justified.

Finding that High Point's confidentiality objection was not substantially justified, the Court orders High Point to show cause why the Court should not order it to pay a portion of Sprint's reasonable expenses incurred in filing the motion to compel, as a sanction pursuant to Fed. R. Civ.

---

[33] *Heartland*, 2007 WL 1246216, at *4.

[34] *Id.* (relying on reasons outlined in *Matsushita Elec. Ind. Co. v. Mediatek, Inc.*, No. C-05-3148-MMC, 2007 WL 963975, at *2-3 (N.D. Cal. Mar. 30, 2007) and *White v. Kenneth Warren & Son, Ltd.*, 293 F.R.D. 364, 368 (N.D. Ill. 2001)). *See also In re Urethane Antitrust Litig.,* No. 04-MD-1616-JWL, 2009 WL 2058759, at *4 (D. Kan. July 15, 2009) (finding that plaintiffs had not met their burden of establishing that a settlement privilege existed to shield documents from discovery).

[35] Fed. R. Civ. P. 37(a)(5)(A)(ii).

P. 26(g)(3) for asserting a discovery objection not warranted by existing law.[36]

## IV. CONCLUSION

The Court overrules High Point's confidentiality, cumulativeness, relevance, and Rule 408 -based objections to disclosure of its third party licensing correspondence. Having overruled each of those objections, the Court finds that Sprint is entitled to an order compelling production of the licensing communications between High Point and third party alleged infringers, as requested in Sprint's discovery requests.

**IT IS THEREFORE ORDERED** that Sprint's Motion to Compel Production of High Point's Licensing Communications (ECF No. 544) is granted. **Within thirty (30) days** of the date of this Memorandum and Order, High Point shall serve its responses to Sprint's various discovery requests requesting High Point's third-party licensing communications.

**IT IS FURTHER ORDERED** that High Point show cause in writing, **no later August 12, 2011**, why the Court should not order it to pay a portion of Sprint's reasonable expenses incurred in filing the motion to compel, as a sanction pursuant to Fed. R. Civ. P. 26(g)(3) for asserting a discovery objection not warranted by existing law.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 29th day of July, 2011.

s/ David J. Waxse<br>David J. Waxse<br>U. S. Magistrate Judge

cc: All counsel and *pro se* parties

---

[36] Counsel for all parties should read *Mancia v. Mayflower Textile Servs., Co.*, 253 F.R.D. 354 (D. Md. 2008), wherein Magistrate Judge Grimm provides an in-depth analysis of Fed. R. Civ. P. 26(g), the consequences of a violation of that rule and the Court's obligation to sanction violations of the rule.