IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **HIGH POINT SARL,** | ) | |
| | ) | |
| **Plaintiff and Counterclaim** | ) | **CIVIL ACTION** |
| **Defendant,** | ) | |
| | ) | **Case No. 09-2269-CM-DJW** |
| **v.** | ) | |
| | ) | |
| **SPRINT NEXTEL CORPORATION,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants and** | ) | |
| **Counterclaimants.** | ) | |

<u>**MEMORANDUM AND ORDER**</u>

Pending before the Court is High Point SARL's Motion to Compel Defendants to Answer

Forty (40) Interrogatories (ECF No. 526).  Pursuant to Fed. R. Civ. P. 37(a), High Point SARL

("High Point") seeks an order to compel Defendants to answer Fourth Interrogatory Nos. 26-29,

Fifth Interrogatory Nos. 30-31, and any additional interrogatories High Point may propound

within the limit. Defendants contend that they are not required to answer any further

interrogatories because High Point's existing interrogatories contain discrete subparts that, when

added together, exceed the number of interrogatories allowed.  As explained below, High Point's

motion to compel is granted in part and denied in part.

I.      **BACKGROUND**

High Point filed this patent infringement case against Sprint Nextel Corporation, Sprint

Spectrum L.P., SprintCom, Inc., Sprint Communications Company L.P., Sprint Solutions, Inc.,

APC PCS LLC, APC Realty and Equipment Company, LLC, and STC TWO LLC (collectively

referred to as "Sprint") on December 29, 2008 in the United States District Court for the Eastern

1

District of Virginia, alleging that Sprint's public mobile telephone network infringes upon High

Point's network architecture and communication management patents. This case was transferred

to the District of Kansas on May 18, 2009.

As of the time of this motion was filed, High Point had served the following 31

interrogatories on Sprint:  First Set of Interrogatories Nos. 1–12; Second Set of Interrogatories

Nos. 13-16; Third Set of Interrogatories Nos. 17-20; Fourth Set of Interrogatories Nos. 21-29;

and Fifth Set of Interrogatories Nos. 30-31.  Beginning with High Point's Fourth Interrogatory

No. 26 and continuing through Fifth Interrogatory No. 31, Sprint objected to these interrogatories

as exceeding the 40-interrogatory limit set by the Scheduling Order.  According to Sprint, High

Point exceeds the interrogatory limit because the following interrogatories (the "disputed

interrogatories") should be counted as more than one:  First Interrogatory Nos. 3, 10-11; Third

Interrogatory Nos. 17-20; and Fourth Interrogatory Nos. 23-24.  High Point filed this motion to

compel Sprint to answer Fourth Interrogatory Nos. 26 through Fifth Interrogatory No. 31.

## II.     SUMMARY OF THE PARTIES' ARGUMENTS

High Point claims that this dispute concerns nothing more than how to count

interrogatories, and that each of its interrogatories (numbering thirty-one by its count) seek

information closely related to a singular, common theme.  Although High Point recognizes that

the interrogatory limit includes discrete subparts, it argues that subparts are discrete when they

are marginally related to the interrogatory, while subparts seeking details concerning a common

theme count as a single interrogatory.

Under High Point's reading of this Court's precedent, the inquiry is not whether the

interrogatory *can* be broken down into separate questions, but whether the subparts are logically

related to and necessary components of the primary question. Under this interpretation, High Point argues it is within the forty interrogatory limit and therefore Sprint must answer all its interrogatories.

Sprint urges the Court to deny High Point's motion for failure to adequately confer under D. Kan. Rule 37.2. Sprint argues that High Point's correspondence merely sought compliance and stated the common theme test, and did not explain how each of their disputed interrogatories met that standard nor address any of Sprint's general or specific objections.  According to Sprint, High Point's support memorandum constitutes the first time Sprint has seen or heard many of High Point's arguments. As a result, Sprint disputes the sufficiency of High Point's attempts to confer, comprised of two exchanges of letters and a phone call, under the District of Kansas' local rules, given the scope and complexity of the disagreement.

Sprint also argues that High Point has taken the "common theme" test out of context. The proper test, according to Sprint, is that subparts are separate questions if they can stand alone. Because common subject matter does not necessarily equate to a common theme, subparts need not be unrelated to be discrete. By this standard, Sprint claims it acted in good faith when it answered forty-six interrogatories by their count, six more than required by the scheduling order. Sprint does not contend that all of High Point's interrogatories contain subparts, but those that do are only marginally related and easily severable from the main question.

In sum, High Point argues that *none* of the disputed interrogatories contain any subparts that should be counted separately, while Sprint argues that the disputed interrogatories contain subparts that should *all* be counted separately.

### III.    DUTY TO CONFER

Before a party can file a motion to compel, the Federal Rules of Civil Procedure and this district's local rules require the would-be movant to confer with opposing counsel in a good faith effort to resolve the dispute without court action.[1]  Fed. R. Civ. P. 37(a)(1) requires a motion to compel to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." District of Kansas Rule 37.2 further defines this duty to confer, stating that "a 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party." Instead, the parties in good faith must "converse, confer, compare views, consult, and deliberate or in good faith attempt to do so."[2]

Although Sprint is correct that a single letter cannot constitute a reasonable effort to confer under D. Kan. Rule 37.2,[3] the circumstances here indicate the existence of *two* sets of detailed written correspondence, in addition to a phone call, aimed at resolving this dispute. The correspondence submitted shows ample comparison and deliberation to justify a finding that High Point fulfilled its conference requirement, as their correspondence with Sprint provided twelve pages of point-by-point analysis of the disputed interrogatories and its interpretation of the applicable law. Sprint also refused to answer the disputed interrogatories on three separate

---

[1] *Hock Foods, Inc. v. William Blair & Co., L.L.C.*, No. 09-2588-KHV, 2011 WL 884446, at *1 (D. Kan. Mar. 11, 2011); *see also Williams v. Bd. of Cnty. Comm'rs of Unified Gov't of Wyandotte Cnty. & Kan. City, Kan.*, 192 F.R.D. 698, 699-700 (D. Kan. 2000).

[2] D. Kan. Rule 37.2.

[3] *See Williams*, 192 F.R.D. at 700 ("A single letter between counsel which addresses the discovery dispute, however, does not satisfy the duty to confer.").

occasions.  The Court therefore finds that High Point has made a reasonable effort to confer with Sprint prior to filing its motion, as required by Fed. R. Civ. P. 37(a) and D. Kan. Rule 37.2.

## IV.    DISCUSSION

### A.    Counting of Interrogatory Subparts

Federal Rule of Civil Procedure 33(a)(1) imposes a numerical limit on the number of allowable interrogatories. Under this rule, a party may serve a maximum of twenty-five written interrogatories upon any other party, including discrete subparts, unless the Court or stipulation from the opposing party allows more.[4]  The Scheduling Order entered in this case on March 15, 2010, limits the number of interrogatories a party can serve to forty, inclusive of subparts.[5]

Discrete subparts are included in the interrogatory limit to prevent abuse, but remain problematic because they are often difficult to identify.  As this Court first noted in *Williams v. Board of County Commissioners of the Unified Government of Wyandotte County and Kansas City, Kansas*:

> Interrogatories often contain subparts.  Some are explicit and separately numbered or lettered, while others are implicit and not separately numbered or lettered. Extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a), or in a scheduling order, by rendering it meaningless unless each subpart counts as a separate interrogatory. On the other hand, if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted or requests for increases in the numerical limit might become automatic.[6]

---

[4] *See* Fed. R. Civ. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.").

[5] Scheduling Order (ECF No. 228) at 7, §2(e) ("No party shall serve more than 40 interrogatories, including all discrete subparts, to any other party.").

[6] *Williams*, 192 F.R.D. at 701.

As noted by this Court in *Williams,* and subsequent decisions in *Swackhammer v. Sprint Corp. PCS*,[7] *Johnson v. Kraft Foods North America, Inc.*,[8] and *Semsroth v. City of Wichita*,[9] the advisory committee has provided the following guidance as to when subparts should count as separate interrogatories:

> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.[10]

*Federal Practice and Procedure* commentators Wright, Miller and Marcus have construed the advisory committee's guidance to mean that "an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question," while an interrogatory with "subparts inquiring into discrete areas is likely to be counted as more than one for purposes of the limitation."[11] In *Williams, Swackhammer*, *Johnson,* and *Semsroth,*

---

[7] 225 F.R.D. 658, 664 (D. Kan. 2004).

[8] No. 05-2093-JWL-DJW, 2006 WL 3143930, at *1 (D. Kan. Oct. 31, 2006).

[9] No. 06-2376-KHV-DJW, 2008 WL 1924945, at *2 (D. Kan. Apr. 28, 2008).

[10] Fed. R. Civ. P. 33(a) advisory committee's note (1993 Amendments). *See also* Advisory Committee Note, 146 F.R.D. 401, 675-76 (Fed. 1993).

[11] 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2168.1, at 261 (2d ed. 1995).

this Court has applied these "common theme" standards in determining whether interrogatories exceed the numerical limit.[12]

Because subpart counting is inherently difficult, this Court has frequently ruled on such disputes,[13] and those cases contain instructive examples. For example, in *Cardenas v. Dorel Juvenile Group, Inc.*, the defendant's third interrogatory asked the plaintiffs:

> If you contend that the Child Restraint System was defectively designed, state with particularity each and every element of the design which you contend was defective, how such design was defective and the manner in which the injuries were caused, contributed to and/or permitted to occur as the result of each alleged design defect.[14]

The plaintiffs refused to answer this question, claiming that this one interrogatory comprised more than forty separate interrogatories, exceeding the number allotted to the parties. While the court recognized that the interrogatory spanned multiple alleged design defects and contained three discrete subparts,[15] the court ultimately disagreed with the plaintiffs and held that the question constituted a single interrogatory surrounding a common theme.[16] Not all "identity"

---

[12] *Williams*, 192 F.R.D. at 701; *Swackhammer*, 225 F.R.D. at 664-5; *Semsroth*, 2008 WL 1924945, at *2.

[13] *See e.g., Semsroth,* 2008 WL 1924945; *Johnson*, 2006 WL 3143930, at *2; *Cardenas v. Dorel Juvenile Grp., Inc.*, 231 F.R.D. 616, 619-20 (D. Kan. 2005); *Swackhammer,* 225 F.R.D. at 664-5; *Beach v. City of Olathe, Kan.*, 203 F.R.D. 489, 492 (D. Kan. 2001).

[14] *Cardenas,* 231 F.R.D. at 617.

[15] *Id.* at 619-620 ("While this interrogatory could be construed as having three discrete subparts (i.e., (1) identify the element of each alleged design defect, (2) state how such element of design was defective, and (3) identify the manner in which each defect caused any alleged injuries), the fact that it seeks this information about multiple alleged design defects does not turn it into multiple interrogatories. This interrogatory does not contain multiple subparts that discuss various, unrelated topics.").

[16] *Id.*

questions necessarily relate to a common theme however. This Court found in *Swackhammer* that an interrogatory asking for the identity of executives who have been disciplined but not terminated for certain specified actions enumerated in subparts (a) through (e) of the interrogatory should be counted as five distinct interrogatories.[17]

Another instructive example comes from *Semsroth*, where this Court ruled that an interrogatory oriented around a common theme that contains instructions for the answering party on the type of information to be furnished in its answer does not automatically split a single interrogatory into multiples.[18] For instance, the instructions to one of the disputed interrogatories in *Semsroth* provided that the term "identify," when used in reference to a person, meant to state the person's name, address, telephone number, present employer, and grade or title.[19] The instructions also provided that when the term "identify" or "describe" is used in reference to an event or occurrence, that meant to describe the event; the date of the event; identify the persons who participated in and/or witnessed the event and those present when the event occurred; and identify documents that discuss or comment upon the event.[20] The *Semsroth* court did not agree

---

[17] *Swackhammer*, 225 F.R.D. at 663-65 ("For example, subpart (a) asks Defendant to identify executives who have been disciplined but not terminated for failing to act when the executive had knowledge that a subordinate had provided confidential bid information to a vendor. Subpart (b) asks Defendant to identify executives disciplined but not terminated for soliciting and/or encouraging vendor-paid gifts and entertainment…[ultimately, the] disputed Fourth Interrogatory No. 8 . . . contains five subparts that are not related to a common theme, and that it should therefore be counted as five separate interrogatories.").

[18] *Semsroth*, 2008 WL 1924945, at *6.

[19] *Id.*

[20] *Id.*

that these instructions automatically converted a single question into multiple interrogatories.[21]

Applying Sprint's reasoning in the instant case to this question would classify this interrogatory

as three discrete questions, because it asks "who are they," "what do they do," and "where do

they do it." This argument, however, was rejected by this Court in *Semsroth*.

With these standards and examples in mind, this Court makes the following specific

findings with regard to the disputed interrogatories:

High Point's **Interrogatory No. 3** asks Sprint to:

> Identify all Infrastructure Products used in the Sprint CDMA Network since
> December 1, 2002 by supplier, manufacturer, model name, model number,
> version number, all other known names and designations, geographic locations,
> the number of units, and dates of use.

Sprint argues that this question constitutes four interrogatories, because it asks "what are they,"

"where have they been," "how many have there been," and "when were they used."  High Point

argues that the question constitutes one interrogatory, related to ascertaining the structure of the

hardware that makes up Sprint's allegedly infringing network.

The Court agrees with High Point. Under *Williams,* High Point's delineation of the

details that should be included in Sprint's response does not turn this interrogatory into separate

questions. The specific details concern a common theme – Sprint's hardware used in its CDMA

Network since December 1, 2002.  As such, this question constitutes <u>one</u> interrogatory.

**Interrogatory No. 10** requests that Sprint provide the following information:

> With respect to each of the CDMA Standards, describe the dates and
> circumstances under which Sprint first began operating any portion of the Sprint
> CDMA Network in compliance with that standard, including when Sprint first
> began using frame relay, ATM, or other statistically multiplexed protocol for
> voice calls in the network infrastructure.

---

[21] *Id.*

Sprint argues that this question constitutes two interrogatories, as the compliance with a CDMA standard is not necessarily dependent on using frame relay, ATM, or other statistically multiplexed protocols.  High Point argues that the question should be counted as one, since the question is narrowly tailored to ascertain when Sprint migrated to a CDMA-compliant standard, and the protocols listed are merely examples of CDMA packetization methods.

This constitutes <u>two</u> interrogatories. The Court agrees with Sprint's assessment and High Point's own tacit acknowledgement that the two subparts (e.g. compliance with a standard and use of the listed protocols) are not *necessarily* subsumed within the same common theme.

**Interrogatory No. 11** asks Sprint to:

> Identify all revenue received by Sprint directly or indirectly from operation of the Sprint CDMA Network (including service revenue and product sales revenue) on a monthly basis since December 1, 2002, with such revenue broken down by each category of revenue separately tracked by Sprint, including by type of traffic (e.g. voice versus data), by geographic location, and by supplier or manufacturer of the Infrastructure Products.

Sprint claims that this question asks four discrete interrogatories because it asks Sprint to carve up a huge volume of data in four unrelated ways. High Point stresses that the common theme is Sprint's monthly revenue, and that the listed categories are more than marginally related. The Court agrees with High Point. The common theme of this question – revenue from Sprint's CDMA operations – is clear. That it asks for this revenue data to be provided in different ways does not serve to separate it into multiple inquiries. Thus, this question constitutes <u>one</u> interrogatory.

High Point's **Interrogatory No. 17** seeks the following information:

> For each Infrastructure Product that was part of the Sprint CDMA Network at any time on or after December 29, 2002, identify the dates of installation and of

> removal (if applicable) of each Infrastructure Product in the Sprint CDMA Network, each such installed Infrastructure Product being identified by supplier, manufacturer, model name, model number, version number, any internal Sprint designation including those shown on SPRINT_HP0010165-66 (including cascade identification, cell number, switch identification, BSC identification, and BSC SSEO Standard name), all other known names and designations, and geographic location.

Sprint argues that this constitutes four interrogatories, because it asks "when was it added," "when was it removed," "what is it," and "where has it been." High Point argues that this question orients around the common theme of the dates of use of potentially infringing equipment. The Court agrees with High Point. Asking for dates of installation and dates of removal does not multiply the inquiry. Notably, Sprint correctly points out that this question has a similar construction to interrogatory No. 3, which this Court counted as one. This question similarly constitutes one interrogatory.

**Interrogatory No. 18** asks Sprint:

> For each Infrastructure Product that was part of the Sprint CDMA Network at any time on or after December 29, 2002, identify all software and software updates installed on or loaded onto each Infrastructure Product in the Sprint CDMA Network, including the software name, supplier, manufacturer, version number, revision number, all other known names and designations, and installation date or date of update.

Sprint argues that this constitutes two, if not four interrogatories, because it asks for a comprehensive identification of software and software updates, followed by the dates of each upgrade. High Point argues that the dates relate to the common theme of software update identification. The Court agrees with High Point, and notes that this too is similar to the construction of interrogatory No. 3. Because it follows a discernable common theme of software and updates installed on infrastructure products, this question thus constitutes one interrogatory.

**Interrogatory No. 19** seeks the following:

11

> For each Infrastructure Product that was part of the Sprint CDMA Network at any time on or after December 29, 2002, identify all hardware components installed on each Infrastructure Product in the Sprint CDMA Network, including but not limited to the hardware components identified on Attachment A, each such hardware component being identified by the hardware component name, supplier, manufacturer, version number, all other known names and designations, and dates of installation and of removal (if applicable).

High Point argues that this counts as one interrogatory because it relates to the identification of hardware components used by Sprint in conjunction with their Infrastructure Products. Sprint argues that this constitutes three interrogatories, because it asks "what are they," "when was it removed," and "when was it installed." However, this question is similar in construction to Nos. 3 and 17, and for similar reasons constitutes <u>one</u> interrogatory.

**Interrogatory No. 20** asks Sprint to:

> Identify each BSC, MSC, and MGW in the current Sprint CDMA Network by supplier, manufacturer, model name, model number, version number, any internal Sprint designation including those shown on SPRINT_HP0010165-66 (including switch identification, BSC identification, and BSC SSEO standard name), date of installation in the network, all other known names and designations, and geographic location.

Sprint argues that this question asks three discrete interrogatories: "what are they, where are they installed, and where are they now"? High Point insists that the common theme is self-apparent – the identity of core infrastructure products which are used in conjunction with one another to transmit voice data.

The Court agrees with High Point because Sprint's use of *they* in its briefing seems to concede that the BSC, MSC, and MGW components are interrelated. Therefore, the mere inclusion of identification categories does not serve to split this question into multiple interrogatories. Because both sides agree that these three pieces of equipment work together, and

that this question requests the same information on all three components, this question thus constitutes <u>one</u> interrogatory.

**Interrogatory No. 23** requests the following information:

For each Infrastructure Product ever used in the Sprint CDMA Network, provide the following:
(a) The identity of the Infrastructure Product (including supplier, manufacturer, model name, model number, version number, and all other known names and designations);
(b) The purchase date;
(c) The date of first use in Sprint's CDMA network;
(d) The purchase price; and
(e) The identity of all documents evidencing the purchase of the Infrastructure Product.

Sprint argues that there are at least three discrete interrogatories, and as many as five interrogatories contained within No. 23, because it asks "what are they," "when were they purchased," "for how much," "what documentation is there," and "when were they first used."

However, while Sprint concedes that the purchase date, purchase price, and documentation of purchase are all related enough to potentially count as one, it also argues that the date of use and identity of these products are somehow discrete enough to justify separating the interrogatory into multiple questions. The Court disagrees. This interrogatory should be counted as <u>one</u> under the common theme of identifying Sprint's purchase of infrastructure products deployed throughout its accused network, as High Point claims.

**Interrogatory No. 24** asks Sprint to:

Identify, by month since 1996:
(a) The number of subscribers or customers;
(b) Dollar revenues from sales;
(c) Gross profits;
(d) Net profits;
(e) Actual profits;
(f) Projected profits; and

13

(g) The costs and/or expenses included in any calculation of gross, net, actual, and projected profits from the sale of voice services using Sprint's CDMA Network, and the sale of any other product or services, including Data Services, to subscribers or customers of voice services over Sprint's CDMA Network.

Sprint argues that this interrogatory should be split into five, because it asks for (1) monthly customer counts, (2) monthly revenues, (3) monthly gross/net/actual profits and costs/expenses, (4) projected monthly profits and costs/expenses, and (5) the monthly sale of any other products or services to subscribers, all over a fifteen year period. High Point opposes the split, claiming that it should be counted as one under the common theme of profit derived from Sprint's operation of its accused network.

The Court disagrees with both parties, and finds that the interrogatory actually consists of two interrogatories. This question, in essence, asks Sprint for (1) the number of customers (by month) since 1996, and (2) monthly financial data since 1996, broken down by the categories specified in (b)-(g).

Sprint also argues that interrogatory Nos. 30-31 contain discrete subparts. Though High Point did not address Sprint's objections to these interrogatories specifically, this Court has an interest in preventing additional motion practice.[22]

**Interrogatory No. 30** requests that Sprint provide the following information:

---

[22] Sprint argues that High Point's failure to submit a copy of Sprint's objections and responses to High Point's Fifth Set of Interrogatories (Nos. 30-31) requires denial of the motion under D. Kan. Rule 37.1(a) and *Fulcher v. City of Wichita*, No. 06-2095-EFM-DJW, 2008 WL 5136613, at *1 (D. Kan. Dec. 8, 2008). While Sprint is correct that High Point's Exhibits A through L attached in support of its motion did not include a copy of its Fifth Interrogatories (Nos. 30-31), the Court finds this to be a technical oversight. Sprint has provided the Court with a copy of its Objections and Responses to High Point's Fifth Set of Interrogatories (ECF No. 542-2).

For each Motorola SDU that were ever sold to or used in the Sprint CDMA Network since December 29, 2002, provide the following:

(a) The identity of each such Motorola SDU by model number, and all other known names and designations;

(b) The purchase date of each such Motorola SDU;

(c) The date of first use in Sprint's CDMA Network of each such Motorola SDU;

(d) The purchase price of each such Motorola SDU;

(e) The geographic location of each such Motorola SDU;

(f) The identification of each cell station, BTS, BCS, MSC, and MGW that was used with each such Motorola SDU;

(g) The software code version originally installed on each such Motorola SDU, including the identification of all software updates or revisions to each such Motorola SDU;

(h) The identity of documents sufficient to show the purchase of each such Motorola SDU by Sprint; and

(i) The identity of the product specifications and customer requirements for each such Motorola SDU.

High Point does not indicate what its common theme for this question is, while Sprint argues that this interrogatory consists of at least eight discrete subparts. However, the Court recognizes that this interrogatory is similar to many of the previous interrogatories, in that it asks for information about a common theme, with a delineation of the various "slices" of information that should be provided about it. While the interrogatory is awkwardly phrased, this question should nonetheless be counted as <u>one</u> interrogatory.

**Interrogatory No. 31** requests that Sprint:

Identify and describe in detail, including all facts and application of law to fact, the following:

(a) Whether Sprint contends that Sprint was licensed under the High Point Patents to use Motorola Equipment in any Sprint CDMA Cellular Network;

(b) The identification of any license agreement granting Sprint rights under the High Point Patents to use Motorola Equipment in any Sprint CDMA Cellular Network including but not limited to a description of whether Sprint contends any such licenses were express or implied, oral or written, the licensor, the date of the license, and the terms of any such license;

(c) All facts and circumstances supporting any contention that there was a license granted to Sprint under the High Point Patents to use Motorola Equipment in a Sprint CDMA Cellular Network including to the extent Sprint contends that

15

any such license was implied, all facts and circumstances that support or relate to the contention that am implied license was granted;

(d) The persons at Sprint most knowledgeable about any alleged licenses to the High Point Patents to Sprint to use Motorola Equipment in a Sprint CDMA Cellular Network and those involved in any alleged licensing of the High Point patents;

(e) When Sprint first became aware of any license to Sprint to the High Point Patents to use Motorola Equipment in a Sprint CDMA Cellular Network;

(f) Whether Sprint contends that there was exhaustion of any of the High Point Patents with respect to the use of Motorola Equipment in a Sprint CDMA Cellular Network and all facts and circumstances that support or relate to any such contention; and

(g) To the extent that Sprint contends that Sprint has an implied license to the High Point Patents to use Motorola Equipment in a Sprint CDMA Cellular Network, a statement of whether Sprint contends that the Motorola Equipment can only be used in a way that infringes on the High Point Patents and whether Motorola's Equipment has any use other than that for use in a Sprint CDMA Cellular Network and a description of those other uses.

Sprint claims that this interrogatory comprises at least seven discrete subparts. High Point does not indicate their common theme in their brief.  However, unlike the previous interrogatory, the Court cannot readily ascertain a common theme.   Moreover, the mere fact that all of the questions vaguely relate to licensing would not make this extremely lengthy and detailed interrogatory a single inquiry, even if High Point had asserted a common theme. This Court cannot allow the "common theme" test to swallow the rule limiting interrogatory requests.

As a result, the Court finds that this question consists of <u>eight</u> discrete interrogatories; parts (a)-(f) are each one interrogatory, while part (g) consists of two interrogatories.  This brings the total of interrogatories propounded by High Point to their limit of forty.

### B.    Sprint's General Objections

High Point also argues that Sprint's general objections to Interrogatory Nos. 26 through 31 are meritless and urges the Court to consider them waived.  It asserts that Sprint did not make any meaningful effort to show application of these theoretical objections to any specific

interrogatory, nor did Sprint provide any evidence to support its general objections to the interrogatories.  In response to the motion, Sprint argues that it substantiated its general objections by specifically applying each objection in its responses to each individual interrogatory.

Reviewing the relevant two sets of interrogatories, the Court notes that Sprint asserts eleven general objections, as well as twelve objections to definitions and instructions in its response to High Point's Fourth Set of Interrogatories.  Sprint asserts twelve general objections to High Point's Fifth Set of Interrogatories, eleven which are identical to the general objections to the Fourth Set.  In its objections to the Fifth Set, Sprint incorporates by reference its objections to the definition and instructions to High Point's First and Fourth Sets of Interrogatories. It further sets forth six additional objections to definitions used in High Point's Fifth Set of Interrogatories.

All of Sprint's general objections are listed "to the extent" that the objection applies to any of the set of interrogatories.  The final general objection, attempting to avoid later repetition, incorporates all of the general objections and inserts them into each specific interrogatory response "as if fully set forth therein." Sprint's definitional and instructional objections follow a similar pattern.  While some of the general objections are specifically mentioned in later interrogatories, many of them make no further appearance within the interrogatories. For example, Sprint's general objection No. 2 to High Point's Fourth Set of Interrogatories objects on the basis of "attorney-client privilege, work-product doctrine, accountant-client privilege, and/or certain other privileges, doctrines, or immunities." Of the nine interrogatories included in the Fourth Set, only Interrogatory No. 26 has a specific objection based upon attorney-client

privilege and work product.  Sprint does not assert a specific objection based upon *any* privilege for the rest of the interrogatories.  Moreover, Sprint provides no additional support for its claim of privilege in its general objections, specific objections, or response to the motion to compel.

This Court has set forth its position on general objections in *Johnson v. Kraft Foods North America, Inc.*:

> This Court has on several occasions disapproved of the practice of asserting a general objection "to the extent" it may apply to particular requests for discovery. The Court has characterized these types of objections as "worthless for anything beyond delay of the discovery." Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery. Thus, this Court has deemed such ostensible objections waived or declined to consider them as objections at all.[23]

Sprint, as the party resisting discovery, has the burden of supporting all of its objections, including its general objections.[24]  Other than its supernumerary objection, which the Court discussed above, Sprint has failed to meet its burden of substantiating its general objections to High Point's interrogatories.   In all of Sprint's general objections, it objected to the interrogatories "to the extent" that the objection may apply to a specific interrogatory.  Sprint made no meaningful effort to demonstrate the application of any of the general objections to a specific interrogatory.  Rather, Sprint simply incorporated by reference its general objections to each interrogatory.  The Court can only conclude that, except for the supernumerary objection,

---

[23] 236 F.R.D. 535, 538 (D. Kan. 2006).

[24] *Allianz Ins. Co. v. Surface Specialties, Inc.*, No. 03-2470-CM-DJW, 2005 WL 44534, at *2 (D. Kan. Jan. 7, 2005) (citing *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 686 (D. Kan. 2000)).

all of Sprint's general objections are hypothetical and meaningless. The Court therefore deems Sprint's general objections to High Point's Fourth and Fifth Set of Interrogatories to be waived.[25]

In addition, the Court finds Sprint's assertion of numerous, repetitive, boilerplate, incorporated-by-reference general objections to be a violation of Fed. R. Civ. P. 26(g). Under Rule 26(g)(1), every discovery response or objection must be signed by at least one attorney of record or by the pro se party. By signing, the attorney or party "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the discovery response or objection is "consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law."[26] The signature also certifies that the response or objection is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."[27] Finally, the signature certifies that the response or objection is neither unreasonable nor unduly burdensome, considering the amount in controversy and the significance of the issues at stake in the case.[28] If the certification violates Rule 26(g) "without substantial justification," then "the court, on motion or on its own, *must* impose an appropriate sanction on the signer, the

---

[25] *See Ace USA v. Union Pac. R.R. Co., Inc.*, No. 09-2194-KHV-DJW, 2010 WL 4629920, at *3 (D. Kan. Nov. 8, 2010) (deeming general objections waived).

[26] Fed. R. Civ. P. 26(g)(1)(B)(i).

[27] Fed. R. Civ. P. 26(g)(1)(B)(ii).

[28] Fed. R. Civ. P. 26(g)(1)(B)(iii).

party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."[29]

The 1983 advisory committee comments to Rule 26(g) elaborate on the attorney's duties under the Rule.  They provide that "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37."[30]  Rule 26(g) "is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions."[31]  It "provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection."[32]  If an attorney fails to meet the standards set forth in Rule 26(g), then Rule 26(g) mandates that sanctions be imposed and the nature of those sanctions "is a matter of judicial discretion to be exercised in light of the particular circumstances."[33]

Considering the number of times this Court has made it clear that general objections such as those asserted by Sprint are invalid and inappropriate,[34] it appears to the Court that Sprint did

---

[29] Fed. R. Civ. P. 26(g)(3) (emphasis added).

[30] Fed. R. Civ. P. 26(g) advisory committee's note (1983 amendments).

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *See Pro Fit Mgmt., Inc. v. Lady of Am. Franchise Corp.*, No. 08-CV-2662 JAR/DJW, 2011 WL 939246, at *2-3 (D. Kan. Feb. 25, 2011) (cautioning the parties that the use of general objections may be a violation of Fed. R. Civ. P. 26(g) in that such objection is not "warranted by existing law");  *Anderson v. United Parcel Serv., Inc.,* Civ. A. No. 09-2526-KHV, 2010 WL 4822564, at *12-13 (D. Kan. Nov. 22, 2010) (sanctioning party for making unsubstantiated

not stop and consider the legitimacy of these general objections that it repeatedly asserted to High Point's interrogatories. The Court further finds that Sprint's purpose in continuing to reassert these general objections was for the improper purpose of causing unnecessary delay of discovery. Sprint therefore appears to be in violation of Rule 26(g) for asserting general objections not warranted by existing law and interposed for the improper purpose of causing unnecessary delay of discovery. To deter the parties from continuing to assert numerous, repetitive, boilerplate, incorporated-by-reference "to the extent" general objections to interrogatories, the Court will impose Rule 26(g) sanctions upon Sprint in the amount of $2,000.[35] As the Court stayed payment of sanctions on High Point's first Rule 26(g) violation, the Court will likewise stay payment of Sprint's sanctions to High Point. Payment of the sanctions is stayed pending completion of this case and further order of the Court. If there are no further violations of Rule 26(g) by Sprint during this litigation, the sanction order will be vacated.

---

specific and general objections)*; Ace,* 2010 WL 4629920, at *2-3 (finding general objections to documents requests violated Fed. R. Civ. P. 26(g)).

[35] Fed. R. Civ. P. 26(g) provides that the sanction be imposed "on the signer, the party on whose behalf the signer was acting, or both." In order to deter the parties from continuing to assert numerous, repetitive, boilerplate, incorporated-by-reference "to the extent" general objections, the Court finds that the sanction should be imposed on the party and not the specific attorneys who signed the interrogatories containing the general objections.

**C.      Sprint's Specific Objections**

Finding all of Sprint's general objections to be waived, the Court next considers the specific objections Sprint (1) preserved by asserting in its initial objections to the interrogatories, and (2) continued to reassert and support in its response to the motion to compel.   Based upon the parties' briefing with respect to the specific objections, the Court will address Sprint's specific objections to Fourth Interrogatory Nos. 26-29 together and then address the specific objections to Fifth Interrogatory Nos. 30 and 31.

### 1.      *Fourth Interrogatory Nos. 26-29*

High Point's Fourth Interrogatory Nos. 26 through 29 asks Sprint to provide the following information:

> Identify any patent licensing agreements to which you are a party that cover or include telecommunications networks or services, including without limitation CDMA or voice-over-internet-protocol, including:
> (a) the names of the parties to each agreement;
> (b) the period covered by each agreement;
> (c) the royalty amounts or royalty rates specified by each agreement;
> (d) the royalty base; and
> (e) the numbers of the patents included in each agreement.
> This interrogatory includes, without limitation, licensing agreements where you were a licensor or licensee. (Interrogatory No. 26)
>
> For each installed hardware component identified in response to Interrogatory No. 19, identify whether the component is enabled in circuit-switch or packet-switch configuration, including each type of packet-switch configuration implemented in the Sprint Network. (Interrogatory No. 27)
>
> For each installed hardware component identified in response to Interrogatory No. 19, identify the corresponding software for operating the component by vendor, name, version, and all other known names or designations, including the dates for each software upgrade relating to each component. (Interrogatory No. 28)

> For each Infrastructure Product installed in the Sprint Network at any time on or after December 29, 2002, identify the date of purchase for each geographic location in the Sprint Network. (Interrogatory No. 29)

In its initial responses, Sprint objected that the interrogatories are vague, ambiguous, overbroad, unduly burdensome, and seek irrelevant information.   Sprint also asserted an attorney-client privilege objection in response to Interrogatory No. 26.   It objected to Interrogatory Nos. 28 and 29 as duplicative and cumulative of other interrogatories.   Sprint did not reassert its attorney-client privilege objection in its response to High Point's motion to compel and the Court considers that objection abandoned.[36]

### a.      Vague and Ambiguous Objections

As the party objecting to the interrogatories as vague or ambiguous, Sprint has the burden to shown such vagueness or ambiguity.[37]   In its response to High Point's motion, Sprint identifies the phrases it perceives as being vague or ambiguous. These phrases include "telecommunications networks," "telecommunications services," (No. 26) "circuit-switch or packet-switch configuration," (No. 27) "dates for each software upgrade relating to each component," (No. 28) "Sprint Network," and "date of purchase for each geographic location" (No. 29). Sprint argues that these phrases, under their broadest possible reading, would include areas of Sprint's business irrelevant to the patent infringement issue in this case.   Specifically, Sprint argues that the term "telecommunications networks" is vague and ambiguous because it could encompass several different networks, including Sprint's CDMA Network for handling

---

[36] *See Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004) (when an objection or privilege is initially raised but not relied upon in response to the motion to compel, the court will deem the objection or privilege abandoned.).

[37] *McCoo*, 192 F.R.D. at 694 (citing *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996)).

23

data, its iDEN network, and its wireline network, which are unrelated to Sprint's CDMA Network for handling voice calls at issue in this case. The term "telecommunications . . . services" raises similar problems, because telecommunications services could be interpreted to include features such as the provision of ringtones, free 911 calling, and three-way calling, all of which are irrelevant to this litigation. "Circuit-switch configuration" and "packet-switch configuration" lack a common meaning. "Sprint Network" is ambiguous in that it and could be understood to include portions of Sprint's networks not at issue in this case. Finally, for the phrase "date of purchase for each geographic location," Sprint claims it is an unintelligible phrase and unable to determine what information High Point is requesting.

High Point defends the wording of its interrogatories, arguing that they are neither vague nor ambiguous and Sprint should apply the ordinary meaning to the words and phrases in the context of this litigation. It further argues that Sprint has not provided any evidence to support its contention the terms and phrases are vague or ambiguous.

A party responding to discovery requests should exercise use common sense and reason to determine the meaning of words and phrases, and apply the ordinary meanings whenever possible.[38] If necessary to clarify its answers, the responding party may include any reasonable definition of the term or phrase at issue.[39]

Here, Sprint has sufficiently met its burden to show the terms and phrases "telecommunications networks," "telecommunications services" (No. 26), "dates for each software upgrade relating to each component" (No. 28), "Sprint Network," and "date of purchase

---

[38] *Id.*

[39] *Id.*

for each geographic location" (No. 29) could be considered vague and ambiguous.  Sprint's vague and ambiguous objections to Interrogatory Nos. 26, 28 and 29 are sustained.  **<u>Within fourteen (14) days of the date of this Memorandum and Order,</u>** High Point shall provide Sprint with its definitions to the terms Sprint has objected to as vague and ambiguous.  If after receiving High Point's definitions Sprint is still is unclear as to what information is being requested, then it should identify the ambiguity, explain the interpretation chosen and why, and answer the interrogatory based upon its stated interpretation.

For the terms "circuit-switch or packet-switch configuration" contained in Interrogatory No. 27, the Court finds that Sprint has failed to show that those terms or phrases are vague and ambiguous.  High Point specifically defined these terms in the definitions section of its Fourth Set of Interrogatories.  Sprint has not shown how these defined terms are otherwise vague and ambiguous.  Sprint's vague and ambiguous objection to Interrogatory No. 27 is overruled.

<em>b.      Overbreath and Irrelevance Objections</em>

Sprint objects that all the interrogatories are overly broad and seek irrelevant information for the same reasons the interrogatories are vague and ambiguous, i.e., the inclusion of undefined terms that do not have common meanings.  As the Court is ordering High Point to provide definitions for many of the terms Sprint has objected to, this should resolve Sprint's overly broad and irrelevance objections based upon lack of defined terms.

Sprint also objects that Interrogatory Nos. 26-28 are overly broad because they are unlimited as to time period.  The Court agrees with Sprint that Interrogatory No. 26 has an unlimited time frame and scope as written.  The Court will therefore sustain Sprint's overly broad objection to the temporal scope of this interrogatory.  Unless the parties agree on a

different time period, the Court finds that Interrogatory No. 26 should be limited to patent licensing agreements in effect on or after December 1, 2002 – the date identified in Interrogatory No. 1.  Sprint shall answer the interrogatory with the temporal limitation.  Sprint has asserted similar objections to Interrogatory Nos. 27-28 because they are "unlimited as to time."  These objections are overruled.  Interrogatory Nos. 27-28 contain an internal reference to Interrogatory No. 19, which is explicitly limited to infrastructure products that were part of Sprint's CDMA network on or after December 29, 2002.

Sprint objects to Interrogatory No. 26 to the extent it requests information related to "voice-over-internet-protocol" as not seeking relevant information.  It argues that it is a blatant attempt to obtain material relevant to another case pending before this Court, *Sprint v. Vonage*, D. Kan. Case No. 05-2433, and this information is irrelevant to Sprint's CDMA Network for handling voice calls.  High Point does not address this issue and the Court does not find the relevancy of the request for "voice-over-internet protocol" readily apparent.  Sprint's relevance objection to Interrogatory No. 26 is sustained to the extent the interrogatory asks for information related to "voice-over-internet-protocol."

Sprint also objects to Interrogatory No. 28 as seeking information that is not relevant.  It argues that the dates for software upgrades on hardware components that have not been accused of infringement are irrelevant.  High Point does not discuss this argument in its reply.  The Court tends to agree with Sprint that information on software upgrades to hardware components that have not been accused of infringement does not appear to seek relevant information.  Sprint's relevancy objection to Interrogatory No. 28 is sustained to the extent the interrogatory requests

information on software upgrades on hardware components not accused of infringement in this action.

Additionally, Sprint argues that Interrogatory No. 29 asks for dates of purchase for infrastructure products, which are not relevant except as to unlicensed Nortel products. Sprint's argument as to the broad irrelevance of equipment purchase outside this limited scope is persuasive, especially given High Point's failure to address the relevance of this interrogatory in its reply brief. Sprint's relevancy objection to Interrogatory No. 29 is sustained. Sprint shall answer Interrogatory No. 29 with the following modification: "For each *unlicensed Nortel product* installed in the Sprint Network at any time on or after December 29, 2002, identify the date of purchase for each *product and its* geographic location in the Sprint Network."

### c.   Undue Burden and Cumulative Objections

Sprint objects to Interrogatory Nos. 27 through 29 on the grounds that responding to these interrogatories is unduly burdensome. For Interrogatory No. 27, Sprint claims that the interrogatory calls for the configuration of hundreds of thousands of different hardware components. It argues that there is no benefit to High Point in obtaining this information because the configuration of each component is unnecessary for it to prove its claims. High Point only needs information on the few key components or major assemblies identified that allegedly infringe the patents-in-suit. Not only would this type of information be incredibly burdensome for Sprint to provide on a component level for every component in the CDMA Network, High Point has already obtained narrative explanation of the relevant information during 30(b)(6) depositions of Sprint. Because High Point has already obtained such information through a less burdensome approach, it would be cumulative, duplicative and overly burdensome to compel

Sprint to answer Interrogatory No. 27. Sprint generally refers the Court to the Rule 30(b)(6) deposition of Dwight E. Patton regarding protocols of bearer traffic in the accused Sprint network.

The Court has reviewed the pages of the Patton deposition filed,[40] but without specific references to the pages and lines that contain the testimony that would answer the interrogatory and an explanation of how that testimony answers the interrogatory, it cannot determine whether Interrogatory No. 27 is cumulative and duplicative. These objections are therefore overruled. Sprint also has not sufficiently shown how responding to this interrogatory would be unduly burdensome. As the party resisting discovery, Sprint has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to the interrogatory is unduly burdensome.[41] This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents or answer the interrogatory.[42] Any objections that discovery is unduly burdensome must contain a factual basis for the claim, and the objecting party must usually provide an "affidavit or other evidentiary proof of the time or expense involved" in responding to the discovery request.[43] Once this obligation is met, the court will then balance the burden on

---

[40] Patton Dep., Dec. 3, 2010, attached as Ex. G to Sprint's Mem. In Opp. (ECF No. 547-4).

[41] *Horizon Holdings, Inc. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002) (citing *Snowden v. Connaught Labs., Inc.*, 137 F.R.D. 325, 322 (D. Kan. 1991)).

[42] *Id.*

[43] *Hock Foods,* 2011 WL 884446, at *6 (quoting *Sonnino*, 220 F.R.D. at 653).

the interrogated party against the benefit to the discovering party of having the information.[44] "Discovery will be allowed unless the hardship imposed on the interrogated party is unreasonable compared to the benefits to be secured from the discovery."[45]

Sprint argues that Interrogatory No. 27 "calls for the configuration of hundreds of thousands of different hardware components" without further explanation or discussion. Sprint has not offered any supporting evidence detailing and explaining the nature of the burden in terms of time, money and procedure required to answer the interrogatory. Instead, Sprint argues that there would be little benefit to High Point in obtaining this information and that High Point only needs information on a few key components or major assemblies. This is not sufficient to sustain its objection. Sprint's unduly burdensome objection to Interrogatory No. 27 is overruled.

Sprint also asserts a similar unduly burdensome objection to Interrogatory Nos. 28, claiming that the interrogatory's request for identification of the software on every individual hardware component unnecessary and encompasses hundreds of thousands of hardware components. It argues that the dates of all upgrades of all accused components would be very burdensome. The software was upgraded numerous times and each upgrade could take months to propagate throughout the network. To date, High Point has not identified any specific software upgrades as being relevant to its infringement theories. Sprint cites to the Rule 30(b)(6) depositions of Jay Bluhm and Young Zhao.

High Point does not discuss this objection in its reply; however, Sprint nonetheless has

---

[44] *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2009 WL 959493, at *1 (D. Kan. Apr. 3, 2009).

[45] *Id.*

the burden to support its objection. The Court has reviewed the selected deposition cites provided by Sprint for the Bluhm and Zhao depositions[46] and finds that their testimony does not provide any specifics or explanation of how and why answering the interrogatory would be unduly burdensome. Their testimony also does not answer the interrogatory and thus does not make the interrogatory cumulative or duplicative. Sprint's unduly burdensome and cumulative objections to Interrogatory No. 28 are overruled.

For Interrogatory No. 29, Sprint argues that it is unduly burdensome because it requests information for tens of thousands of infrastructure products. Sprint references the Rule 30(b)(6) deposition of its witness Yarkovsky. The Court has reviewed the selected excerpts from the Yarkovsky deposition[47] and finds that his testimony does not provide any specifics or explanation of how and why answering the interrogatory would be unduly burdensome. His testimony also does not answer the interrogatory, but merely provides some information on the spreadsheet reports (Bates No. SPRINT_HP0010166) produced by Sprint, and is thus not cumulative or duplicative. Sprint's unduly burdensome and cumulative objections to Interrogatory No. 28 are overruled.

### 2. *Fifth Interrogatory No. 30*

**Interrogatory No. 30** requests that Sprint provide the following information:

For each Motorola SDU that were ever sold to or used in the Sprint CDMA Network since December 29, 2002, provide the following:

---

[46] Bluhm Dep., July 14, 2010, attached as Ex. E to Sprint's Mem. in Opp. (ECF No. 547-2);  Zhao Dep., June 29, 2010, attached as Ex. F to Sprint's Mem. in Opp. (ECF No. 547-3).

[47] Yarkovsky Dep., Jan. 27, 2010, attached as Ex. H to Sprint's Mem. in Opp. (ECF No. 547-5).

(a) The identity of each such Motorola SDU by model number, and all other known names and designations;

(b) The purchase date of each such Motorola SDU;

(c) The date of first use in Sprint's CDMA Network of each such Motorola SDU;

(d) The purchase price of each such Motorola SDU;

(e) The geographic location of each such Motorola SDU;

(f) The identification of each cell station, BTS, BCS, MSC, and MGW that was used with each such Motorola SDU;

(g) The software code version originally installed on each such Motorola SDU, including the identification of all software updates or revisions to each such Motorola SDU;

(h) The identity of documents sufficient to show the purchase of each such Motorola SDU by Sprint; and

(i) The identity of the product specifications and customer requirements for each such Motorola SDU.[48]

In its initial responses, Sprint objected that the interrogatories are vague, ambiguous, overbroad, and unduly burdensome. Sprint further objected to the interrogatory:

to the extent that "ever sold to . . . the Sprint CDMA Network" is vague, ambiguous, nonsensical for implying that the Sprint CDMA Network purchased items. Sprint further objects to this interrogatory as vague and ambiguous because "Sprint CDMA Network" is an undefined term and it is unclear how it is distinguished from the "Sprint CDMA Cellular Network" referenced elsewhere in the Interrogatories. Sprint further objects to this interrogatory as vague and ambiguous for incorporating the undefined terms "BCS" and "customer requirements." Sprint also objects to the language "used with" and "all software updates or revisions" as vague, ambiguous, overbroad, and unduly burdensome.[49]

In its response, Sprint argues that interrogatory subpart (b), which requests the purchase date of each Motorola SDU, is generally irrelevant if Motorola had a license to sell the product throughout the relevant time period. The Court agrees. High Point has not otherwise offered any argument why this information is relevant. Sprint's relevance objection to Interrogatory No. 30

---

[48] Ex. A to Sprint's Mem. in Opp. (ECF No. 542-2).

[49] *Id.*

is sustained.  Sprint need only answer subpart (b) of High Point's Interrogatory No. 30 for "each *unlicensed* Motorola SDU."

Sprint also argues that subpart (f), which seeks identification of each cell station, BTS, BCS, MSC, and MGW that was used with each such Motorola SDU, is objectionable in its use of the ambiguous phrase "used with."   It argues that this asks, in essence, for identifying information on the entire network operated by Sprint. In that subpart, High Point requests information on equipment far outside the scope of this actual litigation in an attempt to obtain irrelevant information it may find valuable in other contexts.  The Court agrees with Sprint that phrase "used with" is ambiguous with respect to subpart (f) of this interrogatory.  High Point shall provide Sprint with its definition of the phrase "used with" as it pertains to subpart (f) of Interrogatory No. 30.

As for subpart (g), Sprint argues that the relevancy of all software updates is questionable since information on updates which did not change the functionality of the equipment in a way related to the patents-in-suit is not relevant.  The Court agrees with Sprint that to the extent subpart (g) requests information on updates for software that did not change the functionality of the equipment related to the patents-in-suit, that subpart appears to seek information that is not relevant.  High Point has not otherwise made any argument in favor of its relevance.  The Court will therefore sustain Sprint's relevancy objection to subpart (g) of Interrogatory No. 30.  Sprint need only answer subpart (g) of High Point's Interrogatory No. 30 for software updates that changed the functionality of equipment related to the patents-in-suit.

Sprint additionally objects to High Point's definition of "Motorola SDU" because the definition includes any "Motorola Selection and Distribution Unit and/or Selector Distribution

Unit"— terms that are themselves vague, ambiguous, and undefined.  High Point does not

address this argument in the briefing.  The Court will sustain the vague and ambiguous objection

and order High Point to provide Sprint with a more descriptive definition of the term "Motorola

Selection and Distribution Unit and/or Selector Distribution Unit," as that term relates to

"Motorola SDU" used in Interrogatory No. 30.

### 3.   *Fifth Interrogatory No. 31*

**Interrogatory No. 31** requests that Sprint:

Identify and describe in detail, including all facts and application of law to fact,
the following:
(a) Whether Sprint contends that Sprint was licensed under the High Point Patents
    to use Motorola Equipment in any Sprint CDMA Cellular Network;
(b) The identification of any license agreement granting Sprint rights under the
    High Point Patents to use Motorola Equipment in any Sprint CDMA Cellular
    Network including but not limited to a description of whether Sprint contends
    any such licenses were express or implied, oral or written, the licensor, the
    date of the license, and the terms of any such license;
(c) All facts and circumstances supporting any contention that there was a license
    granted to Sprint under the High Point Patents to use Motorola Equipment in a
    Sprint CDMA Cellular Network including to the extent Sprint contends that
    any such license was implied, all facts and circumstances that support or relate
    to the contention that am implied license was granted;
(d) The persons at Sprint most knowledgeable about any alleged licenses to the
    High Point Patents to Sprint to use Motorola Equipment in a Sprint CDMA
    Cellular Network and those involved in any alleged licensing of the High
    Point patents;
(e) When Sprint first became aware of any license to Sprint to the High Point
    Patents to use Motorola Equipment in a Sprint CDMA Cellular Network;
(f) Whether Sprint contends that there was exhaustion of any of the High Point
    Patents with respect to the use of Motorola Equipment in a Sprint CDMA
    Cellular Network and all facts and circumstances that support or relate to any
    such contention; and
(g) To the extent that Sprint contends that Sprint has an implied license to the
    High Point Patents to use Motorola Equipment in a Sprint CDMA Cellular
    Network, a statement of whether Sprint contends that the Motorola Equipment
    can only be used in a way that infringes on the High Point Patents and

whether Motorola's Equipment has any use other than that for use in a Sprint CDMA Cellular Network and a description of those other uses.[50]

Sprint initially objected to Interrogatory No. 31 as vague and ambiguous. It also objected to the interrogatory as overbroad and unduly burdensome to the extent that it requests Sprint to "describe in detail, including all facts and application of law to fact" and seeks "all facts and circumstances." Sprint further objected to this interrogatory for incorporating "any contention" and requesting a determination in subpart (g) whether something "can only be used" in a particular way or "whether Motorola's Equipment has any use other than that for use in a Sprint CDMA Cellular Network."[51]

Sprint argues in its response to the motion that Interrogatory No. 31 is primarily objectionable because the question asks for "all facts and application of law to fact" for each listed subpart, and further, in subparts (c) and (f) demands information on "all facts and circumstances" supporting Sprint's contentions. This is the type of blanket requests that this Court has recognized as overly broad and unduly burdensome.

This Court has found interrogatories that ask a party to identify "each and every fact" or "all facts" supporting its allegations to be overly broad and unduly burdensome.

> Interrogatories should not require the answering party to provide a narrative account of its case. The court will generally find them overly broad and unduly burdensome on their face to the extent they ask for "every fact" which supports identified allegations or defenses. Interrogatories may, however, properly ask for the "principal or material" facts that support an allegation or defense. Interrogatories which do not encompass every allegation, or a significant number of allegations, of the Complaint, reasonably place upon the answering party "the duty to answer them by setting forth the material or principal facts." In addition,

---

[50] Ex. A to Sprint's Mem. in Opp. (ECF No. 542-2).

[51] *Id.*

34

interrogatories "which seek underlying facts or the identities of knowledgeable persons and supporting exhibits for material allegations" may possibly survive objections that they are overly broad or unduly burdensome.[52]

These "blockbuster" interrogatories require the responding party to provide the equivalent of a narrative of its entire case together with identification of virtually all supporting evidence for each and every fact.[53]  "Indiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action."[54]  Not all interrogatories that use the "each and every" language, however, are objectionable.  An interrogatory that asks for a party to identify "each and every element of the design" that the party contends is defective has been found sufficiently narrow so as to not be unduly burdensome or overly broad on its face.[55]

Interrogatory No. 31 asks, for each subpart of information sought, that Sprint "describe in detail, including all facts and application of law to fact."  Although the introductory language of the interrogatory asks Sprint to "describe in detail, including all facts . . .", the Court does not find that this makes the entire interrogatory *per se* objectionable.  When taken together with the respective subparts, the Court finds that subparts (a) through (f) are sufficiently narrowed by the discrete topic or contention, and thus are not unduly burdensome and overly broad on their face.  With regard to Sprint's objections to subparts (c) and (f) based upon their request for "all facts and circumstances" supporting its contentions, the Court does not find that this language renders

---

[52] *Allianz*, 2005 WL 44534, at *8.

[53] *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997).

[54] *Id.* at 187.

[55] *Cardenas*, 231 F.R.D. at 619.

the subpart overly broad and unduly burdensome.  Subpart (c) asks Sprint to identify "all facts and circumstances" supporting any contention that there was an implied license granted to Sprint under the High Point Patents.  Because the interrogatory subparts are limited to specific contentions, the inclusion of the language "all facts and circumstances" does make this subpart overly broad or responding to it unduly burdensome.  Likewise, subpart (f)'s language, seeking "all facts and circumstances" supporting or relating to Sprint's contention regarding whether there was exhaustion of any of the High Point Patents with respect to the use of Motorola Equipment in a Sprint CDMA Cellular Network, does not make the subpart overly broad and unduly burdensome.

Sprint also argues that subpart (c), which asks it to detail the facts and circumstances supporting "any contention" that there was a license granted to Sprint under the patents-in-suit, is an overbroad blanket request that seeks a narrative explanation of Sprint's defenses. The Court does not read the interrogatory as broadly as Sprint.  The interrogatory appears limited to asking for the facts and circumstances supporting Sprint's contention, if it has one, that it was granted an implied license under the High Point Patents to use Motorola Equipment in Sprint's CDMA Cellular Network.  Sprint's overly broad and unduly burdensome objections to Interrogatory No. 31 are overruled.

Sprint also objects that subpart (g) is vague and ambiguous, overly broad, and unduly burdensome.  It requires that Sprint evaluate every single possible use for the Motorola Equipment in order to determine whether it can "only be used" or has "any use other than" use in the Sprint CDMA Network.  It is vague and ambiguous as it sets no limits as to what types of alternatives uses can or should be considered.  In addition, Sprint argues that it requests a

Case 2:09-cv-02269-CM-TJJ   Document 676   Filed 09/12/11   Page 37 of 41

determination of whether something "can be used" in a particular way or "whether Motorola's Equipment has any use other than that for use in a Sprint CDMA Cellular Network." Sprint's vague and ambiguous objection to subpart (g) is sustained. This interrogatory subpart is so poorly constructed and ambiguous that the Court cannot understand what specific information is being sought.

## V.   EXPENSES

Under Fed. R. Civ. P. 37(a)(5)(C), if a motion to compel is granted in part and denied in part, the court may, after providing an opportunity to be heard, "apportion the reasonable expenses for the motion." Neither party has requested fees or expenses related to the motion. As the Court has already sanctioned Sprint under Fed. R. Civ. P. 26(g), the Court finds that further apportionment of reasonable expenses related to the motion are unnecessary.

## VI.   SUMMARY OF RULINGS

The Court finds that High Point met its obligation to make a reasonable effort to confer with Sprint prior to filing this motion, and that High Point's Fifth Interrogatory No. 31, subpart (g) should be counted as its fortieth interrogatory. The Court further deems all of Sprint's general objections to High Point's Fourth and Fifth Sets of Interrogatories as waived and Sprint is sanctioned $2,000 as a Rule 26(g) violation for asserting general objections not warranted by existing law and interposed for the improper purpose of causing unnecessary delay. As the Court stayed payment of sanctions on High Point's first Rule 26(g) violation, the Court will likewise stay payment of Sprint's sanctions. Payment of the sanctions is stayed pending completion of this case and further order of the Court. If there are no further violations of Rule 26(g) by Sprint during this litigation, this sanctions order will be vacated.

The Court makes the following rulings with respect to the specific objections reasserted by Sprint in response to High Point's motion to compel:

For **Interrogatory No. 26**, the Court sustains Sprint's vague and ambiguous objection. High Point shall provide Sprint with its definitions to the terms "telecommunications networks," and "telecommunications services" that Sprint has objected to as vague and ambiguous. If after receiving High Point's definitions Sprint is still is unclear as to what information is being requested, then it should identify the ambiguity, explain the interpretation chosen and why, and answer the interrogatory based upon its stated interpretation. Sprint's objection that the interrogatory is overly broad is also sustained. Unless the parties agree on a different time period, the Court finds that Interrogatory No. 26 should be limited to patent licensing agreements in effect on or after December 1, 2002 – the date identified in Interrogatory No. 1. Sprint shall answer the interrogatory with the temporal limitation. Finally, Sprint's relevancy objection to Interrogatory No. 26 is sustained to the extent the interrogatory asks for information related to "voice-over-internet-protocol." Finally, Sprint's unduly burdensome objection is overruled.

As to **Interrogatory No. 27**, the Court overrules all Sprint's vague and ambiguous, over breadth, unduly burdensome, and relevancy objections.

With regard to **Interrogatory No. 28**, the Court sustains Sprint's vague and ambiguous objection. High Point shall provide Sprint with a clarifying definition of the phrase "dates for each software upgrade relating to each component." Sprint's relevancy objection to Interrogatory No. 28 is sustained to the extent the interrogatory requests information on software upgrades on hardware components not accused of infringement in this action. Sprint's

38

objections that the interrogatory is overly broad, cumulative and duplicative, and unduly burdensome are overruled.

For **Interrogatory No. 29**, the Court sustains Sprint's vague and ambiguous objection. High Point shall provide Sprint with its definitions to the term "Sprint Network" and phrase "date of purchase for each geographic location." Sprint's relevancy objection is also sustained. Sprint shall answer Interrogatory No. 29 with the following relevancy modification: "For each *unlicensed Nortel product* installed in the Sprint Network at any time on or after December 29, 2002, identify the date of purchase for each *product and its* geographic location in the Sprint Network." Sprint's objections that the interrogatory is overly broad, cumulative and duplicative, and unduly burdensome are overruled.

As to **Interrogatory No. 30**, the Court sustains Sprint's vague and ambiguous objection. High Point shall provide Sprint with a more descriptive definition of the term "Motorola Selection and Distribution Unit and/or Selector Distribution Unit," as that term relates to "Motorola SDU" used in Interrogatory No. 30.   In addition, Sprint's relevancy objection to subpart (b) is sustained.   Sprint shall only answer subpart (b) for "each *unlicensed* Motorola SDU." Sprint's vague and ambiguous objection to subpart (f) is also sustained.   High Point shall provide Sprint with its definition of the phrase "used with" as it pertains to subpart (f) of Interrogatory No. 30.   Sprint's relevancy objection to subpart (g) is also sustained.   Sprint need only answer subpart (g) for software updates that changed the functionality of equipment related to the patents-in-suit.

Finally, for **Interrogatory No. 31**, the Court overrules all of Sprint's objections to subparts (a) through (f).  The Court sustains Sprint's vague and ambiguous objection to subpart (g).  Sprint shall answer Interrogatory No. 31 for subparts (a) through (f) only.

**IT IS THEREFORE ORDERED** that High Point's Motion to Compel Sprint to Answer Forty (40) Interrogatories (ECF No. 526) is granted in part and denied in part.  <u>**Within fourteen (14) days of the date of this Memorandum and Order,**</u> High Point shall provide Sprint with its definitions to the following terms and phrases:   "telecommunications networks," "telecommunications services," (Interrogatory No. 26) "dates for each software upgrade relating to each component," (No. 28) "Sprint Network," and "date of purchase for each geographic location," (No. 29) and "used with" (No. 30(f)). High Point shall also provide Sprint with a more descriptive definition of the term "Motorola Selection and Distribution Unit and/or Selector Distribution Unit," as that term relates to "Motorola SDU" used in Interrogatory No. 30.  <u>**Within thirty (30) days of the date of this Memorandum and Order**</u>, Sprint shall serve its supplemental answers to High Point's Fourth Interrogatory Nos. 26-29, Fifth Interrogatory No. 30, and Fifth Interrogatory No. 31 subparts (a)-(f), subject to the Court's specific rulings set forth herein.

**IT IS FURTHER ORDERED** that Sprint is sanctioned $2,000 pursuant to Fed. R. Civ. P. 26(g) based upon its repeated assertion of numerous, repetitive, boilerplate, incorporated-by-reference "to the extent" general objections to High Point's Fourth and Fifth Set of Interrogatories. The purpose of the sanctions is to deter the parties from continuing to assert these type of general objections to interrogatories and other discovery requests.  As the Court stayed payment of sanctions on High Point's first Rule 26(g) violation, the Court will likewise

stay payment of Sprint's sanctions.  Payment of the sanctions is stayed pending completion of this case and further order of the Court.  If there are no further violations of Rule 26(g) by Sprint during this litigation, this sanctions order will be vacated

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas, on this 12th day of September, 2011.


<u>**s/David J Waxse**</u>
David J. Waxse
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties