## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| HIGH POINT SARL, | ) | |
| | ) | |
| Plaintiff and Counterclaim | ) | |
| Defendant, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | **Case No. 09-2269-CM-DJW** |
| | ) | |
| SPRINT NEXTEL CORP., et al., | ) | |
| | ) | |
| Defendants and | ) | |
| Counterclaimants. | ) | |

### MEMORANDUM AND ORDER

Pending before the Court is High Point's Motion to Compel Sprint to Provide a Supplemental Response to Interrogatory Nos. 5, 11, 17-20, 23, 24 (ECF No. 569). Pursuant to Fed. R. Civ. P. 37(a), High Point requests an order compelling Sprint to supplement its responses to Interrogatory Nos. 5, 11, 17-20, and 23.[1] Sprint opposes the motion, arguing that its interrogatory responses are sufficient and High Point is attempting to improperly obtain discovery outside the scope of the interrogatories. For the reasons discussed below, the motion is granted in part and denied in part.

## I. BACKGROUND

High Point SARL (hereinafter, "High Point") filed this patent infringement action against Sprint Nextel Corporation; Sprint Spectrum L.P.; SprintCom, Inc.; Sprint Communications Company L.P.; Sprint Solutions, Inc.; APC PCS, LLP; APC Realty and Equipment Company, LLC; and STC Two LLC (collectively referred to as "Sprint"). High Point alleges that Sprint's cellular

---

[1] High Point originally moved to compel a complete response to Interrogatory No. 24, but the parties advise the Court that they have since resolved their dispute as to this interrogatory.

CDMA telephone networks infringe upon the four following United States patents assigned to High Point: Patent No. 5,195,090 ("the '090 patent"), entitled "Wireless Access Telephone-to-telephone Network Interface Architecture"; Patent No. 5,305,308 ("the '308 patent") entitled, "Wireless Access Telephone-to-telephone Network Interface Architecture"; Patent No. 5,184,347 ("the '347 patent") entitled, "Adaptive Synchronization Arrangement"; and Patent No. 5,195,091 ("the '091 patent") titled, "Adaptive Synchronization Arrangement." The patents and their foreign counterparts are directed to telecommunications equipment for a wireless cellular telephone network. High Point seeks a declaratory judgment that Sprint has infringed and continues to infringe the '090, '308, '347, and '091 patents, as well as an order permanently enjoining Sprint from infringing these patents. Sprint has asserted a counterclaim for declaratory judgment of invalidity and/or non-infringement as to each of the four patents. This case was originally filed in the United States District Court for the District of Eastern Virginia and was transferred to the District of Kansas on May 18, 2009.

Relevant to the instant motion to compel, High Point served the following interrogatories to Sprint: First Set of Interrogatories (Nos. 1-12), served on February 25, 2009;[2] Third Set of Interrogatories (Nos. 17-20), served on May 24, 2010;[3] and Fourth Set of Interrogatories (Nos. 21-29), served on July 9, 2010.[4] Sprint served its Responses to High Point's First Set of Interrogatories Nos. 3-11 on April 30, 2009.[5]

---

[2] Ex. 8 to High Point's Mem. in Supp. (ECF No. 572-9).

[3] Ex. 2 to High Point's Mem. in Supp. (ECF No. 572-3).

[4] Ex. 6 to High Point's Mem. in Supp. (ECF No. 572-7).

[5] Ex. 9 to High Point's Mem. in Supp. (ECF No. 572-10).

On May 8, 2009, before this case was transferred to this Court, High Point filed a motion to compel Sprint to provide complete answers to Plaintiff's Interrogatory Nos. 3-6, 8, 10-11, and 13-16, and to produce sufficient responsive documents to several document requests (ECF No. 115).  On March 2, 2010, the Court held a hearing to discuss the status of the motion.  The Court granted in part and denied in part High Point's motion to compel and set a schedule for the production of documents and interrogatory answers.[6]  Per the parties' agreement, Sprint was ordered to provide by April 12, 2010 partial answers to Interrogatory Nos. 4 and 5 by selecting at least five claims from each of the four patents in suit (for a total of 20 claims) and to provide High Point with its non-infringement and invalidity contentions with respect to these claims.  In addition, the Court ordered Sprint to provide answers to Interrogatory Nos. 6, 8, and 13-16 (if not yet already provided) by March 26, 2010, and to supplement its answers to Interrogatory Nos. 10-11 by April 12, 2010.

In accordance with the Court's Order, Sprint served supplemental responses to High Point's Interrogatory Nos. 6, 8, 11, 14, and 16 on March 26, 2010.[7]  It served supplemental responses to Interrogatory Nos. 4, 5 and 10 on April 12, 2010[8] and May 20, 2010.[9]

On August 13, 2010, Sprint served its Objection and Responses to High Point's Third Set of Interrogatories (Nos. 17-20).[10]  It served its Objections and Responses to High Point's Fourth Set

---

[6] *See* Court's March 10, 2010 Order (ECF No. 224).

[7] Ex. 13 to High Point's Mem. in Supp. (ECF No. 572-33).

[8] Ex. 10 to High Point's Mem. in Supp. (ECF Nos. 572-11 to 572-15).

[9] Ex. 11 to High Point's Mem. in Supp. (ECF Nos. 572-16 to 572-28).

[10] Ex. 5 to High Point's Mem. in Supp. (ECF No. 572-6).

of Interrogatories (Nos. 21-29) shortly thereafter on August 16, 2010.[11]

Sprint served supplemental responses to Interrogatory Nos. 5, 11, 17-20, 23 and 24 on February 14, 2011.[12]  It further supplemented Interrogatory Nos 18 and 23 on February 25, 2011.[13]

High Point's present motion to compel identifies alleged deficiencies in Sprint's responses to Interrogatory Nos. 5, 11, 17-20, and 23, and seeks an order compelling Sprint to provide additional information for those interrogatories.

## II.    DUTY TO CONFER

Sprint asserts that High Point failed to meet and confer in good faith regarding the discovery disputes at issue in this motion to compel, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.  In particular, Sprint argues that High Point failed to confer after Sprint served supplemental interrogatory responses on February 14, 2011.  After receiving Sprint's supplemental responses, High Point sent a letter to Sprint on February 23, 2011, setting out its reasons why it believed the supplemental responses were insufficient.  On February 25, 2011, Sprint responded to High Point's letter and further supplemented its responses to Interrogatory Nos. 18 and 23.   In that letter, Sprint stated:

> To our recollection, there has been no attempt made to meet and confer concerning Sprint's objections to the Interrogatories. Please inform us of the dates and participants involved if you recall differently. Regardless, any such discussions would be stale by now and High Point certainly has not made any attempt to meet and confer regarding Sprint's February 14th supplemental responses to the Interrogatories. Many of the Interrogatories, and High Point's issues with Sprint's

---

[11] Ex. 7 to High Point's Mem. in Supp. (ECF No. 572-8).

[12] Ex. 12 to High Point's Mem. in Supp. (ECF Nos. 572-29 to 572-32).

[13] Ex. I to Sprint's Opp'n. (ECF No. 617-10).

responses thereto, remain unclear.[14]

The following Monday, February 28, 2011, the deadline for filing its motion to compel, High Point filed the instant motion to compel.  Afterwards, as indicated in the response and reply, the parties were able to resolve many of their disputes as to the interrogatories.  Sprint argues that this shows that High Point failed to confer in good faith prior to filing its motion to compel.

High Point maintains that it met its pre-motion meet and confer obligations.  It claims that it doggedly pursued Sprint's supplemental responses with no less than five letters.  In addition, the parties telephonically discussed the deficiencies in Sprint's responses in October 2010, where Sprint advised of its plan to supplement its responses to some of the relevant interrogatories by November 22, 2010.  After receiving no interrogatory responses in November, December 2010, or January 2011 and no explanation as to why, High Point collectively summarized the outstanding issues concerning Sprint's deficient interrogatory responses and demanded a date-certain when Sprint would supplement.  On February 14, 2011, Sprint served its supplemental response to Interrogatory Nos. 5, 11, 17-20, 23 and 24.  On February 23, 2011, High Sprint afforded Sprint one last opportunity to cure the remaining deficiencies.  Faced with the close of fact discovery less than two months away and its deadline for filing a motion to compel,[15] it filed its motion.

Before a party can file a motion to compel, the Federal Rule of Civil Procedure 37 and this District's local rules require the would-be movant to confer with opposing counsel in a good faith effort to resolve the dispute without court action.  Fed. R. Civ. P. 37(a)(1) requires a motion to

---

[14] Ex. I to Sprint's Opp'n. (ECF No. 617-10).

[15] In the Court's Order extending High Point's deadline for filing its motion to compel to February 28, 2010 (ECF No. 529), the Court warned High Point that it would require "a specific showing of good cause in order to extend this deadline any further."

compel to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." This certification "must describe with particularity the steps taken by all attorneys to resolve the issues in dispute."[16] District of Kansas Rule 37.2 further defines "reasonable effort to confer" to mean "more than mailing or faxing a letter to the opposing party."[17] Instead, the parties must "in good faith converse, confer, compare views, consult, and deliberate or in good faith attempt to do so."[18]

In the Certificate of Compliance with D. Kan. Rule 37.2 filed as part of High Point's memorandum in support of its motion, counsel for High Point certifies that he conferred in good faith with counsel for Sprint to resolve the discovery dispute at issue in the motion. The Certificate of Compliance further describes the steps taken by High Point's counsel to confer. These steps include providing Sprint with several written explanations of how the interrogatory responses were deficient and engaging in a telephonic meet and confer on October 21, 2010.

The Court has reviewed the correspondence attached to High Point's memorandum in support of its motion, including High Point's letters to Sprint dated May 25, 2010; October 5, 2010; November 24, 2010; January 11, 2011; and February 23, 2011. In each of these letters, High Point identified deficiencies in Sprint's responses to the interrogatories in dispute. These letters show that High Point repeatedly requested that Sprint supplement its responses to the interrogatories with an explanation of the deficiencies noted.

---

[16] D. Kan. Rule 37.2.

[17] *Id.*

[18] *Id.*

6

High Point's failure to engage in another round of conferring after Sprint's February 25th letter and supplementation of two interrogatories, six months after the original interrogatory responses were served, does not presumptively show that High Point failed to confer in good faith prior to filing its motion to compel. Furthermore, the parties' subsequent resolution of many of their discovery disputes after the motion was filed is not compelling proof that High Point failed to confer in good faith. The Court does agree that the fact that the parties were later able to work out many of their misunderstandings and disputes suggests that had the parties made more effort toward conferring that much of the briefing could have been avoided. Unfortunately, the Court has noted that in many cases, the filing of the motion to compel provides the impetus for both the propounding party and the party objecting to the discovery to renew their efforts toward resolving the discovery dispute. Ideally, this conferring process should take place *before* the motion to compel is filed. In practice, the Court recognizes that sometimes a motion needs to be filed, along with the possibility of sanctions, for the parties to reevaluate their positions with respect to the discovery dispute. Although the Court agrees with Sprint that High Point could have made better efforts to confer, particularly after Sprint's February 14th and 25th supplementation, High Point has made a reasonable attempt to confer related to the interrogatories at issue prior to filing its motion to compel.

## III.   WAIVER OF OBJECTIONS TO CERTAIN INTERROGATORIES

High Point argues that Sprint has waived all its objections to Interrogatory Nos. 17-20 and 23, because it failed to timely serve its objections to those interrogatories. High Point served its Third Set of Interrogatories (Nos. 17-20) on May 24, 2010. Sprint, however, did not serve its objections and responses to the Third Set until August 13, 2010, well over the 30 days allowed for

responding.  High Point served its Fourth Set of Interrogatories (Nos.  21-29) on July 9, 2010, to which Sprint served its objections and responses on August 16, 2010.

In its response brief, Sprint contends that it has not waived any of its objections to High Point's Third and Fourth Set of Interrogatories.  After the motion was fully briefed, Sprint filed a Supplemental Memorandum (ECF No.  682) to clarify the objections on which it was relying.  Sprint clarifies that it waives all its general objections to the interrogatories at issue in this motion, but continues to stand on its specific objections.  The Court will therefore not consider Sprint's general objections in ruling on the interrogatories at issue in this motion.[19]

Under Fed.  R.  Civ.  P.  33(b)(2), a party responding to interrogatories "must serve its answers and any objections within 30 days after being served with the interrogatories."  Rule 33(b)(4) further provides that "[a]ny grounds not stated in a timely objection is waived unless the court, for good cause, excuses the failure."

In this case, Sprint served its responses and objections to High Point's Third Set of Interrogatories on August 13, 2010, approximately 82 days after High Point served them on May 24, 2010.  Although High Point failed to serve Attachment A for Interrogatory No. 19 until July 7, 2010, this does not explain why Sprint could not have served its objections to the other interrogatories that did not reference the attachment.  Furthermore, even if the Court were to

---

[19] Sprint will also not be sanctioned under Fed.  R.  Civ.  P.  26(g) for asserting general objections to the interrogatories at issue in this motion.  The Court's September 12, 2011 Memorandum and Order (ECF No.  676) found Sprint's repeated assertion of numerous, repetitive, boilerplate, incorporated-by-reference "to the extent" general objections to High Point's Fourth and Fifth Set of Interrogatories violated Rule 26(g).  As Sprint has withdrawn its general objections to the interrogatories at issue in this motion (contained in High Point's First, Third, and Fourth Set of Interrogatories), no Rule 26(g) sanctions will be ordered.

construe High Point's Third Set of Interrogatories as being completely served on July 7, 2010, Sprint still did not serve its objections within thirty days of that date, instead serving them on August 13, 2010.  Finally, Sprint's argument that High Point acquiesced to Sprint's proposal to allow additional time to respond to the meet and confer process is not persuasive.  Sprint has not offered any evidence that High Point expressly granted it an extension of its deadline for responding to the interrogatories.  Sprint has not offered any showing of good cause to excuse its failure, nor has it explained why it could not have simply filed a motion for an extension of its Rule 33(b)(2) deadline with respect to High Point's Third Set of Interrogatories.  The Court therefore finds that Sprint failed to timely serve its specific objections to High Point's Third Set of Interrogatories, and they are waived pursuant to Rule 33(b)(4).  The Court will therefore not consider these objections in ruling on Interrogatory Nos.  17-20 of High Point's Third Set of Interrogatories, which are at issue in the present motion to compel.      With regard to High Point's Fourth Set of Interrogatories, Sprint has shown that High Point expressly granted it a one-week extension, to August 16, 2010, to respond to these interrogatories.[20]  The Court finds that Sprint timely served, and therefore preserved, its specific objections to High Point's Fourth Set of Interrogatories (Nos. 21-29).

## IV.    INTERROGATORIES IN DISPUTE

### A.    Interrogatory No. 5

High Point's Interrogatory No. 5 asks Sprint "[f]or each claim of each High Point Patent that you assert is invalid, state all factual and legal bases for your assertion, including identifying all evidence and prior art upon which you rely."  Sprint initially objected to Interrogatory No. 5 as "premature on the grounds that discovery in this lawsuit is in its early stages and Sprint has not yet

---

[20] *See* Aug.  5, 2010 email, Ex.  AA to Sprint's Opp'n (ECF No.  617-28).

completed its factual investigation. Sprint further object[ed] to Interrogatory No. 5 as premature to the extent it seeks expert testimony which will be provided at a later date."[21]

After the Court ordered Sprint to respond to the Interrogatory in March 2010, Sprint supplemented its response to Interrogatory No. 5 four times, reasserting its objections and responses in each supplemental response.  It first supplemented its response on April 12, 2010 by providing preliminary invalidity contentions for five claims of each patent asserted by High Point.[22]  On May 20, 2010, Sprint further supplemented its response by producing supplemental preliminary invalidity contentions for the 125 claims still asserted by High Point.[23]  Finally, on February 14, 2011, Sprint served its third supplemental response by providing supplemental invalidity contentions for the twenty representative claims identified by High Point.[24]

In its response to High Point's motion to compel, Sprint argues that it has properly responded to this interrogatory.  In its most recent supplemental response on February 14, 2011, it set out 196 pages of detail regarding its invalidity contentions on the twenty representative claims selected by High Point.  It also provided High Point with all of the principal and material factual and legal bases for its assertion that those claims are invalid.

In its reply, High Point identifies three deficiencies with respect to Sprint's responses to Interrogatory No. 5.  It claims that Sprint's responses fail to identify specific components in the figures of its prior art references, fail to identify the specific combinations of references it contends

---

[21] Sprint's April 30, 2009 Responses, Ex. 9 to High Point's Mem. in Supp. (ECF No. 572-10).

[22] Ex. 10 to High Point's Mem. in Supp. (ECF No. 572-11).

[23] Ex. 11 to High Point's Mem. in Supp. (ECF No. 572-16).

[24] Ex. 12 to High Point's Mem. in Supp. (ECF No. 572-29).

establish obviousness, and fail to adequately disclose a rationale underpinning the combination of references.

### 1.   Specific Components in Figure References

High Point argues that Sprint's response to Interrogatory No. 5 is deficient because it fails to identify specific components in the figures of its prior art references. Throughout its interrogatory response, specifically its preliminary invalidity charts, Sprint repeatedly cites to complex figures from references to other patents. High Point claims that this leaves it to guess as to which component in each figure reference Sprint contends meets the corresponding limitation in the High Point patents. For example, in Q27 of Sprint's Preliminary Invalidity Chart for the '090 patent,[25] Sprint sets out that the identified claim limitation is disclosed in certain identified figures of other patents; more specifically, Figures 7-9 of U.S. Patent No. 4,866,704 ("the '704 patent"). High Point claims that without Sprint identifying which specific components in Figures 7-9 among the tangle of names, numbers, and symbols contained in the three figures, it cannot determine what portion of the figure reference contains the corresponding limitation. High Point believes that Sprint has formed opinions on how these figures relate to the claims, but refuses to disclose those opinions. Without a specific identification of the components in the prior art figure references, High Point claims that it is prejudiced because Sprint has failed to identify all principal and material facts necessary for High Point to determine the proofs required to rebut Sprint's position. It requests that the Court compel Sprint to identify the specific components within each asserted prior art reference that Sprint alleges discloses each claim limitation.

Sprint claims that it has answered Interrogatory No. 5 in full by setting out the principal and

---

[25] *Id.*

material legal and factual bases for its invalidity contentions and by identifying the evidence and prior art on which it relies upon for its contentions.  With respect to High Point's argument that Sprint's invalidity contentions are not sufficient because they identify figures rather than components within figures, Sprint claims that it has identified in detail the figures of the patents that it contends invalidate the patents-in-suit.  In Q27 of Sprint's Preliminary Invalidity Chart for patent '090, Sprint points out that it further explained its reference to specific figures of patents with "the cited figures show the channels and packetizing and depacketizing of voice traffic."[26]

Fed. R. Civ. P. 33(b)(3) requires that an interrogatory must, to the extent it is not objected to, "be answered separately and fully."  Under Rule 37(a)(3)(B)(iii), the party propounding the interrogatory may move for an order compelling an answer if the responding party fails to answer the interrogatory.  As with all other responses to written discovery, an evasive or incomplete answer or response to an interrogatory is to be treated as a failure to answer or respond.[27]  The court has broad discretion in determining the sufficiency of an interrogatory answer.[28]  Generally, the court should apply a common-sense approach and will examine whether the answer is "responsive, full, complete and unevasive."[29]

The Court has reviewed Q27 of Sprint's Preliminary Invalidity Chart along with Figures 7-9 of the '704 patent and agrees with High Point that, without further explanation, Sprint's reference to particular figures in other patents, it is not clear what specific portions or components of the

---

[26] *Id.*

[27] Fed. R. Civ. P. 37(a)(4).

[28] *MGP Ingredients, Inc. v. Mars, Inc.,* No. 06-2318-JWL-DJW, 2007 WL 3274800, at *5 (D. Kan. Nov. 6, 2007).

[29] *Id.  See also* Fed. R. Civ. P. 37(a)(3)(B)(iii) (propounding party may move to compel under Rule 37 where a party fails to answer an interrogatory).

figures contain the same voice traffic packetizing and depacketizing limitation as in the '090 patent. This, however, that does not necessarily mean that Sprint has not fully and completely answered the interrogatory.  Interrogatory No. 5 ask Sprint, for each claim of each High Point Patent that you assert is invalid, to "state all factual and legal bases for your assertion, including identifying all evidence and prior art upon which you rely."  High Point really does not dispute that Sprint has provided the information sought by the interrogatory.   High Point instead is requesting that Sprint be ordered to provide more specific information by having Sprint identify the specific components within each prior art reference contained in its invalidity contentions.   The Court finds that this is beyond what is required by Rule 33 in answering this interrogatory.  It is up to High Point, not Sprint, to obtain further clarification regarding certain aspects of the interrogatory responses that High Point does not understand.  This can be done through depositions or other far less burdensome discovery devices.  Obtaining clarification of a particular figure reference appears to better suited to depositions rather than requiring Sprint to further supplement by identifying specific components in all figures referenced in its 196 pages of preliminary invalidity contentions.  High Point's request for an order compelling Sprint, as part of its duties in fully responding to an interrogatory under Fed. R.  Civ.  P.  33, to identify the components within each asserted prior art figure references in its preliminary invalidity contentions is therefore denied.

> **2.    Specific Combinations of Prior Art References That Establish Obviousness**

High Point also claims that Sprint's response to Interrogatory No. 5 is deficient because it fails to identify the specific combination of prior art references that it will assert render each claim obvious.  Rather, for each claim limitation Sprint states that the "limitation is disclosed, alone and/or in combination with" a group of references.  It gives the following example from Q7 of Sprint's

Preliminary Invalidity Chart for the '090 patent:

> This limitation is also disclosed in the combination of, e.g., the '652 Patent as recited herein; the '691 Patent, Figs. 1-2; the '042 Patent, Figs. 1-2; the '377 Patent, Figs. 1-3; the '704 Patent, Fig. 8; the '919 Patent, Figs. 1-3; or the '485 Patent, Figs. 1-5, with, e.g., GSM 08.60 at 11-20; Zhang at 43-63; the '401 Patent, Figs. 1-7; the '439 Patent, Figs. 1-3; or the '832 Patent, Figs. 1-2 and 3A-B.[30]

According to High Point, given the number of references cited in the alternative for each limitation, and the number of limitations, the number of possible permutations disclosed in Sprint's response is astronomical. It is thus at a real disadvantage because it cannot begin to address Sprint's actual arguments until it receives Sprint's invalidity expert report(s). This will cause High Point to suffer a real and practical harm, because under the scheduling order fact discovery will be over before Sprint provides an invalidity expert report. Thus, High Point will be unable to effectively depose Sprint's fact witnesses, who will surely include technical personnel with knowledge of prior art systems. High Point asks the Court to order Sprint to identify each combination of references that it contends renders each claim obvious.

Sprint maintains that it has answered Interrogatory No. 5 in full based upon its production of the principal and material grounds for invalidating the patents-in-suit. It argues that High Point cites no authority for its position that Sprint must identify all possible combinations of prior art references that may render the patents-in-suit obvious at this point in the case. It contents that it may properly rely on other combination of prior art identified by its expert's analysis as long as the prior art was already disclosed. It points out that the scheduling order in this case provides for final supplementation of its invalidity contentions after expert discovery is completed.

Although the District of Kansas has not adopted any local patent rules, several other Districts

---

[30] Ex. 12 to High Point's Mem in Supp. (ECF No. 572-29) at 29-30.

have issued local patent rules that require certain information be included in invalidity contentions.[31] The Court finds these rules to be helpful in determining whether Sprint has fully answered Interrogatory No. 5. The specific disclosure requirements contained in these rules provides the minimum information that should be provided in a party's invalidity contentions. Eastern District of Texas Local Patent Rule 3-3 requires that invalidity contentions contain information "whether each item of prior art anticipates each asserted claim or renders it obvious. If a combination of items of prior art make a claim obvious, each such combination, and the motivation to combine such items, must be identified." Northern District of California Patent Local Rule 3-3(b) similarly requires invalidity contentions to disclose "[w]hether each item of prior art anticipates each asserted claim or renders it obvious. If obviousness is alleged, an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness."

From these rules, the Court concludes that at a minimum Sprint must identify the combinations of prior art showing obviousness. A review of the example cited by High Point, Q7 of Sprint's preliminary invalidity contentions for the '090 patent, reveals that Sprint has identified the "limitation is disclosed in the combination of," then listing, for example, several references to prior art. High Point is asking that Sprint further provide the *specific* combination of references that it will assert render each claim obvious.

Three cases in the Northern District of California have addressed a similar issue in the context of whether a party satisfied the disclosure requirement of the local patent rules with respect

---

[31] Some Districts with local patent rules include the Northern and Southern Districts of California, the Eastern, Northern, and Southern Districts of Texas, the Northern District of Illinois, the Eastern District of Missouri, the Northern District of Georgia, the Western District of Pennsylvania, the District of New Jersey, the Western District of Washington, and the Eastern and Western Districts of North Carolina.

to invalidity contentions.[32]  In *Avago Technologies General IP PTE Ltd. v. Elan Microelectronics Corp.*,[33] the court held that although the approach resulted in billions of possible obviousness combinations, the defendant still satisfied Patent Local Rule 3-3(b) because it "reasonably specifie[d] the combination of prior art references that allegedly render [ plaintiff's] patents obvious."  Likewise, in *Keithley v. The Homestore.com, Inc.*,[34] the plaintiff argued that the defendants violated the local patent rule by failing to identify each combination of prior art relied upon to render the plaintiffs' patent obvious, and that the method in which defendants grouped the references can lead to "thousands or perhaps millions of possible combinations."[35]  The court accepted a list of seventy-two prior art references "which did not specify whether each reference art anticipated the patent, rendered it obvious, or both" as satisfying Local Patent Rule 3-3(b).[36]  The court, citing to *Avago*, found the defendants' grouping method permissible under the local rules.[37]

In *MedImmune, LLC v.  PDL BioPharma, Inc.*,[38] the court denied a motion to strike the plaintiff's invalidity contentions.  It found the plaintiff's grouping of more than a hundred references as prior art that "anticipated and/or made obvious" the patent at issue approached the minimum disclosure permitted under the local patent rules.  The court, however, suggested that had the

---

[32] *MedImmune, LLC v. PDL BioPharma, Inc.,* No. C 08-5590 JF (HRL), 2011 WL 61191, at *5 (N.D. Cal. Jan. 7, 2011); *Keithley v. The Homestore.com, Inc.*, 553 F. Supp. 2d 1148, 1150 (N.D. Cal. 2008); *Avago Technologies Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 JW (HRL), 2007 WL 951818, at *3-4 (N.D. Cal. Mar. 28, 2007).

[33] 2007 WL 951818, at *3-4.

[34] 553 F. Supp. 2d at 1150.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] 2011 WL 61191, at *5.

16

defendant demanded greater specificity with respect to the plaintiff's assertion of anticipation or obviousness, it well may have obtained relief.[39]

In the context of a motion to compel interrogatories, a court has looked to what information the interrogatory specifically requested to determine the level of detail the party asserting invalidity should provide.  In *Dot Com Entertainment Group, Inc. v. Cyberbingo Corp.*,[40] the plaintiff filed a motion to compel the defendant to answer interrogatories seeking all facts upon which the defendants based their allegation that plaintiff's patent is invalid and identifying every item of prior art supporting their invalidity contention.  The court granted the motion to compel finding that the defendants, who were asserting the patent was invalid due to obviousness, were expected to have, even at an early stage, some good faith basis in fact and law for their invalidity defense.[41]  Notably, the court found significant that the interrogatories did not ask the defendants to explain why or how, as a matter of opinion or otherwise, such prior art establishes the invalidity of Plaintiff's patent, nor did they require defendants to advance legal argument in support of their defense or counterclaim. Rather, the court found the interrogatories simply required defendants disclose the evidentiary basis upon which such a determination may be made at trial, presumably, with the assistance of expert opinion and legal argument based on such facts.[42]

Analyzing these cases, a theme emerges.  That theme is that a party providing *preliminary* invalidity contentions, either by local patent rule or by interrogatory response, is not required to provide the same level of detail that may ultimately be needed for it to support its invalidity defense.

---

[39] *Id.*

[40] 237 F.R.D. 43, 44-45 (W.D.N.Y. 2006).

[41] *Id.*

[42] *Id.* at 45.

This makes sense here where experts may be necessary to provide the specificity needed to identify the specific combinations of prior art that Sprint contends show obviousness. The few cases considering whether a party has complied with local patent rules for disclosure of combinations of prior art showing obviousness have held that, even though the grouping of the prior art references could lead to thousands or millions of combinations, the disclosing party reasonably specified the combinations of prior art references that allegedly rendered the patents obvious. The Court finds this to be helpful in determining whether Sprint sufficiently answered Interrogatory No. 5 by failing to identify the specific combination of references that it will assert render each claim obvious.

At this stage of the litigation, where to the Court's knowledge no expert discovery has occurred, the Court finds that Sprint has reasonably specified the combination of prior art references that it contends will render the patents obvious, and thus fully answered Interrogatory No. 5. The Court, however, is not ruling that Sprint will never have to provide this information pursuant to its duty to supplement under Fed. R. Civ. P. 26(e). High Point's request for Sprint to provide the specific combination of references that it will assert render each claim obvious is thus premature. The March 16, 2010 Scheduling Order entered in this case provides that expert disclosures are to be determined following the ruling on *Markman* issues and final supplementation after expert discovery is completed. The Court will therefore deny without prejudice High Point's request for an order compelling Sprint to provide the specific combination of prior art references that it will assert render each claim obvious.

### 3.    Rationale Underpinning the Combination of References

High Point's third identified deficiency in Sprint's response to Interrogatory No. 5 is that it fails to adequately disclose a rationale underpinning for the combination of prior art references that it contends would render the claims obvious. According to High Point, Sprint's unsubstantiated and

unexplained statement that "common sense or design choice" would lead an ordinarily skilled artisan from the cited references to the claimed inventions does not adequately provide the legal bases for Sprint's obviousness defense.  This conclusory statement does not articulate the reasons why it would be "common sense or a design choice" to combine particular references.  High Point claims that it is prejudiced by Sprint's inadequate response because it cannot determine the proof necessary to rebut Sprint's position.  It requests that the Court order Sprint to identify the reasons it contends that common sense or design choice would lead ordinarily skilled artisans from the cited references to the asserted claims.

Sprint claims that it has provided the rational underpinnings for particular combinations of references.  For instance, it has explained that one of ordinary skill in the art would be motivated to combine the references out of common sense or design choice.  For this explanation to be developed further, it claims that expert testimony is necessary.

Under 35 U.S.C. § 103(a), a patent claim is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."  In *KSR International Co. v. Teleflex, Inc.*, the Supreme Court redefined the analysis for determining "whether a patent claiming the combination of elements of prior art is obvious."[43]  In order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue, the Supreme Court instructed courts to "look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the

---

[43] 550 U.S. 398, 417 (2007).

art."[44]  In rejecting a rigid application of the Federal Circuit's teaching-suggestion-motivation test for obviousness, the Court observed that common sense can be one of the reasons to combine or modify prior art references to achieve the patented invention.[45]  As the Court explained:

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103.[46]

The Court finds that although High Point may not be satisfied with Sprint's answer that one of ordinary skill in the art would be motivated to combine the references out of common sense or design choice, Sprint has fully answered Interrogatory No. 5 with regard to the asserted reasons for selecting and combining the prior art references.  To the extent that expert testimony reveals more specific reasons for ordinarily skilled artisans to combine the known elements, Sprint shall seasonably supplement the interrogatory as required by Fed. R. Civ. P. 26(e).  High Point's request for the Court to compel Sprint to supplement Interrogatory No.  5, by identifying the reasons it contends that common sense or design choice would lead ordinarily skilled artisans from the cited references to combine the asserted claims, is denied.

## B.    Interrogatory No. 11

High Point's Interrogatory No. 11 asks Sprint provide the following information:

Identify all revenue received by Sprint directly or indirectly from operation of the Sprint CDMA Network (including service revenue and product sales revenue) on a monthly basis since December 1, 2002, with such revenue broken down by each category of revenue separately tracked by Sprint, including by type of traffic (e.g.,

---

[44] *Id.* at 417-18.

[45] *Id.* at 421.

[46] *Id.*

voice versus data), by geographic location, and by supplier or manufacturer of the Infrastructure Products.

Sprint responded that the information sought "may be ascertained or derived from the following documents: SPRINT_HP0010677, SPRINT_HP0012025-12050, SPRINT_HP0017606, SPRINT_HP0017693-17699."[47]

Sprint claims in its response to the motion to compel that the only remaining dispute as to this interrogatory concerns High Point's newly-defined request for subscriber revenue information organized by geographic location of the CDMA wireless subscriber.  It was only after filing the instant motion that High Point, for the first time, clarified that the interrogatory should be interpreted to seek Sprint's subscriber revenue from December 1, 2002 to the present organized by geographic area of the CDMA wireless subscriber.  Based on that clarification, Sprint has identified two databases from which it believes reports of such information can be specially generated.  Sprint states that it is in the process of preparing a special report for production in this case that will contain CDMA wireless subscriber revenue organized in relation to Sprint's 99 market areas for the period January 1, 2006 forward from its Multi-Dimensional Analysis of Performance ("MAP") database. It is also in the process of producing a report containing CDMA wireless subscriber revenue organized by Communication Service Areas for the period of December 1, 2002 through December 31, 2005 from the P2K billing system.  Sprint states that its creation and production of the reports described above from the MAP and P2K systems will satisfy the last issue currently outstanding regarding Sprint's response to Interrogatory No. 11.

In its reply, High Point asks the Court to compel Sprint to supplement its response in accordance with the representations made in its opposition brief.  The Court will therefore grant

---

[47] Ex. 13 to High Point's Mem. in Supp. (ECF No. 572-33).

High Point's motion to compel as to Interrogatory No. 11.  If it has not already done so, Sprint shall produce the reports identified in its response to High Point's motion to compel **within thirty (30) days of the date of this Memorandum and Order**.

### C.      Interrogatory Nos. 17, 19, and 20

High Point's Interrogatory Nos. 17 and 19 request that Sprint identify for each Infrastructure Product that was part of the Sprint CDMA Network at any time on or after December 29, 2002:

> the dates of installation and of removal (if applicable) of each Infrastructure Product in the Sprint CDMA Network, each such installed Infrastructure Product being identified by supplier, manufacturer, model name, model number, version number, any internal Sprint designation including those shown on SPRINT_HP0010165-66 (including cascade identification, cell number, switch identification, BSC identification, and BSC SSEO standard name), all other known names and designations, and geographic location. (No. 17)

> all hardware components installed on each Infrastructure Product in the Sprint CDMA Network, including but not limited to the hardware components identified on Attachment A, each such hardware component being identified by the hardware component name, supplier, manufacturer, version number, all other known names and designations, and dates of installation and of removal (if applicable).  (No. 19)

Interrogatory No. 20 asks Sprint to:

> Identify each BSC, MSC, and MGW in the current Sprint CDMA Network by supplier, manufacturer, model name, model number, version number, any internal Sprint designation including those shown on SPRINT HP0010165-66 (including switch identification, BSC identification, and BSC SSEO standard name), date of installation in the network, all other known names and designations, and geographic location.[48]

In its February 14, 2011 supplemental response to this interrogatory, Sprint produced a spreadsheet (identified as Sprint_HP0182860) from its Asset Tracking and Logistics ("ATLAS") system.  ATLAS is the tool used by Sprint to comply with the internal control requirements of the Sarbanes-Oxley Act, as they relate to inventory and installed equipment.  According to Sprint, this

---

[48] Ex. 5 to High Point's Mem. in Supp. (ECF No.  572-6).

spreadsheet contains over 1.1 million entries and includes identifying, geographic, installation date and scrap date information for hardware components of network infrastructure products installed on Sprint's CDMA network.  On March 22, 2011, Sprint produced a supplement to the spreadsheet for hardware components installed at other network infrastructure equipment sites.  High Point then notified Sprint that it thought this supplement was incomplete.  Sprint then produced another supplemental spreadsheet (identified as Sprint_HP0182759).

In its reply, High Point requests that the Court compel Sprint to produce the entirety of the ATLAS database and further supplement its responses with all other responsive information currently available to Sprint.  It claims that it is skeptical of how Sprint queried its ATLAS database given that each supplemental spreadsheet contained substantial new information.  To address these concerns, High Point requests that Sprint be ordered to the whole ATLAS database from which the report was generated.

Sprint states in its response brief that it has made a good faith effort to identify the records in the ATLAS database that pertain to Sprint's CDMA network.  It admits that the "results do not perfectly reflect Sprint's CDMA Network but the inaccuracy is attributable to the limitations of ATLAS's organization and data content and not by any attempt by Sprint to shirk its discovery obligations."[49]  It suggests that High Point's concern's are best addressed by deposition on the topic. It considers High Point's request for produce the ATLAS database in its entirety to be an improper effort to leverage the motion to obtain discovery outside the scope of the interrogatories.  It claims that the ATLAS database in its entirety includes tremendous quantities of irrelevant information.

Although Sprint waived its objections to these interrogatories by failing to timely serve them, High Point still has the burden to show that Sprint's interrogatory responses are deficient or

---

[49] Sprint Opp'n (ECF No. 617) at 18.

incomplete.[50]  High Point has raised sufficient questions regarding whether Sprint's production of the spreadsheets generated from the ATLAS database includes all responsive information.  It has proposed that Sprint be compelled to produce its entire ATLAS database.  Sprint's only objection to this proposal appears to be that production of the database would include large quantities of irrelevant information.  This is not a persuasive argument against producing the ATLAS database. The Court will therefore grant High Point's request to compel Sprint to produce the ATLAS database in its entirety.

High Point also asks that Sprint be compelled to supplement its responses with all other responsive information currently available to Sprint.  It cites to a number of other databases used by Sprint that appear to include responsive information.  High Point contends that it is entitled to complete responsive information reasonably available to Sprint regardless of its source, and Sprint should not limit its information to the ATLAS database.  It requests that the Court compel Sprint to further supplement its responses with all other responsive information currently available to Sprint.

In support of its argument that Sprint has attached the declaration of William H. Kitt, Jr., whose title is Manager Logistics.  Mr. Kitt's declaration indicates that his current job responsibilities include overseeing the use of, updating, and maintaining the accuracy of Sprint's ATLAS system.  He states in his affidavit that to the best of his knowledge, ATLAS is the Sprint database containing the most comprehensive records for hardware components of network infrastructure equipment purchased by Sprint for, or installed in, the Sprint CDMA Network prior

---

[50] *See Daiflon, Inc. v. Allied Chem. Corp.,* 534 F.2d 221, 227 (10th Cir. 1976) (party propounding interrogatory had the burden of proving the answer to their interrogatory was indeed incomplete).

to July 2007.[51]

As the Court is ordering Sprint to produce its ATLAS database to High Point and Sprint has offered the statement of Mr. Kitt indicating that the ATLAS database is the most comprehensive database for the records sought, this should provide sufficient assurances to High Point that Sprint has produced all information responsive to Interrogatory Nos. 17, 19, and 20. High Point's request for Sprint to further supplement its responses with all other responsive information currently available to Sprint is denied.

### D.      Interrogatory No. 18

High Point's Interrogatory No. 18 asks for the following information from Sprint:

> For each Infrastructure Product that was part of the Sprint CDMA Network at any time on or after December 29, 2002, identify all software and software updates installed on or loaded onto each Infrastructure Product in the Sprint CDMA Network, including the software name, supplier, manufacturer, version number, revision number, all other known names and designations, and installation date or date of update.

High Point requests in its reply that the Court order Sprint to supplement its response to include the entire time period specified or provide supplemental declaration including the assurances and information requested. It contends that Sprint's response to Interrogatory No. 18 is inadequate because it does not provide complete software update information for each software vendor for the entire period requested.

Sprint states that it has already provided the approximate installation dates of software loads on the infrastructure equipment in Sprint's CDMA network going back several years. This information, provided as attachments to the declarations of Sprint Network Developer Patrick Himmelberg (for Alcatel-Lucent equipment), Network Planner Dwight Patton (for Nortel

---

[51] Kitt Decl., Ex. C to Sprint's Opp'n (ECF No. 617-4) at 4.

equipment), and Telecom Design Engineer Rajveen Narendran (for Motorola and Samsung equipment),[52] reflects Sprint's current knowledge of the software loads and corresponding installation dates.  Sprint acknowledges that it was not able to provide identifying and installation date information for the full period sought for the following: LGP software loads 2002 through 2004; 5E and ECP software loads in 2002 and 2003; BTS software loads in 2002 through 2004; Nortel MTX , BSC, or BTS software loads in 2002 and 2003; Motorola BTS and BSC software loads in 2002 and 2003; the Samsung BTS and BSC software loads in 2002.  Sprint explains it was not able to provide this information because (1) none of the engineers previously responsible for deployment of the missing information are currently employed by Sprint, (2) Sprint does not maintain any current records containing installation dates for that software, and (3) it could not locate historical archive that would contain installation dates for that software.

High Point claims that Sprint's declarations and arguments do not sufficiently confirm that Sprint adequately searched for the requested information.  According to High Point, Sprint's refusal to make minor revisions to its declarations and to provide a small amount of additional information to alleviate High Point's concerns is highly suggestive that these concerns are well-founded.

High Point first takes issue with the wording of the declarations provided by Sprint.  In particular, it focuses on the word "certain" in paragraph 4 of each declaration:   "Attached hereto as Attachment 1 is a true and correct copy of a table identifying *certain* software loads and their approximate installation dates . . . ."[53]  High Point claims that this suggests ambiguity, and therefore it has requested assurances from Sprint that the tables referenced in the declaration reflects a complete record of Sprint's knowledge regarding the relevant software loads.

---

[52] Exs. O, P, and Q to Sprint's Opp'n (ECF Nos. 617-16, 617-17, and 617-18).

[53] *Id.* at 3 (emphasis added).

26

On this issue, High Point fails to convince the Court that Sprint's usage of the word "certain" in the declarations suggests that Sprint is knowingly withholding or omitting relevant information on software loads. Sprint has stated in its opposition brief that the software load information provided to High Point "reflects Sprint's current knowledge of the software loads and corresponding installation dates."[54]

High Point also criticizes the declarants offered by Sprint, arguing that none of them declare themselves to be Sprint's most knowledgeable person concerning its records of software loaded onto its CDMA infrastructure products. It further points out that none of these three declarants were identified by Sprint as knowledgeable about the technical documentation topics specified in High Point's Rule 30(b)(6) notice.

The Court does not find that High Point's concerns with Sprint's declarants are sufficient to establish that Sprint has failed to fully answer this interrogatory. High Point is seeking assurances from Sprint regarding the completeness of Sprint's responses to this interrogatory. In an attempt to provide those assurances, Sprint produced declarations from three of its employees along with tables identifying software loads and their approximate installation dates. Based upon the declarant's job title, years of experiences, and job responsibilities, each declarant appears to be a knowledgeable source regarding the particular category of information sought. For example, Sprint Network Developer Patrick Himmelberg states in his declaration that he has worked for one or more of Sprint-related entities for approximately 10 years and is "one of the Sprint engineers currently responsible for Alcatel-Lucent network infrastructure equipment in Sprint's network for processing

---

[54] Sprint's Opp'n (ECF No. 617) at 21.

CDMA calls to and from CDMA-enabled handsets."[55]   The table attached to his declaration identifies software loads and their approximate installation dates for Alcatel-Lucent LGP, 5E, ECP and BTS equipment.   Mr. Himmelberg would appear to be a reasonable and reliable source for this information, even if he did not state that he was the most knowledgeable person, nor was he designated by Sprint as one of its Rule 30(b)(6) representatives.

Sprint has acknowledged that it has not provided responsive information for the entire time period specified in Interrogatory No. 18.  It has explained why it cannot locate the information and provided declarations from persons who would be a reasonable and reliable source.  High Point's concerns with Sprint's declarants and the words used in the declarations do not justify the further information and assurances sought.   High Point's request for the Court to compel Sprint to include the entire time period specified or provide supplemental declaration including the assurances and information requested is denied.

### E.      Interrogatory No. 23

Interrogatory No. 23 seeks information about Sprint's purchase of infrastructure products in its CDMA network.  In its response to the interrogatory, Sprint produced two spreadsheets pursuant to Fed. R. Civ. P. 33(d).  Sprint thereafter identified additional documents that it had already produced and identified to High Point that provided purchase information for Samsung, Alcatel-Lucent, and Nortel products.   According to Sprint, High Point's only remaining complaint with Sprint's response to Interrogatory No. 23 is that the identified purchase order reports do no provide consistent-looking descriptive information for the listed equipment.

In its reply, High Point disagrees with Sprint's characterization of the remaining disputes with regard to this interrogatory.  It continues to assert that Sprint's response to Interrogatory No.

---

[55] Himmelberg Decl., Ex. O to Sprint's Opp'n (ECF No. 617-16).

23 remains incomplete because Sprint has not identified a "key" to decipher the data produced under Fed. R. Civ. P. 33(d).  It requests that the Court compel Sprint to supplement its response to include a "key" explaining the entries of the data it has identified in its response.  It provides the following lone example of why it needs the a key.  In the document identified as SPRINT_HP0012048,[56] High Point claims that it cannot determine the meaning of the entries, e.g., CAIRVA0601, LOCGCASC04, LOCLNJRB01, in the "Ship To" field of the spreadsheet.  For the example provided, the Court finds High Point's request for a "key" to enable it to decipher the data produced and identified in Sprint's purchase order spreadsheets is reasonable and necessary to equalize the burden of deriving or ascertaining the answer under Fed. R. Civ. P. 33(d).  High Point's request for a key explaining the entries of the data it has identified in its response is therefore granted in part and denied in part.   Sprint shall produce a key for the "Ship to" column on the document produced as SPRINT_HP0012048.  As High Point has not identified any other columns of the purchase order spreadsheets as needing a key to be able to discern the information provided, the Court will only order Sprint to provide a key for this column.

## V.    EXPENSES

Under Fed. R. Civ. P. 37(a)(5)(C), if a motion to compel is granted in part and denied in part, the court may, after providing an opportunity to be heard, "apportion the reasonable expenses for the motion."  Neither party requests fees or expenses in connection with this motion to compel.  Upon review of the briefing, the Court concludes that each party should bear its own fees and expenses.

---

[56] Ex. F to Sprint's Opp'n (ECF No. 617-7) at 14-16.

## VI.   SUMMARY OF RULINGS

High Point has made sufficient attempts to confer related to the interrogatories at issue prior to filing its motion to compel.  Sprint has waived its specific objections to High Point's Third Set of Interrogatories (Nos.  17-20), but not the Fourth Set of Interrogatories, by failing to serve timely objections to them, as required by Fed.  R.  Civ.  P.  33(b)(2).

For **Interrogatory No.  5**, High Point's requests for an order compelling Sprint to (1) identify the components within each asserted prior art figure references in its preliminary invalidity contentions, (2) provide the specific combination of prior art references that it will assert render each claim obvious, and (3) identify the reasons it contends that common sense or design choice would lead ordinarily skilled artisans from the cited references to the asserted claims are denied. Sprint, however, is reminded that it is under a continuing duty to seasonably supplement its interrogatory answers pursuant to Fed.  R.  Civ.  P.  26(e).

As to **Interrogatory No. 11,** High Point's request to compel Sprint to supplement its response in accordance with the representations made in its opposition brief is granted.  if it has not already done so, Sprint shall produce the reports identified in its response to High Point's motion to compel.

For **Interrogatory Nos.  17, 19 and 20**, High Point's request to compel Sprint to produce the ATLAS database in its entirely is granted.  High Point's request for Sprint to further supplement its responses with all other responsive information currently available to Sprint is denied.

As to **Interrogatory No.  18**, High Point's request for the Court to compel Sprint to include the entire time period specified or provide supplemental declaration including the assurances and information requested is denied.

Finally, for **Interrogatory No.  23**, High Point's request for a key explaining the entries of

the data it has identified in its response is granted in part and denied in part.  Sprint shall produce a "key" for the "Ship to" column on the document produced as SPRINT_HP0012048.

**IT IS THEREFORE ORDERED** that High Point's Motion to Compel Sprint to Provide a Supplemental Response to Interrogatory Nos. 5, 11, 17-20, 23, 24  (ECF No. 569) is granted in part and denied in part.  Sprint shall produce the reports identified in its response brief for Interrogatory No. 11, its ATLAS database, and "a key" for the "Ship to" column of SPRINT_HP0012048 **within thirty (30) days of the date of this Memorandum and Order.**

**IT IS FURTHER ORDERED** that each party shall bear its own fees and costs related to the motion.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 28th day of September, 2011.


S/ David J. Waxse
David J. Waxse
U. S. Magistrate Judge

cc:    All counsel and *pro se* parties