# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| HIGH POINT SARL, | ) | |
| | ) | |
| Plaintiff and Counterclaim | ) | CIVIL ACTION |
| Defendant, | ) | |
| | ) | Case No. 09-2269-CM-DJW |
| v. | ) | |
| | ) | |
| SPRINT NEXTEL | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants and | ) | |
| Counterclaimants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Sprint's Motion to Compel Documents from Avaya, Inc. (ECF No. 573). It requests an order under Fed. R. Civ. P. 45(c)(2)(B)(i) compelling interested party Avaya, Inc. ("Avaya") to produce documents responsive to Sprint's April 13, 2010 subpoena that Avaya is withholding based on privilege. As explained below, the motion is granted in part and denied in part. The Court finds that Avaya has not waived its attorney-client privilege and work product objections by failing to identify all its claimed privileges on its first version of its privilege logs. The Court further finds that Avaya can avail itself of the common interest exception to privilege waiver for the confidential materials it disclosed to affiliated entities and third parties. Avaya's privilege logs, however, fail to establish attorney-client privilege for entries with no author or recipient listed, and certain other entries, and these documents must be produced. The Court will refer the task of conducting an *in camera* review of Avaya's documents identified on its privilege logs as sent to "File," or authored by or sent to "Avaya," to Karl Bayer, the Special Master already appointed in this case, unless written objections are filed by **February 8, 2012**. Finally, Avaya has failed to establish that documents withheld under the work product doctrine were created in

anticipation of litigation and these documents must be produced.

## I.    Background Facts

High Point SARL (hereinafter "High Point") filed this patent infringement case against Sprint Nextel Corporation, Sprint Spectrum L.P., SprintCom, Inc., Sprint Communications Company L.P., Sprint Solutions, Inc., APC PCS, LLC, APC Realty and Equipment Company, LLC, and STC Two LLC (collectively referred to as "Sprint").  High Point alleges that Sprint's cellular CDMA telephone networks infringe upon the four following United States patents assigned to High Point: Patent No. 5,195,090; Patent No. 5,305,308; Patent No. 5,184,347; and Patent No. 5,195,091 (collectively the "patents-in-suit").

The patents-in-suit, directed to telecommunications equipment for a wireless cellular telephone network, were originally assigned to AT&T Corporation in 1993 and 1994.  In 1996, AT&T Corporation assigned the patents-in-suit to its spin-off company, Lucent Technologies, Inc. ("Lucent").  On October 1, 2000, Avaya, which was formerly known as the Enterprise Networks Group of Lucent Technologies, was spun off from Lucent.  As part of the spinoff, Avaya acquired certain patents, including the patents-in-suit.  On March 13, 2008, Avaya sold the patents-in-suit to High Point.

Relevant to the pending motion, Sprint served Avaya with a subpoena on April 13, 2010.[1] The subpoena, issued by this Court, commands Avaya to produce documents responsive to nineteen document requests.  The subpoena's document requests seek, *inter alia,* the production of documents and things referring or relating to the patents-in-suit or related intellectual property, communication with Sprint as to the patents-in-suit, assignment or transfer of the patents-in-suit, and litigation and

---

[1]*See* Amended Notice of Subpoena to Avaya Inc. (ECF No. 574-3).

enforcement of the patents-in-suit.

On April 22, 2010, Avaya served its objections to the subpoena, asserting objections to all nineteen document requests.  It objected to the requests as overbroad, vague, ambiguous,  unduly burdensome, and seeking information that is irrelevant, proprietary, confidential and/or trade secret, or outside of its possession, custody, control or knowledge.  It further objected to the requests as seeking the production of documents that are protected by the "attorney-client privilege, attorney work product doctrine and/or other applicable privileges or protections."  For all but two of the requests, Avaya objected that they seek materials available through sources other than Avaya and through less burdensome means.

On April 30, 2010, Avaya served supplemental objections to Sprint's subpoena.  After several email exchanges regarding Avaya's objections to Sprint's subpoena, Sprint filed a motion to compel on May 21, 2010.  One of Avaya's main concerns was a procedure for avoiding production of responsive documents already produced by High Point.  Following the filing of the motion, Avaya and Sprint agreed on May 28, 2010, to a proposal for identifying responsive documents.  On June 18, 2010, Avaya produced documents to supplement High Point's production. On that same day, it served its second supplemental objections on Sprint.  On July 2, 2010, Avaya made a supplemental document production.

On July 16, 2010, Avaya provided Sprint with a description of custodians and sources for specific bates ranges and produced a replacement CD-ROM to Sprint, which contained additional metadata for electronic documents from its production on July 2, 2010.  It also produced two privilege logs, one for its production on June 18, 2010 and one for its production on July 2, 2010.

On July 23, 2010, Avaya produced additional responsive documents and a privilege log.  On

July 30, 2010, Avaya produced a supplemental name list identifying Avaya personnel and non-Avaya personnel on its privilege logs.

On August 19, 2010, Avaya produced supplemental privilege logs for its July 2, 2010 production and July 23, 2010 production to address certain privilege log deficiencies and issue raised by Sprint. On August 25, 2010, Avaya produced additional documents that were inadvertently withheld.

On February 2, 2011, the Court granted in part and denied in part Sprint's Motion to Compel Subpoenaed Documents From Avaya, Inc. (ECF No. 538). It ordered Avaya to produce all documents responsive to the subpoena that it had not previously produced, except for documents that were being withheld based on an assertion of attorney-client privilege, attorney work product, and/or a common interest privilege. The Court further allowed Sprint to file a motion to compel attacking Avaya's assertion of privilege as a basis for withholding documents responsive to Sprint's April 13, 2010 subpoena. This motion followed.

## II.     Waiver Based Upon Late Assertions of Privilege in Privilege Logs

Sprint first argues that Avaya's late assertion of additional claims of attorney-client privilege and work product on its supplemental privilege logs constitutes a waiver of those privileges/protections. According to Sprint, Avaya has waived its privilege objections regarding several entries by raising new, late objections and fundamentally changing its privilege logs, by abandoning some objections and simultaneously asserting new ones, after Sprint raised issues with the logs. More specifically, Sprint is claiming that Avaya waived its privilege objections to documents identified in the privilege logs where it failed to assert a specific privilege or protection in the first version of its privilege logs. Sprint requests that the Court deem Avaya to have waived

all of its untimely assertions of attorney-client privilege and work product on its supplemental privilege logs.

Avaya defends the changes made to its supplemental privilege logs. It asserts that Sprint previously agreed that Avaya could supplement and revise its initial privilege logs. It further asserts that its August 19, 2010 privilege log was served in response to Sprint's complaints and concerns about its initial privilege logs.

Sprint disputes that it agreed to allow Avaya to add over 200 new objections roughly four months after its initial objections. When Sprint repeatedly demanded that Avaya explain or withdraw its privilege objections, Avaya provided no indication that it was even contemplating additional objections in its supplemental privilege logs. Sprint's stated concerns, and the parties' discussions, were an attempt to narrow Avaya's overbroad privilege objections, and not have Avaya unilaterally and unexpectedly expand them.

Federal Rule of Civil Procedure 45(c)(3)(A)(iii) provides that on timely motion, the court issuing the subpoena "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter and no exception or waiver applies." Under Rule 45(c)(2)(B), the subpoenaed person or entity must serve any objection to the subpoena "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Rule 45(d)(2)(A) sets out the subpoenaed entity's duties in responding to the subpoena when withholding information under a claim of privilege or work product. It provides that:

> A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected,

5

will enable the parties to assess the claim.[2]

This is similar to the language in Fed. R. Civ. P. 26(b)(5)(A), which governs a claim of privilege or protection of trial preparation materials by a *party*. The purpose of the requirement to describe the privileged material being withheld is "to provide a party whose discovery is constrained by a claim of privilege or work product with information sufficient to evaluate that claim and to resist it if that seems unjustified."[3]  The person or entity claiming a privilege or work product protection cannot decide the limits of that party's own entitlement.[4]

In this case, the Court finds that Avaya's later supplementation of its privilege logs, even where it changed the privilege being asserted from work product to attorney-client privilege, or vice versa, or first asserted a privilege or protection does not constitute a waiver of them.  Avaya timely objected to the subpoena on April 22, 2010.  It objected to the requests as seeking the production of documents that are protected by "the attorney-client privilege, attorney work product doctrine and/or other applicable privileges or protections."  It thereafter, on July 16, 2010, produced two privilege logs, one for its production on June 18, 2010 and one for its production on July 2, 2010. The privilege log for the June 18, 2010 production is 30 pages and includes the author, recipient(s), date, document type and description, and privilege being asserted for 182 documents.  The privilege log for the July 2, 2010 production is 144 pages and includes 1,152 entries.  It lists the date, author name, recipient name, carbon copy recipients, privilege being asserted, and description of the privilege. After receiving the logs, Sprint raised issues with Avaya's privilege logs.  On August 19,

---

[2]Fed. R. Civ. P. 45(d)(2)(A).

[3]Fed. R. Civ. P. 45(d)(2) advisory committee's note (1991 Am.).

[4]*Id.*

2010, Avaya served supplemental privilege logs.  The privilege log for the July 2, 2010 production is remarkably similar at 140 pages and containing the same number of entries.  It fills in a number of the blanks of the original privilege log.  The log for Avaya's July 23, 2010 production is 12 pages long and includes 59 entries.

Under these facts, the Court determines that waiver based upon deficiencies or omissions in the first version of Avaya's privilege logs is not appropriate.  Although Rule 45(c)(2)(B) provides a deadline for serving objections to a subpoena, subsection 45(d)(2)(A), which provides what the subpoenaed party must do when withholding subpoenaed information under a claim that it is privileged or trial-preparation material, does not set a deadline or time frame for when a subpoenaed party is to describe the nature of the documents withheld based upon privilege.  Sprint has not cited, and the Court is not aware of, any case where a subpoenaed entity was deemed to have waived its privileges based upon an allegedly initial deficient privilege log that was later supplemented.  Avaya provided enough information on its initial privilege logs, served approximately a month after its June 18, 2010 and July 2, 2010 productions, to put Sprint on notice that it was claiming attorney-client privilege or work product protection for specific documents identified in the logs.  As Avaya points out, it supplemented its logs at least partially because Sprint claimed deficiencies with the previously produced logs.  There was also less than two months delay between the initial privilege logs and the supplemented ones.  Moreover, the Court finds that allowing Avaya to seasonably supplement its privilege log facilitates the parties' efforts to confer about the privilege log and takes into consideration the duties and burdens placed on a subpoenaed non-party by Rule 45(d)(2).  There is

also no evidence suggesting that Avaya's supplementation was in bad faith or made with ill motive.[5]

Finally, the Court acknowledges that waiver of a privilege is a harsh sanction, reserved only in cases

where there is unjustified delay in responding to discovery.[6] Minor procedural violations, good faith

attempts at compliance and other such mitigating circumstances bear against finding waiver.[7] The

Court concludes that Avaya has not waived any of its claims of attorney-client privilege or work

product protection by failing to assert a specific privilege for each document identified in the first

version of its privilege logs.

Sprint also requests that the Court reject Avaya's untimely assertions of a common interest

privilege on its supplemental privilege logs. It argues that Avaya failed to assert that it was claiming

the documents were protected under the common interest doctrine when it objected to the subpoena

on April 22 or in its supplemental objections. Rather, Avaya only asserted objections based upon

attorney-client privilege and the work product doctrine. Avaya first raised the issue of the common

interest doctrine in its third privilege log served on July 23, 2010.

The Court finds that Avaya has not waived its right to assert the common interest exception

to waiver of attorney-client privilege. Rather than being a separate privilege, this doctrine is an

exception to the general rule that the attorney-client privilege is waived following disclosure of

---

[5] *See Sprint Commc'ns Co. L.P. v. Big River Tel. Co., LLC*, No. 08-2046-JWL, 2009 WL 2878446, at *1 (D. Kan. Sept. 2, 2009) (court considered whether party producing privilege log acted in bad faith in determining whether privilege waived based upon insufficient privilege log).

[6] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 452 (D. Kan. 2009); *Heavin v. Owens-Corning Fiberglass*, No. 02-2572-KHV-DJW, 2004 WL 316072, at *2 (D. Kan. Feb. 3, 2004).

[7] *New Jersey*, 258 F.R.D. at 448.

privileged materials to a third party.[8]  As the common interest doctrine is not a separate privilege, it cannot be waived by Avaya's failure to assert it in its objection to the subpoena or in its initial privilege logs.

In addition to these reasons for finding there was no waiver under these circumstances, the Court reminds counsel that they are to use their best efforts to resolve these kinds of discovery disputes by acting cooperatively. The cooperation process should involve information sharing and dialogue in an attempt to resolve discovery disputes without the necessity of the Court ruling on each issue in dispute. In the context of this case, counsel should continue their efforts at cooperation without fearing that those efforts will always be deemed a waiver of a legal right before actually having to submit the issue to the Court.[9]

## III.   Waiver of Attorney-Client Privilege by Disclosure to Third Parties

The Court next considers whether Avaya has waived its attorney-client privilege when it disclosed certain documents to third parties during business negotiations about the possible sale, transfer, or licensing of the patents-in-suit.  Avaya asserts that a "common interest privilege" applies to prevent waiver as to these documents.  The Court notes that Avaya has identified "Common-

---

[8]*See Gipson v. Sw. Bell Tel. Co.,* No. 08-2017-EFM-DJW, 2009 WL 790203, at *17 (D. Kan. Mar. 24, 2009) ("The common interest doctrine exists only where there is an applicable underlying privilege. The doctrine is not a separate privilege, but rather an exception to waiver of the privilege which allows parties who share common interests to secure legal advice regarding their common legal interests."), *objections sustained in part and overruled in part on other grounds*, 2009 WL 4157948 (D. Kan. No. 23, 2009).

[9]*See The Sedona Conference Cooperation Proclamation* (2008), http://www.thesedonaconference.org/content/tsc_cooperation_proclamation,   which   has   been endorsed by this Court. The Sedona Conference is a nonprofit legal policy research and education organization that is comprised of judges, attorneys, and electronic discovery experts who are dedicated to resolving electronic document production issues.

interest/Joint Defense" on 18 privilege log entries.  Specifically, Avaya has asserted that the common interest exception to privilege waiver applies to supplemental privilege log entries 40, 42, 44-52, and 54-57 for the July 23, 2010 production,[10] and log entries 473, 1083-84 for the July 2, 2010 production.[11]  These documents are described on Avaya's privilege logs as confidential email chains, attachments, and presentations discussing information necessary for the provision of legal advice regarding strategy for patents and licensing/litigation, prepared at the request of counsel in reasonable anticipation of litigation and in furtherance of common legal interests.

This case arises under federal law and jurisdiction is based on 28 U.S.C. § 1331.  Federal common law therefore provides the rules of decision as to the application of the attorney-client privilege.[12]   The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law.  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[13] The privilege serves the client's need for legal advice, but it also serves the attorney's need to receive complete information in order to give the proper advice.[14]  The attorney-client privilege is available in patent cases.[15]

_____

[10]*See* ECF No. 577-10 and 577-12.

[11]*See* ECF No. 577-11.

[12]Fed.  R.  Evid.  501.  *See also New Jersey*, 258 F.R.D. at 425 (where case arises under federal law, federal common law instead of Kansas law provides the rules of decision as to the attorney-client privilege).

[13]*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[14]*Id.* at 390.

[15]*See Natta v. Hogan,* 392 F.2d 686, 691 (10th Cir. 1968) ("The attorney-client privilege is designed to facilitate the administration of justice, in order to promote freedom of consultation of

Under federal common law, the attorney-client privilege exists when the following essential elements are satisfied:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.[16]

A critical component of the privilege "is whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence."[17] Because confidentiality is key to the privilege, the attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.[18] "The confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant."[19] Voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege.[20] The burden of showing that the privilege has not been waived remains with the party claiming the privilege.[21]

---

legal advisors by clients. We see no reason why this long-established principle should not be applied to patent cases.") (internal quotations omitted).

[16] *New Jersey,* 258 F.R.D. at 425.

[17] *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985).

[18] *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006).

[19] *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990).

[20] *In re Qwest*, 450 F.3d at 1185.

[21] *New Jersey*, 258 F.R.D. at 426.

Avaya maintains that the documents, including emails containing patent analyses and other patent-related information it disclosed to affiliated companies and other prospective patent purchasers, continue to be protected from disclosure under the common interest exception to waiver of attorney-client privilege.  Avaya states that in July 2007, it began discussing the possibility of transferring some of the patents-in-suit to Inpro Ltd. ("Inpro") and a non-disclosure agreement between the parties was executed on July 24, 2007.  Avaya's patent analyses were then exchanged with Inpro in order for Inpro and its affiliated entities, including High Point and High Point (Guernsey) Ltd., to assess the legal merits of the patents-in-suit, as well as formulate a legal strategy regarding infringement and validity and other patent claims.  Avaya asserts that all documents exchanged between Avaya and its affiliated entities, including its subsidiary Windward Corp., on the one hand, and Inpro and High Point entities on the other, have been kept confidential according to the non-disclosure agreement.  All agreements relating to the transfer of the patents-in-suit involving Avaya, Windward Corp., High Point SARL, and High Point (Guernsey) Ltd., as well as the Corporate Agreement among Avaya, Inpro, and High Point (Guernsey) Ltd. were drafted by the legal teams, both in-house and outside counsel, for these companies. The parties to the transfer agreements and the corporate agreement entered into a confidentiality and common interest agreement.

The Court first considers whether Federal Circuit or Tenth Circuit law applies to determine if Avaya waived its attorney-client privilege by voluntarily disclosing certain confidential patent-related materials.  Generally, a court looks to Federal Circuit law when deciding issues unique to

patent law.[22]  But on non-patent issues, a court applies the law of the circuit in which the district court sits.[23] The key inquiry is whether the issue implicates or is essentially related to patent law.[24] Here, the existence or substantive aspects of the patents-in-suit are not relevant to the issue of whether Avaya has waived any assertion of attorney-client privilege.  The issue of waiver itself and the scope of that waiver as it applies to other documents does not fall exclusively in the realm of patent law.[25]  This Court will therefore apply Tenth Circuit law on waiver of attorney-client privilege in this case.

The Tenth Circuit has recognized the common interest doctrine, which "normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party."[26] This Court has also recognized the common interest doctrine as an exception to wavier of

---

[22]*In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000) (applying Federal Circuit law in reviewing whether an invention record was a communication to an attorney).

[23]*Dorf & Stanton Commc'ns, Inc. v. Molson Breweries*, 100 F.3d 919, 922 (Fed. Cir. 1996) (applying Second Circuit law in reviewing whether attorney-client privilege applied to an order compelling discovery).

[24]*In re Spalding*, 203 F.3d at 803.

[25]*See Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576 (N.D. Cal. 2008) (although Federal Circuit law applies to the scope of privilege waiver, the issue of privilege waiver and the scope of that waiver as it applies to other documents does not fall exclusively in the realm of patent law); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001) (waiver of privileged information is not a substantive patent issue and regional circuit law applies).

[26]*Frontier Ref. Inc. v. Gorman–Rupp Co.*, 136 F.3d 695, 705 (10th Cir. 1998)*; see also In re Qwest*, 450 F.3d at 1195 (providing that the common-interest doctrine "provides an exception to waiver because disclosure advances the representation of the party and the attorney's preparation of the case").

the attorney-client privilege.[27] In *Sawyer v. Southwest Airlines*, this Court held that "for the common interest doctrine to attach, most courts . . . insist that the two parties have in common an interest in securing legal advice related to the same matter and that the communications be made to advance their shared interest in securing legal advice on that common matter. The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial."[28]

Other courts have required a party trying to avail itself of the common interest exception to waiver to show that the disclosure of a privileged communication was to an entity with "an identical legal interest with respect to the subject matter of the communication."[29] In *Libbey Glass, Inc. v. Oneida, Ltd.*,[30] an action for trade dress infringement, the court found that the common interest exception did not prevent waiver of the attorney client privilege with respect to the documents at issue. The documents concerned legal advice given to the defendant by its attorneys about the legal consequences of its purchase of glassware from another company, whom the plaintiff claimed

---

[27]*See Gipson*, 2009 WL 790203, at *17 (plaintiffs in putative collective FLSA action could properly rely on the attorney-client privilege to protect post-suit communications if the underlying communication itself was protected by the attorney-client privilege and if the communication was passed from one plaintiff to another for the purpose of advancing their shared legal interests); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192 JWL-DJW, 2006 WL 3715927, at *1 (D. Kan. Dec. 12, 2006) (movants in environmental liability insurance case failed to assert and provide evidence they had a common interest in securing legal advice related to the same matter and that the communications were made to advance their shared interest in securing legal advice on that common matter); *Sawyer v. Sw. Airlines*, Nos. 01-2385-KHV, 01-2386-KHV, 2002 WL 31928442, at *3 (D. Kan. Dec. 23, 2002) (sufficient evidence to warrant application of the common interest exception to the waiver of any attorney-client privilege for documents shared with the defendant's insurer).

[28]*Sawyer,* 2002 WL 31928442, at *3 (citing *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 348 (N.D. Ohio 1999)) (parties must have a common legal, as opposed to commercial, interest and show that the communications are made in the course of formulating a common legal strategy).

[29]*Libbey Glass*, 197 F.R.D. at 347 (quoting *Duplan Corp. v. Deering Milliken*, 397 F. Supp. 1146, 1172 (D.S.C. 1974)).

[30]197 F.R.D. 342, 347 (N.D. Ohio 1999).

manufactured glassware duplicative of its best-selling patterns.[31] The court concluded that because the parties took "no steps to safeguard the privilege," any privilege was waived.  This failure to take steps to preserve confidentiality and the fact that only one participant in the exchanges used the services of counsel, were the primary considerations cited by the court in finding that the privilege was waived.[32]  The court found alternatively that even if steps had been taken to avoid further disclosure, the communications were not privileged because they were ancillary to the principal activity the three parties were engaged in – namely, the negotiation of an agreement for another company to make and for the defendant to buy and distribute glassware to compete with the plaintiff.[33]

The common interest exception to waiver of attorney-client privilege has also been applied in patent cases.[34]  In cases involving patent litigation, the Federal Circuit has required the entities exchanging the privileged material to have a substantially identical legal interest, as opposed to a solely commercial interest.[35]  In the case, *In re Regents of University of California*, the court held that, for purposes of showing an exception to waiver of attorney-client privilege, the inventor/patentee and a potential licensee had a common legal interest in successfully prosecuting

---

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996);  *Nidec Corp. v. Victor Co. of Japan,* 249 F.R.D. 575, 578-80 (N.D. Cal. 2007); *Fresenius Med. Care Holdings, Inc. v. Roxane Labs., Inc.*, No. 2:05-cv-0889, 2007 WL 895059, at *3 (S.D. Ohio Mar. 21, 2007); *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84 C 5103, 1987 WL 12919, at *1 (N.D. Ill. June 19, 1987); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 514 (D. Conn. 1976).

[35]*In re Regents,* 101 F.3d at 1389.

patent applications.[36]   Although the clear purpose of the parties' joint activity was "to support commercial activity," the court held that in situations where both commercial and legal interests are intertwined, the legal interest is sufficient to establish the legal requisite community of interest.[37] The court concluded that the inventor/patentee and potential licensee had a "substantially identical" legal interest in the subject of the communication – valid and enforceable patents – because of the potentially and ultimately exclusive nature of their license agreement.[38]

In *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,[39] the Northern District of California found that disclosures made during adversarial license negotiations were protected from waiver under the common interest doctrine.   The court addressed whether the defendant waived its rights under the attorney-client privilege and/or the work product doctrine when it voluntarily disclosed its attorney's opinion letter to a non-party with whom it was attempting to negotiate the sale of a business.   The court articulated its concerns about the effect that finding waiver too freely might have on the type of business transaction where the disclosure occurred.   The court noted that this could make it appreciably more difficult to negotiate sales of businesses and products that arguably involve interests protected by laws relating to intellectual property.   The court reasoned that:

> Unless it serves some significant interest courts should not create procedural doctrine that restricts communication between buyers and sellers, erects barriers to business deals, and increases the risk that prospective buyers will not have access to important information that could play key roles in assessing the value of the business or product they are considering buying. Legal doctrine that impedes frank communication between buyers and sellers also sets the stage for more lawsuits, as

---

[36]*Id.*

[37]*Id.*

[38]*Id.*

[39]115 F.R.D. 308, 311 (N.D. Cal. 1987).

buyers are more likely to be unpleasantly surprised by what they receive. By refusing to find waiver in these settings courts create an environment in which businesses can share more freely information that is relevant to their transactions. This policy lubricates business deals and encourages more openness in transactions of this nature.[40]

In a more recent patent case from the Eastern District of Texas, *Mondis Technology., Ltd. v. LG Electronics, Inc.*,[41] one of the defendants sought to compel privileged communications regarding the plaintiff-patent holder's dispute with a former potential patent buyer regarding the value of the patent sale. The court compelled production of the communications, finding that the plaintiff-patent holder and a potential buyer did not have a common legal interest; their interests were instead directly adverse when they were negotiating the value of the patents.[42] Although recognizing that the patentee and potential buyer had a common legal interest in the validity of the patents, the court found that the core of the communications was not the validity of the patents, but instead a negotiation for a potential adjustment to the contract price of the patent sale.

Sprint argues that Avaya lacks the necessary "identical legal interest" previously applied by this Court to invoke the common interest doctrine here. It points out that Avaya offers no details regarding its communications and voluntary disclosures with independent, potential purchasers on the opposite side of a proposed business transaction. Nothing Avaya provides in its two cursory affidavits or its brief suggests that every part of every document passed between Avaya and these third parties is actually privileged, let alone protected by a common interest on legal matters. Sprint asserts that the documents produced by the plaintiff High Point in this case reveal ongoing

---

[40]*Id.*

[41]Nos. 07-CV-565-TJW-CE, 2:08-CV-478-TJW, 2011 WL 1714304, at *3-5 (E.D. Tex. May 4, 2011).

[42]*Id.* at *4.

business-related discussions with Avaya not involving legal advice.

Avaya argues that it shared a common legal interest with the affiliated entities to whom it shared the privileged communications. It argues that although the negotiating parties may have been "on opposite sides of the deal" during the negotiations, they shared a common interest in the patents' validity, enforceability, and infringement. Avaya asserts that, at the time of the information exchange, the negotiating parties were discussing a possible transaction that would have, and ultimately did (in the case of High Point) result in infringement litigation. The communications made and documents shared during negotiations were made and shared confidentially after the parties executed a confidentiality and common interest agreement. Avaya maintains that the disclosed documents, including claims charts and other information prepared by or at the direction of counsel, were shared to allow the third parties to evaluate Avaya's litigation strategy. Avaya argues that the operative facts here are similar to those in *Hewlett-Packard*,[43] where the court found disclosures made during adversarial patent license negotiations to be protected from waiver under the common interest exception.

In this case, Avaya has voluntarily disclosed confidential patent analyses and other patent-related information to affiliated companies and other prospective patent purchasers during patent-related negotiations with those companies. A party's voluntary disclosure of confidential materials ordinarily waives its attorney-client privilege to the materials disclosed.[44] But certain exceptions to waiver are available. One of those exceptions is the common interest doctrine. This doctrine protects parties, who have a common legal interest in the subject of the communications, from

---

[43]115 F.R.D. at 311.

[44]*In re Qwest*, 450 F.3d at 1195.

waiving their right to assert privilege when they disclose the confidential information.[45]  Under that doctrine, Avaya must show that it had a common legal interest with the third parties at the time it disclosed the confidential information.  Although the Court has previously required a party invoking the common interest exception to privilege waiver to show that the nature of the legal interest to be identical,[46] those cases were not patent cases.  The Court will therefore not require Avaya to show an identical common legal interest to avail itself of the common interest exception to privilege waiver in this case.  Instead, the Court will require Avaya to show a substantially identical legal interest in the subject of the communication with the entity receiving the privileged material, as used in the Federal Circuit's decision, *In re Regents of University of California*.[47]

Reviewing the briefing and affidavits submitted by Avaya, the Court concludes that Avaya has sufficiently shown that it had a substantially identical common legal interest in the validity, enforceability, and potential for infringement of the patents-in-suit at the time it disclosed the communications to Windward Corporation, High Point, Inpro, and other prospective patent purchasers.   In the Binn Declaration submitted by Avaya, Mr. Binn states Avaya entered into confidential discussions with these companies about the possible transfer of certain patents, which included the patents-in-suit, at the direction of Avaya attorneys.  As soon as Avaya first began discussing the possibility of transferring certain patents to Inpro in July 2007, it executed a non-disclosure agreement. At the direction of Avaya attorneys, materials were created and collected,

---

[45]*Id.*

[46]*See U.S. Fire*, 2006 WL 3715927, at *6 ("The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial"); *Sawyer*, 2002 WL 31928442, at *3 (same).

[47]101 F.3d at 1390.

and patent analyses were prepared, which Avaya then exchanged with Inpro in order for Inpro and its affiliated entities to assess the legal merits of the patents-in-suit, as well as formulate a legal strategy regarding infringement and validity and other patent claims. Avaya shared these patent analyses with other potential transferees under non-disclosure agreements. Avaya also claims that all documents it exchanged with its affiliated entities, Windward Corp., Inpro, and High Point, have been kept confidential according to the non-disclosure agreement.  Like the considerations cited by the court in *Libbey Glass*,[48] Avaya and the entities receiving the confidential materials have taken steps to preserve the confidentiality of the materials and counsel was involved in the exchanges.  All agreements relating to the transfer of the patents-in-suit and the corporate agreement were drafted by the legal teams, both in-house and outside counsel, for these companies. The parties to the transfer agreements and the corporate agreement entered into a confidentiality and common interest agreement.  Although Avaya and the other companies had adversarial interests when they were negotiating the possible transfer of the patents, they still had a common legal interest in the validity, enforceability, and potential infringement of the patents-in-suit.  This is sufficient to establish their common interest in the communications exchanged. Avaya therefore has not waived its attorney-client privilege in the documents and materials it disclosed to affiliated entities and other potential patent transferees under the common interest doctrine.

## IV.    Attorney-Client Privilege

Sprint contends that Avaya has not met its burden of showing that attorney-client privilege applies to the documents it is withholding from production.  It points out that Avaya has not produced a single document regarding its analyses of the patents-in-suit or its efforts to license,

---

[48]197 F.R.D. at 342.

market, litigate infringement, or negotiate with potential purchasers of the patents. According to Sprint, Avaya has made no effort to redact legal advice and produce non-privileged information from such documents. Instead, Avaya asserts claims of attorney-client privilege and/or attorney work product for almost all of the approximately 1,400 documents withheld. It asks the Court to find that Avaya has not met its burden of supporting its privilege claims.

Avaya maintains that it properly asserted the protections of attorney-client privilege over the documents bearing such designation on the privilege logs provided to Sprint. The majority of the documents designated as privileged on its logs concern the patents-in-suit and were prepared by attorneys, or under the guidance of attorneys, to facilitate attorneys' legal analysis of the patents, as well as opportunities to enter into licenses with or institute litigation against patent infringement. This patent and litigation evaluation work was performed by members of Avaya's Intellectual Property Law Group ("IP Law Group"), who began this research and analysis of the patents-in-suit and licensing and litigation opportunities after Avaya's acquisition of the patents in the spinoff of Avaya from Lucent in 2000. Additional documents designated as attorney-client privileged on the Avaya privilege logs concern materials prepared or collected under the guidance of attorneys for the purposes of facilitating attorneys' legal analysis.

The subpoenaed entity seeking to invoke the attorney-client privilege bears the burden of establishing its applicability.[49]   As the proponent of the privilege, it must provide sufficient information to enable the requesting party and the court to determine whether each element of the

---

[49]*In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010) (quoting *In re Grand Jury Subpoena*, 697 F.2d 277, 279 (10th Cir. 1983)).

privilege has been satisfied.[50]

In support of its assertion of attorney-client privilege for a majority of the documents subpoenaed, Avaya has offered two declarations. The first declaration is from Russell W. Binn, Jr., who is Corporate Counsel in Avaya's IP Law Group.[51] The second declaration offered by Avaya is from Douglas Spencer, a former employee of AT&T, Lucent, and Avaya Technology, the former owners of the patents-in-suit.[52] He is also a co-inventor on the patents-in-suit. Since 2001, he has been a self-employed consultant in the fields of telephony, networks, and patented technologies. From November 2003 through December 2007, Mr. Spencer has provided technical consulting services to Avaya for attorney-directed projects analyzing patents. Beginning in January 2008 and continuing to the present, he has been an expert technical litigation consultant to the plaintiff, High Point, including part of this litigation.

## A.    Communications Made for the Purpose of Rendering Legal Advice

Sprint argues that Avaya cannot claim attorney-client privilege for communications made in furtherance of business concerns rather than legal advice or imminent litigation. It complains that Avaya tosses its analysis of the patents and its efforts to license them, litigate infringement of them, market the sale of them, negotiation with potential purchasers, and its eventual sale to High Point all into one body of work. According to Sprint, Avaya asserts that everything in its entirety constitutes multi-year legal preparation in anticipation of litigation that never occurred. Sprint claims that these tasks are separate and distinct, and do not all suggest "legal advice" in the

---

[50]*Phalp v. City of Overland Park, Kan.*, No. 11-2354-JAR, 2002 WL 1162449, at *2 (D. Kan. May 8, 2002).

[51]Binns Decl. (ECF No. 602-1) ¶ 3.

[52]Spencer Decl. (ECF No. 602-2) ¶ 2.

categorical fashion Avaya suggests. Sprint asserts that marketing and selling patents to the highest bidder is qualitatively different from preparing for and pursuing litigation for patent infringement.

"Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice."[53] The protection afforded by the attorney-client privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney."[54] And there must be a connection between the subject of the communication and the rendering of legal advice for the attorney-client privilege to shield the communication from disclosure. Finally, legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice.[55]

In *Great Plains Mutual Insurance Co., Inc. v. Mutual Reinsurance Bureau*,[56] the court recognized that attorneys may have multiple roles in a corporate organization and not all communications to and from attorneys in their different roles may be protected under the attorney-client privilege.

> Communications must be made in the role of an attorney in order to qualify for the attorney-client privilege. Likewise, a full-time practicing attorney does not imbue all confidential communications with the privilege. Such an attorney may have multiple roles in his activities (e.g., business advisor, corporate director, labor negotiator) that are not necessarily attorney-related roles for the purpose of the privilege. In the representation of corporate interests, counsel might find themselves performing multiple roles. Frequently the roles are closely related, which makes it virtually

[53]*New Jersey*, 258 F.R.D. at 443 (citing *Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997)).

[54]*Id.* at 444.

[55]*Id.*

[56]150 F.R.D. 193, 197 (D. Kan. 1993).

impossible to isolate a purely legal role from the nonlegal.[57]

The court found that the discovery sought – board meeting minutes – were directly related to legal advice rendered by plaintiff's attorney in his capacity as legal advisor. The court noted that, although the advice rendered by plaintiff's attorney could conceivably affect plaintiff's success or failure as an ongoing entity, this possibility did not convert the legal advice rendered by its attorney into discoverable "business advice" because such a construction of the attorney-client privilege would "eviscerate the privilege and essentially render it a nullity."[58]

As with non-patent cases, not all communications relevant to patent matters between attorney and client or between attorneys are protected under attorney-client privilege.[59] The scope of protection can be determined only on a case-by-case basis, bearing in mind the purposes of the protection and the need for "flexibility and sound judicial discretion."[60] Distinguishing between what communications are made to obtain legal advice – as opposed to business advice – can be particularly difficult in patent cases. In *Hercules, Inc. v. Exxon Corp.*, the court described the multiple roles a corporate patent attorney serves and the inherent difficulty with making a distinction between legal advice and business advice.

> Patent attorneys, particularly those employed in corporate patent departments, often serve dual functions as legal advisers and as business advisers. Communications between those attorneys and members of operating or research departments often concern technical information which may or may not be relevant to particular legal

[57] *Id.* (quoting Attorney-Corporate Client Privilege ¶ 3.02[2][a][iv]).

[58] *Id.*

[59] *See United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-60 (D. Mass. 1950) (communications that neither invite nor express any legal opinion, but merely involve the soliciting or giving of business advice, are not privileged).

[60] *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 144 (D. Del. 1977).

advice requested from the attorney.[61]

     *   *   *

An important responsibility of most patent attorneys, especially those employed by corporate patent departments, is to assess the business implications of the company's patent position. Many of the communications between the patent attorney and non-legal personnel of the corporation would therefore predominately reflect business concerns, such as the competitive position of the company, marketing strategy, licensing policy, etc. The Court recognizes that business and legal advice may often be inextricably interwoven. A single proposed course of conduct such as patenting and licensing of an invention will have both legal and business ramifications, and the lawyer may advise as to both in a single communication.[62]

In this case, Avaya claims that patent analyses and other communications evaluating patents, technologies, and international telecommunications markets were for the purposes of facilitating attorneys' legal analysis relating to patents and in anticipation of potential licensing and litigation related to patent claims. The key is that the purpose of communication is to obtain legal advice from an attorney. It does not matter whether the legal advice pertains to imminent or ongoing litigation or pertains to legal advice on whether to sell a patent, enter into a licensing relationship, or make some other business decision. The attorney-client privilege would protect those communications as well, as along as the communications were for the purpose of seeking legal advice regarding those business decisions.

In its privilege log, Avaya asserts for each document withheld that it was created for the purposes of legal advice or for the provision of legal advice regarding patents, patent litigation, patent analysis, patent transfer, and/or assignment. The Court finds this is sufficient to support its claims that the documents were prepared for its attorneys to provide legal advice, rather than just business advice.

---

[61]*Id.* at 143.

[62]*Id.* at 147.

## B.        Documents Prepared by Non-Attorneys

Sprint also contends that Avaya cannot claim attorney-client privilege for documents that were prepared by non-attorneys.  In response, Avaya cites to cases from this Court recognizing that the attorney-client privilege is not lost merely because an employee conveys the legal communication to another employee for action and that even management personnel for a corporate defendant may discuss privileged matters without waiving the privilege.

This Court has held that the attorney-client privilege does not require an attorney to have either authored or received the document at issue in order to maintain the privilege.[63]  In *Williams v. Sprint/United Management Co.*, this Court recognized that "[o]rganizational clients and business entities often are personified by a number of employees. In preparation for, or in the midst of, consultations with an attorney, employees of the client will often consult one another to ensure that the attorney's advice is based on full knowledge of all relevant facts."[64]  The Court found that "[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."[65]  Therefore, where the client is a corporation, attorney-client privilege may attach to documents transmitted between non-attorney employees of the corporation if the communications are confidential and are for the purpose of obtaining legal advice from an attorney.

In the Declaration of Avaya's corporate counsel, Mr. Binns states that members of Avaya's

---

[63]*Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 266599, at *2 (D. Kan. Feb. 1, 2006) (attorney-client privilege does not require an attorney to have either authored or received the document in order to maintain the privilege, what is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice).

[64]*Id.* at *3.

[65]*Id.* (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)).

IP Law Group include technical experts, licensing professionals, as well as legal personnel and attorneys.[66]  The legal professionals, and other personnel in the IP Law Group who worked under the direction of attorneys, analyzed the patents-in-suit and evaluated infringement issues. One of the responsibilities of the IP Law Group was to conduct these patent analyses in order to assess opportunities to enter into licenses with, or institute litigation against, infringers of the patents.[67]  According to Mr. Binns' Declaration, all of the work prepared by, and performed for, the IP Law Group regarding the patents-in-suit was for the purposes of facilitating attorneys' legal analysis relating to the patents-in-suit and in anticipation of potential litigation relating to patent claims.[68]

Avaya can claim attorney-client privilege for documents that are prepared by or transmitted between non-attorneys so long as the communication was made in confidence for the purpose of obtaining or conveying legal advice from its attorneys.  Due to the technical nature of the patents that Avaya once owned, it is reasonable for Avaya to have utilized technical expertise and consultants in communicating with its attorneys and for the purpose of assisting its attorneys in rending legal advice regarding the patents.  The presence of a third-party, such as a consultant, does not destroy the attorney-client privilege where that party is the client's agent or possesses "a commonality of interest with the client."[69]

Here, one of those consultants, Mr.  Spencer, states in his Declaration that in his role as consultant to Avaya's IP Law Group, he was tasked with assisting Avaya's attorneys with the

---

[66]Binns Decl. ¶ 4.

[67]Binns Decl. ¶ 5.

[68]Binns Decl. ¶ 6.

[69]*SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476-77 (E.D. Pa. 2005).

evaluation of certain patents acquired by Avaya when it was spun off from Lucent Technologies, including the patents-in-suit, and the evaluation of technologies believed to be infringing the patents-in-suit in anticipation of licensing discussions, as well as litigation against infringers who refused to take a license to the patents.[70]   His Declaration also states that within the IP Law Group it was well understood that all of the work prepared by and performed for the IP Law Group regarding the patents-in-suit was prepared at the direction of the attorneys for the purposes of facilitating attorneys' legal analysis relating to the patents-in-suit, and in anticipation of potential licensing and litigation relating to patent claims that the IP Law Group was evaluating.[71]

Sprint also specifically challenges documents that Avaya identifies were prepared by Eugene Potkay, Ian Bashaw, or Clark Petrie.  It argues that these individuals work or worked in Avaya's IP Law and Management Group.  They are not attorneys but instead were responsible for business activities such as negotiating licenses and related issues.  Sprint asserts that nothing suggests that these individuals were providing or developing legal advice.  In its response, Avaya states that these individuals were members of the IP Law Group, were involved in the evaluation of the patents-in-suit and litigation opportunities, and were working at the direction of Avaya attorneys.  Eugene Potkey was patent licensing and management vice president of Avaya's IP Law Group, Ian Bashaw was patent licensing director, and Clark Petrie was patent licensing senior manager.

Avaya has convinced the Court that communications prepared by these individuals, even though they are not attorneys, should qualify as protected from disclosure as attorney-client privileged. Avaya has asserted that they were high-level members of Avaya's IP Law Group and

---

[70]Spencer Decl. ¶ 5.

[71]Spencer Decl. ¶ 6.

were involved in the evaluation of the patents-in-suit and working at the direction of Avaya's attorneys. Documents they prepared or transmitted may appropriately be included as attorney-client privileged. Avaya is not prohibited from claiming attorney-client privilege for documents that were authored or created by non-attorney employees or consultants of Avaya's IP Law Group.

### C.    Sufficiency of Privilege Logs

#### 1.    No Recipient or Author Identified

In addition to its substantive challenges to Avaya's assertion of attorney-client privilege and work product, Sprint also challenges the sufficiency of several aspects of Avaya's supplemental privilege logs. It claims that the logs assert privileges over documents with little identifying information, including several entries that have no author or recipient listed on the log. Avaya's response to this is that "unknown" files often represent responsive handwritten notations that do not have any identifying information.

The Court finds Avaya's privilege log entries that do not contain any information in the author or recipient name columns are not sufficient for Sprint or the Court to assess Avaya's claim that the materials are protected by the attorney-client privilege. This information is necessary to properly assess Avaya's claim of privilege.[72] The Court will therefore grant Sprint's motion to compel Avaya to produce all documents identified in its privilege logs with blank or "unknown" entries for the "Author Name" or "Recipient Name" columns.

#### 2.    Undated Privilege Log Entries

Sprint also challenges several privilege log entries that are completely undated or only

---

[72]*See Smithkline Beechman Corp. v. Apotex Corp.*, 193 F.R.D. 530, 539 (N.D. Ill. 2000) (documents for which no author or recipient identified on log must be produced).

identify a year or month.   Avaya's response is that one of the log entries (No. 1137) represents a very early draft corporate agreement with both handwritten and typed edits and notations. The notations are substantive, e.g., a reference to percentage distributions of licensing revenue. This draft does not include a verifiable date.

The Southern District of New York has allowed patentee-plaintiffs claiming attorney-client privilege to withhold undated documents, finding that the date of the communication was not significant to the privilege.[73]   It found the date of the communication would be significant if, at the time of the communication, either there was no attorney-client relationship, or the attorney was not a qualified member of the bar.[74]   The Court likewise finds here that the date of the document is not critical to assessing Avaya's claims that the withheld documents are protected by the attorney-client privilege.  The Court will therefore deny Sprint's motion to compel Avaya to produce all documents identified in its privilege logs with undated or partially dated entries.

### 3.    Documents Addressed to "File" as Recipient

Sprint next takes issue with Avaya's privilege log entries that list the recipient of the materials as "File."   It argues that these entries fail to identify a meaningful recipient and makes it impossible to assess whether Avaya has properly asserted attorney-client privilege for these documents.  Avaya responds that privilege log entry 475 is a copy of a draft presentation that reflects the research and study of its Patent & Licensing Management Group.   The draft discusses potential royalty targets and the value of the patents, and states on its face that it is privileged and prepared at the request of counsel.   Avaya further clarifies that "File" was added when it was custodians'

---

[73]*In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 85 (S.D.N.Y. 2006).

[74]*Id.*

personal files.

A memorandum to a "file" may be protected where it records a confidential attorney-client communication.[75]  But if the attorney's notes or memoranda to file are not communicated to the client, and are not memorializing a confidential communication with the client, they do not fall within the scope of the attorney-client privilege.[76]  They may, however, be protected under work-product immunity.  Where the document is not created by a lawyer, then there may need additional showing that it was created at the direction of counsel.

The document discussed by Avaya in its response was authored by Ian Bashaw, patent licensing director of Avaya's IP Law Group, and sent to "File" as recipient.  It is described on the log as a "[c]onfidential draft referring to information gathered at the request of counsel for the purpose of providing legal advice regarding potential patent assignment . . . ."[77]  Because the only identified recipient is "File," Avaya has failed to establish that the document constitutes a communication that can be protected under the attorney-client privilege.  Avaya has not otherwise asserted that it memorializes a communication to or from its attorneys.  Avaya has therefore failed to establish that the document meets the communication element of attorney-client privilege.  Avaya

---

[75]*In re Rivastigmine Patent Litig.*, 237 F.R.D. at 83 (citing *Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962); *Note Funding Corp. v. Bobian Inv. Co.*, No. 93 Civ. 7427, 1995 WL 662402, at *7 (S.D.N.Y. Nov. 9, 1995); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 49 (S.D.N.Y. 1989); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 523 (D. Conn. 1976)).

[76]Robert A. Mathews, 7 Annotated Patent Digest § 42:47 (2011) (collecting cases). *See also Info-Hold, Inc. v. Trusonic, Inc.*, No. 1:06cv543, 2008 WL 2949399, at *3-4 (S.D. Ohio July 30, 2008) (notes reflecting legal questions or attorney notes do not constitute or memorialize communication either by or to the client and are thus not within the attorney-client privilege); *LG Electronics, Inc. v. Motorola, Inc.*, No. 10 CV 3179, 2010 WL 4513722, at *2 (N.D. Ill. Nov. 2, 2010) (court found that document not shared with or conveyed to the client was not a "communication" for purposes of the attorney-client privilege).

[77]ECF No. 577-11 at 62.

will therefore be required to produce the document identified in privilege log 475.

Avaya does not specifically address the remaining 165 privilege log entries to "File" on its supplemental log for the July 2, 2010 production. None of the entries indicate that an attorney authored the document, however, many of them indicate that they were authored by a member of Avaya's IP Law Group. They could conceivably contain material protected by the attorney-client privilege. Accordingly, the Court determines that the best way to ascertain whether the materials are attorney-client privileged is to conduct an *in camera* review of them. Rather than conduct the in camera inspection itself, the Court believes the Special Master in this case could handle this matter on a more expeditious basis. The Court will therefore refer to the Special Master, Karl Bayer, the task of conducting an *in camera* review of Avaya's documents identified on its supplemental privilege log as sent only to "File,"[78] unless Avaya or the parties file a written objection to the referral of this task to the Special Master by **February 8, 2012**.

### 4.   Documents Where "Avaya" Listed as Only Author or Recipient

Sprint also challenges the privilege log entries with the author identified as "Avaya." In its response to the motion, Avaya states that "privilege entry 237 is an Avaya internal document analyzing unlicensed vendors, the carriers sold to and the approximate size of the contract to determine potential royalties and probability of collection of royalties."

The Court notes that supplemental privilege log entry 237 identifies the author as "Anna A. Spencer and Avaya" and was sent to "File." In the Binns Declaration, Anna A. Spencer is identified as a "metadata alias" for Douglas Spencer, co-inventor and consultant to Avaya.[79] The log further

---

[78]Except for privilege log entry 475, which Avaya must produce.

[79]Binns Decl. ¶ 15.

describes the document as a "[c]onfidential patent analysis created at the direction of counsel for the provision of legal advice on patents in reasonable anticipation of litigation."[80]

The Court is unclear how a document described as "analyzing unlicensed vendors, the carriers sold to and the approximate size of the contract to determine potential royalties and probability of collection of royalties" constitutes as a "[c]onfidential patent analysis created at the direction of counsel for the provision of legal advice on patents in reasonable anticipation of litigation," as alleged in Avaya's privilege log.  Avaya has failed to establish that this document is what the privilege log identifies it as.  The Court also fails to see how information communicated from a outside consultant only to "Avaya" on potential royalties pertains to the provision of legal advice.  Avaya has therefore failed to establish that this document should be protected under the attorney-client privilege.  Avaya will therefore be required to produce the document identified as privilege log entry 237.

For the remaining documents where the author is identified on the privilege log as "Avaya," the Court concludes that this is not sufficient information to establish that a qualified person authored the document, or that it was for the purpose of obtaining legal advice or memorialized a communication from an attorney pertaining to legal advice.  The court in the case *In re Rivastigmine Patent Litigation*[81] addressed a similar issue where the party asserting attorney-client privilege had listed only a department as the author of the document.  The court concluded that the plaintiffs' failure to identify the individuals involved in the particular communications made it impossible for them to sustain their burden of establishing that the relevant individual had a status that qualified

---

[80]ECF No. 577-11 at 30.

[81]237 F.R.D. at 83-84.

under the attorney-client privilege."[82]

Sprint also challenges the privilege log entries where "Avaya" is listed as the sole recipient. In its response to the motion, Avaya states that the logs originally represented a blank recipient because they were not sent to anyone. Rather, these documents were kept in, and collected from, the files of the individuals listed as the author or custodian. Avaya claims that when Sprint raised the issue, it added "Avaya" for completeness of the logs and as a custodian when it was a document prepared for Avaya.

For essentially the same reasons stated above for documents authored by "Avaya," the Court concludes that privilege log entries identifying "Avaya" has the sole recipient fail to provide sufficient information to establish all the elements of attorney-client privilege. The Court sees instances where documents sent from Avaya IP Law Group to "Avaya" could fall within the privilege. Like Avaya's privilege log entries for documents sent only to "File," the Court finds that documents authored by or sent to "Avaya" could conceivably contain material protected by the attorney-client privilege, and this could be ascertained by an *in camera* review of the documents. The Court will therefore refer to the Special Master the task of conducting an *in camera* review of Avaya's documents identified on the privilege log as either authored by or sent to "Avaya,"[83] unless Avaya or the parties file a written objection to the referral by **February 8, 2012**.

## V.   Work Product

Avaya has also withheld documents responsive to the subpoena based upon the work product doctrine. Sprint argues that Avaya has not met its burden of supporting its broad assertion of

---

[82]*Id.* at 84.

[83]Except for privilege log entry 237, which Avaya must produce.

attorney work product for the documents withheld on this basis.  According to Sprint, Avaya asserts that the documents constitutes multi-year legal preparation in anticipation of litigation that never occurred.

A review of the supplemental privilege logs shows that Avaya has asserted attorney work product, in addition to attorney-client privilege, for a majority of the documents, including ones that are undated, sent only to "File," and authored by or sent to "Avaya."  The dates of these documents range from 2000 to 2010.  A review of Avaya's supplemental privilege log for the July 2, 2010 production shows that Avaya has asserted attorney-client privilege for all the entries, except for 28 entries where it only asserted work product.  Specifically, Avaya has asserted attorney work product only for supplemental privilege log entries 14, 22, 49, 97, 232, 774, 821-22, 82, 844-45, 848, 856-57, 917, 922-24, 928-29, 942-48, and 1090.[84] On the log for the July 23, 2010 production, Avaya asserted work product for all but five documents.

To establish work product protection, the person or entity seeking to invoke work product immunity must show that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.[85]  The party seeking to invoke work product immunity has the burden to establish all elements of the immunity and this burden can be met only by an evidentiary showing based on competent evidence.[86]  For the doctrine to apply, there must be a real

---

[84]*See* ECF No. 577-11.

[85]*S.E.C. v. McNaul,* 271 F.R.D. 661, 665 (D. Kan. 2010); Fed. R. Civ. P. 26(b)(3)(A).

[86]*McCoo v. Denny's Inc.*, 192 F.R.D. 675, 683 (D. Kan. 2000).

and substantial probability that litigation will occur at the time the documents were created.[87]  Two components determine whether documents are prepared "in anticipation of litigation."[88]  The first is the causation requirement – the document in question must have been created because of the anticipation of litigation, i.e., to prepare for litigation or for trial.[89]  The second component imposes a reasonableness limit on a party's anticipation of litigation-the threat of litigation must be "real" and "imminent."[90]  Courts look to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product.[91]  Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine.[92]

Avaya argues that the creation and collection of attorney-client privileged documents during the course of the work performed at the direction of attorneys by the members of Avaya's IP Law Group to evaluate the patents-in-suit and assess licensing and litigation opportunities also qualify for the protections of the work product doctrine.  Avaya asserts that one of the tasks performed by Avaya's IP Law Group was to assess technologies believed to be infringing the patents-in-suit in anticipation that litigation would be instituted against infringers who refused to take licenses.  Thus, members of the IP Law Group created and collected documents to assist the attorneys in the group

---

[87] *Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09-2656-KHV, 2010 WL 3880027, at *5 (D. Kan. Sept. 28, 2010).

[88] *Id.* at *6.

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Id.*

to prepare for likely litigation against the target companies being assessed by the group. Other documents were created or collected by Avaya's IP Law Group to assist the attorneys in the group in assessing the possible transfer of certain Avaya patents, including the patents-in-suit.

Avaya, as the entity withholding documents responsive to the subpoena, has the burden of establishing by a "clear showing" that the material sought is work product.[93] It has not met its burden here. Avaya has failed to show that a real and substantial probability of litigation existed at the time the documents were created. The documents, ranging in date from 2000 to 2010, span ten years and even include documents prepared after Avaya sold the patents-in-suit to High Point in 2008. The fact that the patents-in-suit eventually did end up in the instant litigation, where the current patent owner, High Point, has sued Sprint for infringement, does not convince the Court that Avaya created the documents in anticipation of litigation. Avaya's claim that its creation and collection of documents was to prepare for "likely litigation against the target companies" being assessed by its IP Law Group is also too remote and speculative to constitute a "real" and "imminent" threat of litigation. Avaya has failed to meet its burden to show that the documents withheld as work product were created in anticipation of litigation. Avaya therefore cannot withhold any documents from production based upon the work product doctrine.

**IT IS THEREFORE ORDERED THAT** Sprint's Motion to Compel Documents from Avaya, Inc. (ECF No. 573) is granted in part and denied in part. **Within thirty (30) days of the date of this Memorandum and Order**, Avaya shall produce the documents identified on its privilege logs where no author or recipient is listed, and privilege log entries 475 and 237 from Avaya's supplemental privilege log for its July 2, 2010 production. Avaya shall also produce all

---

[93]*S.E.C.*, 271 F.R.D. at 665.

documents for which it has asserted are protected only by the work product doctrine on its privilege logs.

**IT IS FURTHER ORDERED THAT** the Court will refer the task of conducting an *in camera* review of Avaya's documents identified on its privilege logs as sent to "File," or authored by or sent to "Avaya," to Karl Bayer, the Special Master already appointed in this case, unless written objections are filed by **February 8, 2012**.

**IT IS FURTHER ORDERED THAT** Sprint and Avaya shall each bear their own costs related to the motion.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 25th day of January 2012.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties