IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| HIGH POINT SARL, | ) | |
| | ) | |
| **Plaintiff and Counterclaim Defendant,** | ) | **CIVIL ACTION** |
| | ) | |
| | ) | **Case No. 09-2269-CM-DJW** |
| **v.** | ) | |
| | ) | |
| SPRINT NEXTEL CORPORATION, et al., | ) | |
| | ) | |
| | ) | |
| **Defendants and Counterclaimants.** | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion for a Protective Order (ECF No. 592) filed by non-party Motorola Solutions, Inc. ("Motorola"). It requests further protective order protections under Fed. R. Civ. P. 26(c) and sanctions under Fed. R. Civ. P. 37(b)[1] based upon High Point's alleged use of confidential documents produced by Motorola in this case to support co-pending patent litigation in Japan, in violation of the Protective Order entered in this case. As explained below, the motion is denied.

## I.      Background Facts

In December 2008, High Point SARL (hereinafter "High Point") filed this patent infringement case against Sprint Nextel Corporation, Sprint Spectrum L.P., SprintCom, Inc., Sprint Communications Company L.P., Sprint Solutions, Inc., APC PCS, LLC, APC Realty and Equipment Company, LLC, and STC Two LLC (collectively referred to as "Sprint"). High Point alleges that

---

[1] In its reply (ECF No. 611), Motorola limits its discussion to Fed. R. Civ. P. 26(c) and states it is not seeking to have High Point's counsel held in contempt. The Court will therefore limit its consideration of the motion to Rule 26(c).

Sprint's cellular CDMA telephone networks infringe upon the four following United States patents assigned to High Point:  Patent No. 5,195,090; Patent No. 5,305,308; Patent No. 5,184,347; and Patent No. 5,195,091 (collectively the "patents-in-suit").  The patents-in-suit are directed to telecommunications equipment for a wireless cellular telephone network.  Non-party Motorola is connected to this case because it supplies infrastructure components to Sprint's cellular telephone networks that High Point alleges infringe the patents-in-suit.

### A.     High Point's Patent Infringement Case Against KDDI in Japan

At the same time High Point commenced this action, it also brought suit for patent infringement against KDDI Corporation ("KDDI") before the Tokyo District Court, alleging that KDDI's wireless telecommunications system infringes its Japanese Patent No. 2588498. High Point's Japanese patent is a foreign counterpart to one of the patents-in-suit.

In the Japanese proceedings, telecommunications company KDDI asserted a defense of non-infringement based, in part, on the operation of network infrastructure equipment it purchased from Motorola.    In support of its defense, KDDI submitted two declarations from Motorola's Senior Staff Engineer, Michael J. Kirk, describing the operation of KDDI's network.   After KDDI submitted the first Kirk declaration, the Tokyo court on July 28, 2010 asked KDDI to provide further information concerning the packet transmission timing of the Motorola equipment.  In response, in September 2010, KDDI offered the second Kirk declaration. On October 15, 2010, the Tokyo court again requested that KDDI to provide further information concerning packet transmission timing operation of the Motorola equipment.

### B.     Pertinent Protective Order Provisions

The Protective Order entered on June 23, 2009, and amended on December 14, 2010,

provides that "Confidential Materials shall be used solely for the purposes of this Action and shall not be used for any other purpose except as expressly provided herein or by further Order of the Court."[2]   It defines "Confidential Materials" as "[d]ocuments and/or information containing confidential research, development, marketing, financial and/or competitive information and/or trade secrets."[3]   The Protective Order further provides that it applies to "all Confidential Information subject to discovery in this Action produced either by a party or non-party in discovery in this Action."[4] It sets out three tiers of confidentiality: (1) Confidential, (2) Highly Confidential-Outside Counsel Only, and (3) Highly Restricted Confidential-Source Code.   The Protective Order also provides that "[t]he restrictions on the use of Confidential Materials established by this Protective Order are applicable only to the use of information received by a party from another party or from a nonparty. A party is free to use its own information as it pleases."[5]   To the Court's knowledge, Motorola was not consulted, nor did it participate in, the parties' drafting and submission of the Protective Order.

### C.     Motorola's Involvement in this Case

After being served with a subpoena in July 2010, Motorola began producing documents in October 2010.   Motorola had previously filed a motion to intervene for the limited purpose of moving to disqualify High Point's lead counsel, Dechert LLC ("Dechert").   The Court denied the motion but required High Point to obtain special, separate conflicts counsel to handle any discovery

---

[2]First Am. Protective Order (ECF No. 498) at 20, ¶ 25.

[3]*Id.* at 2.

[4]*Id.* at 3, ¶ 1.

[5]*Id.* at 16, ¶ 17.

directed at Motorola.[6]  In April 2010, High Point obtained conflicts counsel, Paul Milcetic, who was then with the law firm Woodcock Washburn, LLP and later joined the law firm of Barroway Topaz Kessler Meltzer & Check ("BTKMC").  On January 18, 2011, the Court clarified its prior ruling on the disqualification of High Point's lead counsel, Dechert.[7]  The Court clarified that Dechert could not take or direct any discovery at Motorola, but was not prohibited from reviewing documents provided by Motorola to High Point or Sprint or from reviewing Motorola-related documents.

On February 4, 2011, High Point's conflicts counsel sent a letter to Motorola requesting permission to allow High Point to provide its counsel in Japan with six Motorola documents for use in the Japanese KDDI litigation.  The asserted purpose in seeking access to the documents was to "reveal the truth about the Kirk declarations" submitted in the Japanese KDDI litigation.  The six documents sought were designated as "Highly Confidential-Outside Counsel Only" under the Protective Order entered in this case.  On February 9, 2011, Motorola declined the request to allow High Point to use confidential Motorola documents produced in this case in the Japanese KDDI litigation.  On February 14, 2011, High Point's conflict's counsel responded that High Point disagreed with Motorola's accusations that it analyzed Motorola's documents to support the Japanese KDDI litigation.  He further stated that:

> Nevertheless, High Point will honor Motorola's demand that High Point not disclose the documents to its counsel in Japan and can confirm that all of High Point's counsel in the case against Sprint will comply with the above-quoted provision of the protective order. High Point's counsel will not use discovery obtained from Motorola in the Sprint case for any purpose other than the Sprint case.[8]

---

[6]*See* Mar. 25, 2010 Mem. & Order (ECF No. 239).

[7]*See* Jan. 18, 2011 Mem. & Order (ECF No. 514).

[8]Ex. B to Mot. for Protective Order (ECF No. 593-4).

4

On February 18, 2011, High Point, through its conflicts counsel BTKMC, filed an ex parte application in the Northern District of Illinois under 28 U.S.C. § 1782 seeking permission to subpoena Motorola for documents and testimony for use in the Japanese litigation against KDDI.[9] The court granted the motion on February 23, 2011.[10]  High Point thereafter served Motorola with a subpoena dated February 28, 2011, requesting, *inter alia*, documents sufficient to show the identity, operation and components of the Motorola equipment that controls or influence the timing of packet transmission and voice traffic in KDDI's cellular network in Japan.  Motorola then filed this motion for a protective order against High Point.

## II.    Alleged Violations of the Protective Order

Motorola contends that High Point's conflicts counsel BTKMC and/or its lead counsel Dechert violated the Protective Order in this case two times by using Motorola documents produced in this case for purposes of the Japanese KDDI litigation.  According to Motorola, the first violation occurred when High Point's counsel reviewed and analyzed confidential documents produced in this case in order to identify at least six documents that allegedly relate to the two Kirk declarations submitted in the Japanese KDDI litigation.  By the time High Point sent its February 4, 2011 letter to Motorola, Dechert and/or BTKMC had already identified six specific documents, out of hundreds of thousands of documents produced by Motorola under the Protective Order, that allegedly include information relating to the Kirk Declarations. Motorola argues that BTKMC had analyzed the six documents against the Kirk Declarations in sufficient detail that it had formed the belief that those

---

[9]Under 28 U.S.C. § 1782, federal district courts are authorized to assist foreign litigants and interested parties in gathering evidentiary materials for use in foreign legal proceedings.

[10]*In re Application of High Point SARL for an Order to Conduct Discovery for Use in a Foreign Legal Proceeding Pursuant to 28 U.S.C. § 1782*, No. 11-cv-143 (N.D. Ill. Feb. 23, 2011).

documents provide information it can use to impeach Mr. Kirk's statements and would tell "the truth about the Kirk declarations."  Motorola argues that "[i]t is self-evident that High Point's counsel had to search through hundreds of thousands of documents produced by Motorola to locate the six it thought most promising and identified in BTKMC's February 4 letter.  Those documents were never specifically mentioned in any discovery request or response in this case."  Motorola points out that High Point's search also was not just a cursory review of Motorola's documents. For example, among the six documents BTKMC's letter identifies, one is only a single page from a several-hundred page document. An extensive analysis was needed to pluck that page out of Motorola's production.

Motorola claims that the second violation occurred when High Point's counsel used information from Motorola documents in order to help craft the ex parte application in the Northern District of Illinois seeking permission under 28 U.S.C. § 1782 to subpoena Motorola for documents and testimony for use in the Japanese litigation against KDDI. This was four days after High Point's counsel assured Motorola that it would honor Motorola's request to keep the Motorola documents out of the Japan proceeding.  Motorola claims that 1782 application was undoubtedly based on and motived by information gathered from Motorola's protected materials.  The stated purpose of High Point's 1782 Application was to rebut evidence that Motorola has itself provided in the KDDI litigation.

Motorola also argues the timing of High Point's request for permission to use Motorola documents and 1782 subpoena application strongly suggests that High Point sought that particular discovery based on information it gathered during its review of Motorola's confidential and protected documents in this case.  High Point's February 4 letter requesting permission to use

particular Motorola documents was only two weeks after the Court clarified that Dechert could review Motorola documents.  High Point's lead law firm, Dechert, which has been advising High Point on the KDDI case and attending the Japanese Court hearings, knew of the First Kirk Declaration since April 2010 and the Second Kirk Declaration since September 2010.   Dechert, however, did not seek U.S. discovery from Motorola for use in Japan during the intervening months.  Only after Motorola began its production in October 2010, and only after Dechert was given access to those documents on January 18, 2011, did High Point request discovery from Motorola in the U.S. on February 4.  Motorola asserts that the timing of the filing therefore strongly indicates that High Point used knowledge it obtained from its counsel's review of Motorola's confidential documents in mid-January for its 1782 Application filed on February 18, 2011.

High Point denies that there have been any protective order violations.  It asserts that it did not use any confidential Motorola documents except for purposes of this action.  It claims that its counsel did not analyze confidential Motorola documents to support the proceedings in Japan. It did not seek discovery in aid of the Japan proceedings based upon the Motorola documents. Instead, the discovery it sought from Motorola for the Japan case is based upon questions the Tokyo court explicitly raised, and the language it used in crafting its discovery requests is based upon its own patents.  It explains that its conflicts counsel, BTKMC, reviewed and identified the documents in its February 4, 2011 letter because they show that when Sprint uses Motorola equipment it infringes the asserted patents, including one of the patents in this case.  BTKMC also reviewed the two Kirk Declarations for this case against Sprint, which are not confidential and were publically available in April and September 2010.

With regard to its requests seeking permission to serve discovery on Motorola for the Japan

KDDI litigation, High Point contends that this was not a violation of the protective order.  It states that its motivation for the 1782 application was based upon KDDI's persistent failure to supplement the Kirk declarations as requested by the Tokyo Court.  High Point further claims that its requests for discovery from Motorola were crafted around its own patent, as well as the requests for information that the Tokyo Court had repeatedly directed at KDDI.  High Point's document requests seek further information concerning the Kirk declaration as well as the operation of Motorola's equipment when it addresses "packet delay," "jitter" and packet transmission timing.  These phrases are lifted from High Point's patents and the Tokyo Court's requests to KDDI for further information about the operation of the Motorola equipment.

III.    **Fed. R. Civ. P. 26(c) Protective Order**

Motorola requests a protective order under Fed. R. Civ. P. 26(c) prohibiting High Point from using any documents produced by Motorola in this case in High Point's Japanese KDDI litigation, prohibiting High Point from seeking any discovery from Motorola in support of the KDDI case, and prohibiting High Point's conflicts counsel from seeking any additional discovery from Motorola in this case.  Although neither High Point or Motorola raises or discusses the issue, the Court first must determine whether Motorola, who is not a party in this case but whose confidential documents are subject to protection under the protective order, has standing to move under Rule 26(c) for additional protections against High Point regarding the documents it produced in this case.

Under Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending."  Upon a showing of good cause, the court may limit the scope of the disclosure or discovery to certain matters or require that confidential research, development or commercial information be revealed

only in a specified way.[11]   Based upon High Point and Sprint's showing of good cause, the Court entered their proposed Protective Order and later their First Amended Protective Order, which limits the use of confidential information produced by either a party or a non-party.

Generally, parties to a lawsuit may disseminate information obtained through discovery as they see fit,[12] and discovery is not restricted to the case for which it was produced.[13]   As Judge Rushfelt noted in *Zapata v. IBP, Inc.*, the drafters of the rules of civil procedure "could easily have included a restriction that use of discovery is limited to the litigation in which it is provided, were such their intent."[14] Instead, the rules "contemplate individualized protection when appropriate upon a showing of good cause."[15] Upon entry of a protective order under Rule 26(c), however, the parties' dissemination and use of confidential information become controlled by the terms of the protective order, and the parties must comply with the terms of the protective order or subject themselves to possible sanctions.[16]   In this case, the parties have included confidential documents produced by non-party Motorola within the scope of the protective order.

Motorola now requests further protections based upon High Point's violations of the current protective order through its alleged use of Motorola documents for purposes other than this

---

[11]Fed. R. Civ. P. 26(c)(1)(D) & (G).

[12]*American Nat'l Bank & Trust Co. of Chicago v. AXA Client Solutions, LLC*, No. 00 C 6786, 2002 WL 1067696, at *3 (N.D. Ill. May 28, 2002) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994)).

[13]*Roberts v. Shawnee Mission Ford, Inc.*, Nos. 01-2113-CM, 02-2536-CM, 2003 WL 22290237, at *2 (D. Kan. Sept. 25, 2003).

[14]*Zapata v. IBP, Inc.*, 160 F.R.D. 625, 628 (D. Kan. 1995).

[15]*Id.*

[16]*American Nat'l Bank*, 2002 WL 1067696, at *3.

litigation.  The Court finds that Motorola is entitled to move the Court for a protective order under Rule 26(c).  That Rule expressly provides that either a party or "any person from whom discovery is sought" may move for a protective order.  This clearly contemplates that non-parties from whom discovery is sought, like Motorola here, can move for a protective order under Rule 26(c).  At least one court has recognized that objecting non-parties have a legitimate interest in obtaining a protective order to protect their confidential commercial documents from disclosure.[17]  Motorola has a legitimate interest in protecting the confidential documents it produced in this action and that are subject to the protective order's restrictions on use of confidential documents outside this case.

### A.    Specific Relief Requested by Motorola

Motorola requests very specific relief in its motion –  all based upon High Point's alleged improper "use" of documents produced by Motorola for purposes of the KDDI litigation.  It requests that the Court issue a protective order: (1) prohibiting High Point from using in its Japanese KDDI ligation any Motorola documents produced in this case, (2) prohibiting High Point from seeking, directly or indirectly, any discovery from Motorola in support of the KDDI case, and (3) prohibiting High Point's conflicts counsel from seeking any additional discovery from Motorola in this case.  Before addressing whether Motorola has shown good cause, which would include a showing that High Point improperly "used" Motorola documents produced in this case in violation of the Protective Order, the Court will first address whether Motorola can obtain the specific relief it seeks.

---

[17]*See In re Northshore Univ. Healthsystem*, 254 F.R.D. 338, 342-43 (N.D. Ill. 2008) (objecting non-parties had a legitimate interest in obtaining a protective order to protect their confidential commercial documents from disclosure).

**1.      Order Prohibiting High Point from Using Any Motorola Documents Produced in this Case in the Japanese KDDI Litigation**

Motorola asserts that good cause exists for an order prohibiting High Point from using in the Japanese KDDI case any Motorola documents produced in this case.  The Court, however, notes that the existing Protective Order already contains this prohibition that confidential Motorola documents are only to be used for purposes of this action and not for any other purpose, which would include High Point's use in the Japanese KDDI litigation.  High Point has not moved to modify or amend the Protective Order to change this prohibition on use of Motorola documents outside this litigation. It has instead informally requested Motorola's permission to use documents produced by Motorola in this case in the KDDI litigation; Motorola, however, has denied that request.  High Point has also requested and obtained permission from the Northern District of Illinois to subpoena Motorola's documents for use in the KDDI litigation.  Motorola contends that these actions by High Point constitute a violation of the Protective Order and establish good cause for the further protections it seeks.

The Court finds that even if Motorola had shown good cause for its request for a protective order prohibiting High Point from using in its Japanese KDDI ligation any Motorola documents produced in this case, the relief it seeks is redundant as the existing Protective Order already prohibits High Point from using Motorola documents produced in this case for any purpose other than this case.  Motorola's request for an order prohibiting High Point from using in its Japanese KDDI ligation any Motorola documents produced in this case is therefore denied.

**2.      Order Prohibiting High Point from Seeking Any Discovery from Motorola in Support of the KDDI Case**

Motorola also requests that the Court enter an order prohibiting High Point from enforcing

the 1782 subpoena or seeking, directly or indirectly, any further discovery from Motorola in support of the KDDI litigation.  It asserts that the Court should prohibit High Point from obtaining any discovery under the 1782 Subpoena or filing any further applications under 28 U.S.C. § 1782, or any other process, to seek information from Motorola for use in the KDDI case, regardless of what counsel High Point hires. Such an order is necessary to ensure that High Point receives no benefit from its violations of the Protective Order. In addition, absent such an order, High Point may simply hire new counsel to file another Section 1782 application seeking the same documents or may use some equivalent process to achieve an equivalent result.

Recognizing that this request may be viewed as having the effect of quashing the 1782 subpoena issued by the Northern District of Illinois, Motorola argues that this Court has jurisdiction to enter such an order because the issues involved in the instant motion extend beyond the specifics of that particular subpoena and the requested ruling is necessary to ensure that discovery provided in this case will receive uniform treatment.  It argues that adherence to the provisions of the Protective Order is an issue with implications that stretch well beyond the 1782 Subpoena. High Point has subpoenaed a number of Sprint's vendors in this case, all of which have produced confidential information to High Point in reliance on the Protective Order.

Motorola's requested relief goes too far.  It essentially asks the Court to quash the 1782 subpoena issued by the Northern District of Illinois.  As Motorola itself recognizes, this Court does not have the authority to quash or modify the 1782 subpoena.  Fed. R. Civ. P. 45(c)(3)(A) clearly provides that "the *issuing court* must quash or modify a subpoena" under certain circumstances.[18]

---

[18]Emphasis added.

As noted by this Court in *Pro Fit Management, Inc. v. Lady of America Franchise Corp.*,[19] and *Rajala v. McGuire Woods, LLP*,[20] courts have uniformly held that only the issuing court has the authority to quash or modify a subpoena. "This is the rule because subpoenas issued under Rule 45 constitute process of the issuing court, and are enforced by that same court."[21] The court in which the action is filed thus lacks jurisdiction to rule on subpoenas issued from other courts.[22]

Motorola cites *Rajala* for the proposition that this Court has jurisdiction to enter an order which has the effect of quashing the 1782 Subpoena because the issues involved in the instant motion extend beyond the specifics of that particular subpoena and the requested ruling is necessary to ensure that discovery provided in this case will receive uniform treatment. The Court in *Rajala,* held that:

> [W]hen a party files a motion for protective order in this Court that would have the effect of quashing or modifying a subpoena issued from another district, this Court may entertain that motion where (1) the issues raised are central to the case and extend beyond the specifics of the particular subpoena, and (2) the requested ruling is necessary to insure that general discovery issues will receive uniform treatment, regardless of the district in which the discovery is pursued.[23]

The principles set forth in *Rajala* for when a court can or should entertain a motion for protective order that would modify or quash a subpoena, however, are not applicable here because the 1782 subpoena relates to different litigation altogether. The 1782 subpoena does not stem from this litigation, but instead relates to discovery sought for High Point's Japanese KDDI ligation.

---

[19]No. 08-CV-2662-JAR/DJW, 2011 WL 765836, at *2 (D. Kan. Feb. 25, 2011).

[20]No. 08-2638-CM-DJW, 2010 WL 4683979, at *7 (D. Kan. Nov. 12, 2010).

[21]*Id.*

[22]*Id.*

[23]*Id.*

Nor does this Court have any authority to prohibit High Point from seeking discovery in the Japanese KDDI litigation, even if the protective order entered in this case prohibits High Point from using confidential documents produced by Motorola in this case in the KDDI litigation.  The Court's authority over High Point's discovery devices is limited to those made *in this case* and does not extend to what discovery High Point may decide to seek in other litigation, including the KDDI litigation.  The fact that the Court entered a protective order, one that was prepared and submitted by High Point and Sprint and which included a prohibition on using documents produced by non-party Motorola in this case, does not extend the Court's authority outside this litigation.  Even if the Court were to find that High Point actually violated the protective order, the Court still does not have the authority to grant the specific relief sought in the KDDI litigation and the 1782 subpoena for discovery related to that litigation.  Motorola's requests that the Court enter an order prohibiting High Point from enforcing the 1782 subpoena or seeking, directly or indirectly, any further discovery from Motorola in support of the KDDI litigation is therefore denied.

### 3. Order Prohibiting High Point's Conflicts Counsel from Seeking Any Additional Discovery from Motorola in this Case

Motorola also requests an order prohibiting High Point's conflicts counsel, BTKMC, from taking any additional discovery from Motorola in this case.  It asserts that it should not be required to hand over to BTKMC some of its most confidential information – its source code – or any further discovery that includes confidential information due to the risk of further improper use and disclosure by BTKMC.  It has concerns that additional confidential materials will be reviewed or mined for information that BTKMC might perceive as useful in other contexts.  Motorola indicates that BTKMC has yet to receive access to its source code, which contains particularly sensitive information that should not be used except under the very limited circumstances permitted in the

14

protective order.   Motorola clarifies in its reply brief that it is not seeking to disqualify BTKMC, but only asking that BTKMC be prohibited from further pursing additional discovery from Motorola in this case.

Proceeding under Rule 26(c), Motorola must show good cause for the protections it seeks. Unlike the previous two requests for relief, the Court does not see any reason preventing it from ordering the relief sought as long as Motorola makes the requisite showing of good cause.  In this context, where a non-party seeks additional protections based upon a party's alleged improper use of its confidential documents, good cause requires a showing that High Point actually violated the protective order with regard to confidential documents produced by Motorola in this case.

High Point and Motorola spend much of their briefing arguing over whether High Point has "used" Motorola documents for purposes of the KDDI litigation, and thus violated the protective order in this case.  The Court is not wholly convinced that High Point "used" the Motorola documents produced in this case for purposes of the KDDI litigation when it requested Motorola's permission to use certain documents in the KDDI litigation or when it crafted its 1782 application to subpoena Motorola's documents for the KDDI litigation.  The Court begins by reviewing the controlling document here — the First Amended Protective Order.  It does not define or provide any guidance on what constitutes a proper or improper "use" of documents designated as confidential. The protective order merely states that "Confidential Materials shall be used solely for the purposes of this Action and shall not be used for any other purpose except as expressly provided herein or by further Order of the Court."[24]

The Court next looks to caselaw for guidance in determining what constitutes "use" of

_____

[24]First Am. Protective Order (ECF No. 498) at 20, ¶ 25.

confidential documents in other litigation.  High Point cites to a 2008 District of Nebraska opinion, *Streck, Inc., v. Research & Diagnostic Systems, Inc*.,[25] as instructive on this issue.  Motorola argues that *Streck* is very distinguishable because the court there focused on a party's mere "general reference" to protected documents in another proceeding.  The Court finds *Streck*, while not exactly on point or binding authority, is helpful.  In that case, the defendants sought sanctions against the plaintiff for violating the protective order by its impermissible "use" of confidential documents in an interference proceeding. The defendants argued that the plaintiff sought the discovery in the interference proceeding only due to knowledge gained from exposure to the protected documents. The protective order provided that confidential information could only be used for purposes of that action and was protected from any unauthorized or unrelated use.  The court concluded that the defendants were straining the term "use" and that it was speculative to assume that actions taken in the interference proceeding were based upon counsel's knowledge of confidential materials.[26] It found no violation of the protective order.

Motorola cites a couple cases where courts have found violations of protective orders based upon improper use rather than disclosure of confidential information.  In *On Command Video Corp. v. LodgeNet Entertainment Corp.*,[27] the Northern District of California court found that the plaintiff had violated the protective order by using confidential discovery materials obtained in the case for the purpose of initiating a separate state court lawsuit against the defendant.  The court overruled the magistrate judge's determination that there was no violation based upon the lack of an express

---

[25]250 F.R.D. 426, 434-35 (D. Neb. 2008).

[26]*Id.* at 435.

[27]976 F. Supp. 917, 921 (N.D. Cal. 1997).

provision prohibiting the filing of a subsequent action based on protected confidential information. The court found that under a common sense, plain reading, the purpose of the protective order was to limit use of confidential information to the case. The plaintiff's use of the confidential information to file a separate lawsuit thus violated the protective order.[28]  In *American National Bank and Trust Co. of Chicago v. AXA Client Solutions, LLC*,[29] the Northern District of Illinois found that one of the defendants had used information designated as high confidential for purposes unrelated to the defense of the lawsuit in violation of the protective order.   In that case, one of the plaintiffs sought sanctions based upon four alleged violations of the protective order.  It alleged that the defendant based certain deposition questions on information contained in confidential documents, it sent a letter to an entity revealed in confidential documents for a business purpose, its in-house attorney sent an email containing confidential information to an employee who was not entitled to review confidential materials, and someone disclosed confidential information to two of defendant's employees who were not entitled to receive and review confidential information.[30]  The court found that the defendant had violated the protective order by improperly disseminating confidential information.[31]   It also found convincing the argument that the defendant had used confidential information for purposes unrelated to the defense of the lawsuit.[32]

Motorola also refers the Court to the reasoning used by the Northern District of California

---

[28]*Id.* at 922.

[29]2002 WL 1067696, at *3.

[30]*Id.* at *2.

[31]*Id.* at *3.

[32]*Id.* at *4.

in the case, *In re eBay Seller Antitrust Litigation*.[33]  In that case, eBay contended that plaintiff's counsel violated the protective order by reviewing or "mining" eBay's confidential documents with an eye toward evaluating the documents' potential relevance and possible use in other litigation. The court agreed that if counsel had reviewed or "mined" eBay's confidential document produced pursuant to a protective order for some purpose other than the instant litigation, this would violate the protective order.[34]  The court, however, concluded that it was not clear whether an actual violation occurred and further noted that "any such violation would be devilishly hard to police."[35]

In this District, the court has addressed, as the basis for a Rule 60(b) motion to vacate the judgment, an argument that the plaintiff had violated the protective order by using confidential information obtained during discovery to amend its patent application.  In *ICE Corp. v. Hamilton Sundstrand Corp.*,[36] the defendants offered circumstantial evidence in the form of billing records to show that the plaintiffs used confidential information for the purpose of tailoring the claims of plaintiff's then-pending patent application – a purpose entirely unrelated to the case.[37]  The defendants argued that because certain billing entries indicated that trial counsel worked on patent issues and worked closely with plaintiff's patent attorney during the time between production of the documents and the patent amendment, plaintiff must have utilized the confidential documents in amending their application.  The court found that this was insufficient to show that the plaintiff had

---

[33]No. C07-01882 JF (HRL), 2010 WL 2106004, at *1 (N.D. Cal. May 25, 2010).

[34]*Id.* at *1.

[35]*Id.* at *2.

[36]No. 05-4135-JAR, 2010 WL 1284717, at *3 (D. Kan. Mar. 30, 2010).

[37]*Id.*

18

violated the protective order by utilizing confidential documents for a purpose other than the case.[38]

High Point adamantly denies that there was any analysis or other "use" of Motorola's materials for purposes of the case against KDDI or for any other purpose other than this action against Sprint. The Court finds nothing in the record that directly contradicts this statement. Motorola argues that High Point "used" its confidential documents when High Point's counsel reviewed and analyzed these documents in order to identify at least six documents that allegedly relate to the two Kirk declarations submitted in the Japanese KDDI litigation. It bases its arguments upon the timing, wording, and specific documents requested in High Point's request for permission. Like the defendant in the *ICE Corp.* case, Motorola offers circumstantial evidence that High Point's counsel used its documents in drafting and creating the request for permission to use six specific documents and in the 1782 application to subpoena the documents. But the Court is unclear whether High Point's improper use of these Motorola documents was the impetus or inspiration for the request for permission from Motorola and the subsequent 1782 application. High Point claims that its motivation for the 1782 application was based upon KDDI's persistent failure to supplement the Kirk declarations as requested by the Tokyo Court. Its requests for discovery from Motorola were crafted around its own patent, as well as the requests for information that the Tokyo Court had repeatedly directed at KDDI.

Although the Court agrees with Motorola that the wording and timing of High Point's request for permission and application for 1782 subpoena does raise reasonable suspicions on the source of High Point's knowledge of the existence of the six specifically-requested documents, the Court cannot definitely conclude that High Point in fact impermissibly "used" confidential

---

[38]*Id.*

documents produced by Motorola in this case for purposes of the KDDI litigation.  This is partly because Motorola-supplied infrastructure components are part of the Sprint networks accused of infringement in this case, as well as the KDDI network accused of infringement in the Japanese counterpart-patent litigation.  There would logically be some overlap in the discovery sought from Motorola for both cases.  Motorola documents relevant and important to High Point's case here would also likely be relevant and important to its KDDI litigation.  To find that High Point's request for permission and 1782 subpoena application were based upon an impermissible "use" of the confidential documents produced by Motorola in this case requires too much speculation and drawing of inferences from circumstantial evidence.

The Court concludes that based upon the facts presented, Motorola has not met its burden of showing that High Point's lead or conflicts counsel violated the protective order in this case by using confidential Motorola documents produced in this case for the purpose of obtaining specific Motorola documents for use in the Japanese KDDI litigation.  Motorola therefore has not shown good cause for its request for an order prohibiting High Point's conflicts counsel from taking any additional discovery from Motorola in this case. Motorola's request for an order prohibiting High Point's conflicts counsel, BTKMC, from taking any additional discovery from Motorola in this case is denied.

## VI.    High Point's Request for Costs and Fees Under Fed. R. Civ. P. 26(c)(3)

In response to Motorola's motion, High Point requests its costs and fees incurred for opposing this motion.  It argues that an award of fees is warranted because Motorola's motion is frivolous and is not "substantially justified."  High Point claims that Motorola has failed to provide substantial evidence that High Point violated the protective order and the motion is interposed in bad

faith. Motorola knew the relevant facts before filing this motion because High Point had already explained them, but Motorola filed the motion anyway.  Finally, High Point claims that Motorola asserted this motion for the improper purpose of furthering a pattern of obstruction.

Fed. R. Civ. P. 26(c)(3) provides that Rule 37(a)(5) applies to any award of fees and expenses related to a motion for protective order. Fed. R. Civ. P. 37(a)(5) requires that a prevailing party recover the reasonable expenses incurred in making or defending against a discovery motion, unless the non-prevailing party's position was substantially justified or other circumstances make an award of expenses unjust.  A position is "substantially justified" in the context of Rule 37 "if it is 'justified to a degree that could satisfy a reasonable person' or where 'reasonable people could differ as to the appropriateness' of the objection or response."[39]

Motorola claims that it was more than substantially justified in bringing this motion.  The February 4 letter from High Point's counsel requesting permission to use Motorola documents in the KDDI litigation plainly indicates that High Point analyzed Motorola's protected materials for purposes other than the instant case. After the exchange of correspondence on February 9, and February 14, Motorola reasonably believed that the issue was resolved. However, four days later, High Point filed the 1782 Application and subsequently served the 1782 Subpoena, which appears to be based on the six documents listed in the February 4 Letter.  Given High Point's two violations, Motorola asserts that it is fully justified in bringing High Point's violations to the attention of this Court and seeking a further protective order to maintain the confidentiality of its production under the Protective Order in this case.  What High Point mischaracterizes as obstructive behavior has in

---

[39] See Gipson v. Sw. Bell Tel. Co., No. 08-2017-EFM-DJW, 2009 WL 790203, at *19 (D. Kan. Mar. 24, 2009), objections sustained in part and overruled in part on other grounds, 2009 WL 4157948 (D. Kan. Nov. 23, 2009).

fact been nothing more than Motorola acting appropriately to safeguard the confidentiality of its information.

Although Motorola failed to sufficiently show that High Point used confidential Motorola documents produced in this case for purposes of the KDDI litigation, in violation of the protective order, the Court finds that Motorola was substantially justified in filing its motion for protective order.  Motorola's motion was based its reasonable concerns that High Point's actions in seeking permission to use specific Motorola documents in the KDDI litigation were motivated or assisted by High Point's counsel improper use of its confidential documents.  Accordingly, the Court denies High Point's request that Motorola be required to pay its expenses incurred in connection with the Motion.

**IT IS THEREFORE ORDERED THAT**  Motorola's Motion for a Protective Order (ECF No. 592) is denied.

**IT IS FURTHER ORDERED THAT** High Point's request for costs and fees is denied.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 14th day of February 2012.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:    All counsel and *pro se* parties

22