**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **HIGH POINT SARL,** | ) | |
| | ) | |
| **Plaintiff and Counterclaim Defendant,** | ) ) | **CIVIL ACTION** |
| | ) | **Case No. 09-2269-CM-DJW** |
| v. | ) | |
| | ) | |
| **SPRINT NEXTEL CORPORATION, et al.,** | ) ) | |
| | ) | |
| **Defendants and Counterclaimants.** | ) ) | |

**MEMORANDUM AND ORDER**

Plaintiff High Point SARL ("High Point") filed this patent infringement case against Defendants Sprint Nextel Corporation; Sprint Spectrum L.P.; SprintCom, Inc.; Sprint Communications Company L.P.; Sprint Solutions, Inc.; APC PCS, LLC; APC Realty and Equipment Company, LLC; and STC Two LLC (collectively referred to as "Sprint"), alleging that Sprint's CDMA cellular telephone networks infringe four of High Point's patents. One of the innovations of the patents-in-suit devises a way to replace certain circuit-switched portions of traditional telecommunications systems with more efficient and economical packet-switched network equipment for cellular telephone communications. This matter is before the Court on High Point's Motion to Compel Sprint to Produce Documents Responsive to High Point's Fifth Set of Requests for Production No. 223 (ECF No. 700). High Point requests an order under Fed. R. Civ. P. 37(a) compelling Sprint to produce documents responsive to its narrowed Fifth Request for Production No. 223. As narrowed, High Point requests that Sprint produce all license and settlement agreements, damages expert reports, deposition transcripts of damages expert testimony, and

communications between Sprint and its counterparties regarding the terms of settlement relating to Sprint's voice-over-internet-protocol ("VOIP") technology patent infringement litigation, *Sprint Communications Co., L.P. v. Vonage Holdings, Corp.* (D. Kan. Civ. A. No. 05-2433) and four related cases. As explained below, the motion is granted in part and denied in part. Sprint is ordered to produce VOIP patent license and settlement agreements, damages expert reports, and deposition transcripts of damages expert testimony from the *Vonage* and related litigation, but not settlement communications.

**I.      Fifth Request for Production No. 223**

High Point's Fifth Request for Production No. 223 asks Sprint to produce the following:

> All documents referring or relating to Sprint's patent infringement litigation (as plaintiff, defendant, or otherwise) involving voice-over-internet-protocol technology, including *Sprint Communications Co., LP, v. Vonage Holdings Corp.*, No. 2:05-cv-2433. This request includes, but is not limited to, all documents, expert reports, pleadings, motions, and testimony related to damages, and all licenses and settlement agreements.

Sprint objected to the request as overly broad, unduly burdensome, seeking irrelevant information, and seeking documents protected by the attorney-client privilege and work product doctrine. Specifically, it objected to the request as overly broad and unduly burdensome because it seeks all documents, not limited in time, relating to all of Sprint's patent infringement litigation involving VOIP technology, which relates to a different technology that is at issue in this case. Sprint further objected to the request as seeking documents referring or relating to VOIP technologies not relevant to any of the claims or defenses of the parties to this lawsuit.

After attempting to confer with Sprint, High Point narrowed its Request No. 223 to the following documents:

> [F]or *Sprint Communications Co., LP, v. Vonage Holdings Corp.*, No. 2:05-cv-2433 (and the other four Sprint cases involving the same patents) (1) the license and settlement agreements; (2) damages expert reports; (3) transcripts of damages expert deposition testimony; and (4) communications between Sprint and its counterparties regarding terms of settlement.

After further efforts to confer, the parties reached an impasse on the narrowed request, and High Point filed the instant motion to compel.

Sprint opposes the motion. It argues that the Court has already ruled that its VOIP patent license agreement information requested from the *Vonage* case and four other related cases is not relevant to this litigation. It also argues that High Point has waived its right to move to compel as to Request No. 223 because it failed to mention that request in its motion for extension of time. Sprint also continues to object that the VOIP patent license and settlement agreements, damage expert reports and testimony, and communications leading up to settlement with Vonage and other counterparties are not relevant to the claims and defenses in this case. More specifically, Sprint argues that the VOIP patent related documents sought by Request No. 223 are not relevant to this case because its VOIP patents and High Point's patents-in-suit involve very different technologies.

## II.     Impact of the Court's September 12, 2011 Relevancy Ruling on the Present Dispute

Sprint first argues that the Court has already considered and decided the issue of the relevance of Sprint's VOIP patent litigation. In its September 12, 2011 Memorandum and Order, the Court sustained Sprint's relevance objection to High Point's Fourth Interrogatory No. 26, which, like the current Request for Production No. 223, sought information from the *Vonage* case and four other Sprint-initiated VOIP patent cases involving Sprint's patented technology. Sprint argues that High Point's instant motion essentially seeks to relitigate and reverse the Court's September 12, 2011 finding that VOIP technology is not relevant to this case. Sprint argues that High Point had

3

a full and fair opportunity to brief the relevance of VOIP patent licensing agreements in connection with its earlier motion to compel and made a conscious decision not to do so. High Point should not be permitted to use its instant motion to belatedly seek reconsideration of the Court's earlier determination that Sprint's VOIP patent licensing agreements are not relevant.

High Point disputes that the Court's prior ruling on its Fourth Interrogatory No. 26 precludes the discovery sought by Request No. 223. It explains that it did not substantively address Sprint's relevancy objection to the VOIP technology information requested by Fourth Interrogatory No. 26 in its prior motion because the motion was directed to Sprint's supernumerary objections.

On September 12, 2011, the Court entered its Memorandum and Order (ECF No. 676) granting in part and denying in part High Point's Motion to Compel Sprint to Answer Forty Interrogatories. One of the interrogatories in dispute was High Point's Fourth Interrogatory No. 26, which asked Sprint to identify:

> [A]ny patent licensing agreements to which you are a party that cover or include telecommunications networks or services, including without limitation CDMA or voice-over-internet-protocol, including:
> (a) the names of the parties to each agreement;
> (b) the period covered by each agreement;
> (c) the royalty amounts or royalty rates specified by each agreement;
> (d) the royalty base; and
> (e) the numbers of the patents included in each agreement.
> This interrogatory includes, without limitation, licensing agreements where you were a licensor or licensee.

After finding that High Point had not exceeded its interrogatory limit and that Sprint should answer the interrogatories, the Court considered Sprint's relevance objection to Interrogatory No. 26. Sprint objected that the interrogatory's request for information related to its VOIP patent licensing agreements did not seek relevant information. It argued that the interrogatory was High Point's

4

attempt to obtain material in the *Vonage* case, and the information sought was irrelevant to Sprint's CDMA network for handling voice calls, at issue in the present action. In its decision, the Court found that High Point did not address the issue of relevancy in the briefing. It further found that the relevancy of the requested VOIP patent licensing agreements was not readily apparent. The Court therefore sustained Sprint's relevance objection to Interrogatory No. 26 to the extent it asked for information related to VOIP.

Here, the Court concludes that its sustaining Sprint's relevance objection to High Point's Interrogatory No. 26 does not foreclose High Point from seeking to compel Sprint to produce documents responsive to Request for Production No. 223. In addition to being different discovery devices, High Point's request for production seeks different information than its interrogatory. Interrogatory No. 26 asked Sprint to identify VOIP patent related licensing agreements and certain information contained in the agreements. Request No. 223 asks Sprint to produce documents relating to its VOIP patent related litigation, including licensing agreements, expert reports, deposition transcripts, and settlement communications for the *Vonage* case. Due to these differences, High Point is not foreclosed from propounding or seeking to compel production of documents responsive to Request No. 223. The Court's prior finding that High Point had not shown the relevancy of information about Sprint's VOIP patent licensing agreements, as sought by Interrogatory No. 26, does not preclude High Point from making a showing of relevancy as to the VOIP patent related documents sought by Request No. 223.

### III.     Waiver of Right to Compel Production

Sprint next argues that High Point has waived its right to move to compel production of documents responsive to Request No. 223 by its failure to mention that specific request in its

September 19, 2011 motion for an extension of time to file a motion to compel. According to Sprint, High Point's extension motion only described two other issues that the parties had continued to discuss; it did not mention Request No. 223. Sprint also argues that High Point did not raise Request No. 223 as an issue between May and October 2011.

On August 12, 2011, High Point filed an unopposed motion for an extension of time to file a motion to compel with respect to its Fifth Set of Requests for Production Nos. 178-232 (ECF No. 672). The Court granted the motion, but ordered that "[a]ny further requests for an extension of this deadline will require a more specific showing of good cause and a more specific description of the parties' recent efforts toward resolving the particular dispute without Court involvement." (ECF No. 673). On September 19, 2011, High Point filed another unopposed motion for extension of time with respect to Fifth Requests Nos. 178-232 (ECF No. 677). In its motion, it described two issues the parties continued to discuss: Alcatel-Lucent design documents, and documents sufficient to show connections between Sprint infrastructure products and the public switched telephone network ("PSTN") and whether a request for admission may moot the need for any such documents. The Court granted the motion for extension of time (ECF No. 678).

On October 19, 2011, High Point filed another unopposed motion for extension of time to file a motion to compel, but narrowed to Fifth Request Nos. 194, 222, and 223 (ECF No. 691). This motion requested an extension to November 18, 2011 and described the issues remaining with the three remaining discovery requests, including Request No. 223. The Court granted the motion and extended High Point's deadline to file a motion to compel until November 18, 2011 (ECF No. 692). High Point then filed the instant motion to compel on November 18, 2011.

Under these circumstances, the Court finds that High Point has not waived its right to file

a motion to compel with respect to Request No. 223. High Point's August 12, 2011 and September 19, 2011 motions requested an extension for Request Nos. 178 through 232; its subsequent October 19, 2011 motion requested an extension for Request Nos. 194, 222, and 223. The Court's requirement that High Point provide a more specific description of the parties' efforts toward resolving the particular dispute was to aid the Court in determining whether High Point had shown good cause for each requested extension and to ensure that the parties were continuing to confer on these long-running discovery disputes. It did not create a requirement that High Point was to describe every outstanding issue for every remaining discovery request in each of its extension motions. High Point properly extended its deadline for filing a motion to compel with respect to its Fifth Request for Production No. 223.

## IV.   Remaining Objections to Narrowed Request for Production No. 223

Sprint's remaining objection is that High Point's Request No. 223 calls for the production of documents and information that are not relevant to the patents-in-suit or the claims and defenses in this case. Specifically, it argues that its VOIP patents cover very different technologies from the patents-in-suit, and thus are not comparable to the patents-in-suit for purposes of determination of a reasonable royalty.

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Relevancy is broadly construed during the discovery phase, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[1]  "Relevant information need not be admissible at the trial if the discovery

---

[1] *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010).

appears reasonably calculated to lead to the discovery of admissible evidence."[2] When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[3] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[4]

As the Court previously found in its September 12, 2011 ruling on Sprint's relevance objection to High Point's Fourth Interrogatory No. 26, the relevance of patent licensing agreements for Sprint's VOIP technology, which involve different patents from the patents-in-suit, is not readily apparent. High Point, as the party seeking the discovery, therefore has the burden to show that the information and documents sought by its discovery request are relevant to the claims or defense in this case.

### A. Relevance of Sprint's VOIP Patent License and Settlement Agreements

High Point argues that the requested documents concerning Sprint's license and settlement agreements for its VOIP telecommunications network patents are relevant to the calculation of a reasonable royalty for the alleged infringement of the patents-in-suit. According to High Point, information concerning patent license agreements relating to VOIP technology is relevant to the determination of a reasonable royalty because Sprint's VOIP patents are comparable to the patents-

---

[2] Fed. R. Civ. P. 26(b)(1).

[3] *Design Basics*, 271 F.R.D. at 523.

[4] *Id.*

in-suit. High Point claims that the discovery is needed for its economic damages expert to assess whether the licenses Sprint gave for its VOIP technology are sufficiently comparable to be relevant to consideration of the hypothetical negotiation of a reasonable royalty for a license to the patents-in-suit. Both patent families address packetization of voice traffic and interfacing packet networks with traditional circuit-switched telephone networks. This combined with each party asserting that its respective patents are essential to the operation of their respective telecommunications network systems makes the valuation of Sprint's VOIP patents, and the factors considered in assessing that value, relevant to the assessment of a reasonable royalty for a license to the patents-in-suit.

Sprint argues that its VOIP patents are not comparable to the patents-in-suit. It claims that the patents-in-suit are directed to the infrastructure equipment used in CDMA cellular telephone systems, where the movement of the mobile cellular telephone unit among multiple cell sites creates unique challenges for setting up and maintaining the call. Its VOIP patents are different because they are directed to pioneering technology that employs the use of packetized networks, like the internet, to connect phone calls between traditional telephones using the Public Switched Telephone Network ("PSTN"). Sprint argues that its VOIP patents for connecting the internet to the PSTN are very different from High Point's patents for connecting CDMA cell sites to the PSTN.

Upon a showing of infringement, a patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."[5] Litigants routinely adopt several approaches for calculating a reasonable royalty.[6] The first, the analytical method, focuses on the infringer's projections of profit for the infringing

---

[5] 35 U.S.C. § 284.

[6] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

product.[7] The second, more common approach, called the hypothetical negotiation or the "willing licensor-willing licensee" approach, attempts "to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began."[8] In determining the reasonable royalty that would have been agreed to at the hypothetical negotiation, parties in patent cases frequently utilize the fifteen factors set out in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*[9]

High Point argues that Sprint's VOIP patent related license agreements and settlement agreements are relevant to the determination of a reasonable royalty under the second, twelfth, and fifteenth *Georgia-Pacific* factors. The second *Georgia–Pacific* factor considers "the rates paid by the licensee for the use of other patents comparable to the patents in suit."[10] It examines whether the licenses relied on by the patentee in proving damages are sufficiently comparable to the hypothetical license at issue in suit.[11] The twelfth *Georgia–Pacific* factor is the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.[12] The fifteenth factor is the amount that a licensor and a licensee would have agreed upon if both had been reasonably and voluntarily trying

---

[7]*Id.*

[8]*Id.*

[9]318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

[10]*Id.*

[11]*Lucent*, 580 F.3d at 1325.

[12]*Georgia–Pacific*, 318 F. Supp. at 1120.

10

to reach an agreement.[13]

High Point also argues that Sprint's VOIP licenses are relevant to the proper structure of the reasonably royalty negotiation. It argues that the comparability of the Sprint's VOIP licenses to the hypothetical negotiation of a reasonable royalty for a license to the patents-in-suit is not limited to just the technologies at issue, but can also relate to the structure of the license such as, whether the license payments are in the form of an on-going royalty or a lump sum, and what is a proper royalty base.

The Court finds that High Point has met its burden of showing the relevancy of Sprint's VOIP patent license and settlement agreements. It has shown they are relevant under the second and twelfth *Georgia-Pacific* factors for determination of a reasonable royalty. High Point has also shown that the technology in Sprint's VOIP patents is sufficiently comparable to the technology at issue in the patents-in-suit to warrant discovery of the VOIP patent license and settlement agreements. Although the VOIP patents are directed at technology for connecting phone calls to the internet to the PSTN, versus the patents-in-suit, which are directed at technology for connecting cellular cell sites to the PSTN, the VOIP patent licenses are arguably comparable to a hypothetical license for the patents-in-suit for purposes of establishing relevancy to a reasonably royalty calculation. Both sets of patents involve the packetization of voice data and transmission over a network. This is an adequate showing of a comparable patent for purposes of discovery.

Sprint argues that two recent Federal Circuit cases, *Lucent Technologies, Inc. v. Gateway,*

---

[13]*Id.*

*Inc.,*[14] and *ResQNet.com, Inc. v. Lansa, Inc.*,[15] addressing the reasonable royalty damages calculation pursuant to the *Georgia-Pacific* factors have repeatedly emphasized that there must be a basis in fact connecting the evidence relied upon to the patents-in-suit. It points out that in *ResQNet*, the Federal Circuit remanded the case with the instruction that "the trial court should not rely on *unrelated* licenses to increase the reasonable royalty rate above rates more clearly linked to the economic demand for the claimed technology."[16] The Federal Circuit in *ResQNet* underscored that it had "long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies *other* than the patent in suit."[17]

High Point contends that Sprint's reliance on the *Lucent* and *ResQNet* cases is misplaced because the circumstances in those cases bear no resemblance to the issues presented here, where (1) Sprint's own descriptions of the two technologies establishes parallels between them, and other evidence confirms their comparability, and (2) the present dispute is at the discovery stage, not trial, and High Point's experts have not even had an opportunity to assess Sprint's VOIP patent licenses. High Point argues that the *Lucent* and *ResQNet* cases cited by Sprint do not support Sprint's argument that its VOIP patent licenses are not discoverable.

The Court agrees with High Point that Sprint's reliance on *Lucent* and *ResQNet* is misplaced in the context of a discovery dispute. Relevancy is broadly construed and does not require that the Court determine that Sprint's VOIP patent licenses would be sufficiently comparable to the patents-

---

[14] 580 F.3d 1301 (Fed. Cir. 2009).

[15] 594 F.3d 860 (Fed. Cir. 2010).

[16] *Id.* at 872-73 (emphasis added).

[17] *Id.* at 869 (emphasis in original).

12

in-suit to be admissible or used to support a damage award. Indeed, Rule 26(b) provides that "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." In *Trading Technologies International, Inc. v. eSpeed, Inc.,*[18] the plaintiff argued that it was entitled to discover documents and information related to the defendants' other patent licenses because such information was relevant to determining damages under the second, twelfth, and fifteenth *Georgia-Pacific* factors. The court granted the plaintiff's motion to compel, explicitly recognizing that "[w]hile *Georgia-Pacific* does indicate that the patents to which we may look to determine a reasonable royalty rate must be 'comparable,' courts have often interpreted this fact broadly."[19] The court further recognized the significant difference between the discoverability of such licenses and the ultimate admissibility and weight to be given to them at trial:

> If, as defendants contend, the patents at issue are not comparable and will not give any indication of what the patents-in-suit would be worth, they will not carry weight in the final determination. But defendants are getting ahead of themselves. We are currently dealing with discovery, not the admission or weight of any evidence, and plaintiff has failed to point us to any court that has limited such discovery.[20]

Here, the Court agrees with *Trading Technologies* that a different standard exists for discoverability of other comparable patent licenses and the ultimate admissibility and weight to be given to the licenses at trial. High Point has shown that Sprint's VOIP patent licenses and settlement agreements are relevant to a determination of a reasonable royalty under the second and twelfth *Georgia-Pacific* factors. High Point has further made a sufficient showing that the technology in

---

[18]No. 04 C 5312, 2007 WL 704525, at *1-2 (N.D. Ill. Mar. 1, 2007).

[19]*Id.* at *2.

[20]*Id.*

Sprint's VOIP patents is sufficiently comparable to the technology at issue in the patents-in-suit to justify discovery of the VOIP patent licenses and settlement agreements.

Sprint also argues that its VOIP patent license and settlement agreements are not relevant because they were negotiated and entered into long after the date of the alleged first infringement of the patents-in-suit. According to Sprint, there is little, if any, probative value to licenses resulting from settlement agreements entered into a decade after the alleged infringement first occurred—when the hypothetical royalty negotiation under *Georgia-Pacific* is supposed to occur—even for the same patents.

Sprint has failed to convince the Court that the timing of the VOIP patent license and settlement agreements makes them not relevant and therefore not discoverable. It is true that a reasonable royalty typically is determined from the "hypothetical results of hypothetical negotiations between the patentee and infringer (both hypothetically willing) at the time infringement began."[21] This does not preclude, however, consideration of evidence of facts and events occurring after the alleged infringement began.[22]

Sprint also argues that licenses to the patents-in-suit obtained by High Point and other predecessor owners are far more relevant to a reasonable royalty determination than licenses to patents for other technology like Sprint's VOIP patents. The licenses most factually linked to the damages calculation in this case are the numerous consummated licenses to the patents-in-suit by High Point's predecessors. As such, there is no need for licenses for Sprint's VOIP technology.

---

[21]*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996).

[22]*Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004)).

The Court agrees with Sprint that licenses for the patents-in-suit would appear to be more relevant than licenses for other patents not at issue in this case, such as Sprint's VOIP patents. The fact that licenses for the patents-in-suit may be "more relevant" to a reasonably royalty calculation, however, does not make Sprint's VOIP licenses irrelevant and not discoverable. High Point is entitled to discovery regarding any nonprivileged matter that is relevant to it claims or defenses, not just the *most* relevant information. High Point's motion to compel Sprint to produce license and settlement agreements for its VOIP technology patent in the *Vonage* case (05-2433) and four related cases is granted.

**B.     Relevance of VOIP Damages Expert Reports and Deposition Testimony**

High Point also asserts that the expert reports and deposition testimony from damages experts in the *Vonage* litigation are relevant and should be produced. It asks the Court to reject Sprint's argument that the damages expert deposition testimony and reports from the *Vonage* case are irrelevant because High Point has obtained the publicly available trial transcript of Sprint's damages expert. High Point claims that in patent litigation, it is customary for parties to provide highly detailed expert reports, which are then summarized during the expert's direct testimony. Thus, the *Vonage* trial transcript likely only represents a snapshot of Sprint's damages analyses. Deposition testimony is also often very different in content from testimony at trial. High Point maintains that its request for these documents clearly meets the minimal threshold for relevancy and the Court should order Sprint to produce them.

Sprint argues that High Point does not explain its need for the damages expert reports and deposition testimony from the *Vonage* case. High Point already has the publicly available trial testimony of Sprint's damages expert in that case. In that testimony, which spans roughly 150 pages,

Sprint's damages expert discusses the reasonable royalty determination and the methodology used to reach it.

High Point has met its burden of showing the relevancy of the expert reports and deposition testimony from damages experts in Sprint's VOIP patent *Vonage* litigation. It has further convinced the Court that the publicly available *Vonage* trial transcripts likely do not provide the same type or amount of information as the deposition transcripts or the damages expert reports. High Point's motion to compel Sprint to produce VOIP damages expert reports and deposition transcripts in the *Vonage* case and four related cases is granted.

### C. Relevance of VOIP Licensing Communications Between Sprint and Vonage Regarding Terms of Settlement

High Point also seeks VOIP settlement communications between Sprint and Vonage and other VOIP patent litigation defendants. As discussed above, High Point has shown that Sprint's VOIP patent license and settlement agreements to be relevant to the calculation of a reasonable royalty in this case. In addition to licenses and settlement agreements, High Point also seeks Sprint's settlement communications with Vonage and other VOIP patent litigation defendants. High Point points out that this Court has not specifically ruled on the issue of whether licensing and settlement negotiations in patent litigation are discoverable where there is a consummated license agreement. The Court has previously ordered High Point to produce its ongoing and unconsummated patent licensing communications with third parties in the absence of a consummated agreement.[23] High Point points out that the Court's prior ruling recognized decisions from several other courts finding a patent holder's licensing communications with third parties to be relevant in patent

---

[23] *See* July 29, 2011 Mem. & Order (ECF No. 669), at 8-10.

infringement suits, including being relevant to whether prior licenses are comparable and to the calculation of a reasonable royalty.

Sprint argues that even if the Court were to find the VOIP license and settlement agreements relevant, the communications between Sprint and its counterparties regarding the terms of settlement are not relevant as the VOIP licensing communications merge into the final licensing agreement. It argues that Judge Bostwick's decision in *Heartland Surgical Specialty Hospital v. Midwest Division*, *Inc.*,[24] sets a bright-line rule that settlement negotiations are never discoverable where an agreement has been consummated.

The Court finds that High Point has not met its burden to show that Sprint's settlement communications with Vonage and the other VOIP patent litigation defendants are relevant to the claims and defenses in this case. While the Court agrees with High Point that Sprint's VOIP patent licenses and settlement agreements are relevant to the determination of reasonable royalty calculation under the second and twelfth *Georgia-Pacific* factors, High Point has not adequately shown how Sprint's settlement communications with Vonage and other VOIP patent litigation defendants that led up to the VOIP patent licenses or agreements would be relevant. Although the Court previously found in its July 29, 2011 ruling that licensing communications between High Point and other third parties were relevant, those licensing communications were pertaining to the patents-in-suit rather than to comparable patents as sought here. Sprint's relevancy objection to producing its settlement communications between Vonage and other VOIP patent litigation defendants is sustained and High Point's motion to compel these documents is denied.

---

[24]No. 05-2164-MLB-DWB, 2007 WL 1246216, at *5 (D. Kan. Apr. 27, 2007).

## V. Rule 37(a)(5) Expenses

Under Fed. R. Civ. P. 37(a)(5)(C), if a motion to compel is granted in part and denied in part, then the court after providing an opportunity to be heard, may "apportion the reasonable expenses for the motion." Neither High Point nor Sprint requests any reasonable expenses incurred in filing or opposing the motion to compel. Upon review of the briefing, the Court finds that although some of Sprint's relevancy objections to Request No. 223 were ultimately overruled, those objections were substantially justified. The parties shall therefore bear their own expenses related to this motion.

**IT IS THEREFORE ORDERED** that High Point's Motion to Compel Sprint to Produce Documents Responsive to High Point's Fifth Set of Requests for Production No. 223 (ECF No. 700) is granted in part and denied in part. **Within 30 days of the date of this Memorandum and Order**, Sprint shall produce all license and settlement agreements, damages expert reports, and transcripts of damages expert deposition testimony relating to Sprint's VOIP technology patent infringement litigation, *Sprint Communications Co., L.P. v. Vonage Holdings, Corp.* (D. Kan. Civ. A. No. 05-2433) and four related cases responsive to High Point's narrowed Fifth Request No. 223. Sprint's relevancy objection to producing its settlement communications between Vonage and other VOIP patent litigation defendants is sustained and it need not produce these documents.

**IT IS FURTHER ORDERED** that the parties shall bear their own expenses related to the motion.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas, on this 30th day of April, 2012.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge
