## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**HIGH POINT SARL,**

       **Plaintiff and**
       **Counterclaim Defendant,**

                                  **CIVIL ACTION**

**v.**

                                  **Case No. 09-2269-CM-DJW**

**SPRINT NEXTEL**
**CORPORATION, et al.,**

       **Defendants and**
       **Counterclaimants.**

### MEMORANDUM AND ORDER

This matter is before the Court on Sprint's Motion for Review of Special Master Bayer's Report and Recommendations on Privileged Documents (ECF No. 796), and Interested Party Avaya Inc.'s Motion for Review of the April 27, 2012 Special Master's Report and Recommendations on Privileged Documents (ECF No. 800). Sprint requests that the Court conduct a *de novo* review of 13[1] Avaya documents that the Special Master found to be privileged in his Report and Recommendations on Privileged Documents (ECF No. 786), but identified as a "close call." Sprint requests that the Court conduct a *de novo* review and compel Avaya to produce documents identified as entries 79, 80, 257, 258, 267(a), 269, 270, 474, 1091, 1095, 1143, 1144, and 1152 from the July 2, 2010 log. Avaya requests in its motion that the Court reject the Special Master's recommendations with regard to the three entries 55(a), 121, and 307 and order that these documents

---

[1]Sprint originally sought review of 22 entries in its privilege logs. Avaya advises in its response (ECF No. 812) that it has produced 7 of these documents, and they are therefore no longer at issue in this motion. Also, the Court has found Sprint's motion for review of 2 other documents (Entries 181 and 182 from Avaya's June 18, 2010 log) to be moot. *See* ECF No. 860.

be retained as privileged rather than produced.  As explained below, the Sprint's motion is granted in part and denied in part, and Avaya's motion is granted.

## I.    Background Facts

High Point SARL (hereinafter "High Point") filed this patent infringement case against Sprint Nextel Corporation, Sprint Spectrum L.P., SprintCom, Inc., Sprint Communications Company L.P., Sprint Solutions, Inc., APC PCS, LLC, APC Realty and Equipment Company, LLC, and STC Two LLC (collectively referred to as "Sprint").  High Point alleges that Sprint's cellular CDMA telephone networks infringe upon four United States patents assigned to High Point.

The patents-in-suit, directed to telecommunications equipment for a wireless cellular telephone network, were originally assigned to AT&T Corporation in 1993 and 1994.  In 1996, AT&T Corporation assigned the patents-in-suit to its spin-off company, Lucent Technologies, Inc. On October 1, 2000, Avaya, Inc. ("Avaya") which was formerly known as the Enterprise Networks Group of Lucent Technologies, was spun off from Lucent.  As part of the spinoff, Avaya acquired certain patents, including the patents-in-suit.  On March 13, 2008, Avaya sold the patents-in-suit to High Point.

On April 13, 2010, Sprint served Avaya with a subpoena.  The subpoena commanded Avaya to produce documents referring or relating to the patents-in-suit or related intellectual property, communication with Sprint as to the patents-in-suit, assignment or transfer of the patents-in-suit, and litigation and enforcement of the patents-in-suit.  In response, Avaya objected to the production of documents on the grounds they were protected from disclosure under the attorney-client privilege and provided privilege logs for its June 18 and July 2, 2010 document production.  Sprint thereafter moved to compel Avaya to produce responsive documents that were being withheld based on

2

privilege.

By Memorandum and Order dated January 25, 2012 (ECF No. 723), the Court granted in part and denied in part Sprint's motion to compel Avaya to produce documents it had withheld as attorney-client privileged. The Court found that Avaya could avail itself of the common interest exception to privilege waiver for the confidential materials it disclosed to affiliated entities and third parties. Avaya's privilege logs, however, failed to establish attorney-client privilege for entries with no author or recipient listed, and certain other entries, and the Court ordered Avaya to produce these documents. The Court then referred the task of conducting an *in camera* review of Avaya's documents identified on its privilege logs as (1) sent to "File," or (2) authored by or sent to "Avaya," to the Special Master Karl Bayer.

On April 27, 2012, the Special Master filed his Report and Recommendations on Privileged Documents (ECF No. 786). Attached to his Report were two *in camera* inspection logs, one for Avaya's June 18, 2012 document production and one for its July 2, 2012 production. On page 5 of his report, the Special Master explained his use of an asterisk (*) for some of the log entries: "The asterisk is an indication that the question of privilege may require particular attention by the Court either because the claim is clearly unwarranted, or in many cases because the Special Master considered the claim a 'close call.'"[2]

On May 18, 2012, Sprint filed its motion for review of the Special Master's April 27, 2012 Report and Recommendations with respect to 22 documents that the Special Master recommended be retained as attorney-client privileged, but considered a "close call." On May 21, 2012, Avaya filed its motion for review of the Special Master's Report and Recommendations regarding three

---

[2]Special Master's R&R (ECF No. 786) at 5.

entries where the Special Master recommended the document be produced

On August 23, 2012, the Special Master filed his Second Supplemental Report and Recommendations on Privileged Documents After Review of Mislabeled Documents (ECF No. 850). In the report, the Special Master reviewed a group of documents submitted by Avaya that had been mislabeled for the Special Master's prior *in camera* inspection.  As a result of the Special Master's review of the mislabeled documents, he sustained Avaya's assertion of privilege with regard to all but one of the mislabeled documents, including sustaining the privileges asserted as to entries 181 and 182 from Avaya's June 18, 2012 production log.  Finding that no party had filed any objections or motion to review the Special Master's Second Supplemental Report and Recommendations under the 21-day time period provided in Fed. R. Civ. P. 53(f)(2), the Court entered an order (ECF No. 859) adopting in full the Special Master's recommendations contained in his Second Supplemental Report.  As part of its ruling, the Court found Sprint's motion for review of the Special Master's April 27, 2012 Report and Recommendations as to entries 181 and 182 moot.

On September 19, 2012, the Court ordered Avaya to submit the documents still at issue in Sprint and Avaya's pending motions for review of the Special Master's April 27, 2012 Report and Recommendations for an *in camera* review.[3]  On October 3, 2012, Avaya submitted the following documents:

- Entries 79, 80, 257, 258, 267(a), 269,[4] 270, 474, 1091, 1095, 1143, 1144, and 1152 from Avaya's July 2, 2010 production log;

---

[3]*See* Order to Submit Documents for In Camera Review (ECF No. 860).

[4]This document was submitted on October 26, 2012, pursuant to the Court's October 23, 2012 Order (ECF No. 875).

- Entries 55(a), 121, and 307 from Avaya's July 2, 2010 log; and

- Entries 71, 74, 75, 253(a), and 1092 from Avaya's July 2, 2010 log.

The Court has reviewed these documents and is now ready to rule on Sprint and Avaya's pending motions for review of the Special Master's April 27, 2012 Report and Recommendations on Privileged Documents.

## II.    Legal Standard

Federal Rule of Civil Procedure 53(f) sets forth the standards for this Court to apply in its review of the Special Master's Report and Recommendations. It provides that objections to findings of fact made or recommended by the special master are to be reviewed by the court *de novo,* unless the parties stipulate that the findings will be reviewed for clear error or the findings will be final.[5] Objections to conclusions of law made or recommended by the special master are to be reviewed by the court *de novo*.[6] A special master's ruling on procedural matters, however, may only be set aside for abuse of discretion.[7]

Here, the Court determines that the Special Master's recommendations on whether Avaya should produce or retain the documents identified on its privilege log as attorney-client privileged are conclusions of law, and the Court will review the parties' objections under a *de novo* standard of review.

---

[5]Fed. R. Civ. P. 53(f)(3).

[6]Fed. R. Civ. P. 53(f)(4). *See also U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 830 (10th Cir. 2005)("The district court reviews the master's legal conclusions de novo").

[7]Fed. R. Civ. P. 53(f)(5).

**III.    Sprint's Motion for Review of Special Master's Report and Recommendations**

Sprint requests that the Court conduct a *de novo* review and compel Avaya to produce documents identified as entries 79-80, 257, 258, 267(a), 269, 270, 474, 1091, 1095, 1143, 1144, and 1152 on Avaya's privilege log for its July 2, 2010 production.  It argues that although the Special Master recommended that these documents be retained as attorney-client privileged, he indicated that his findings on these documents may require particular attention by the Court because the claim is clearly unwarranted or because the claim was a "close call."  Sprint asks the Court to review the documents that the Special Master indicated were "close calls."  It asserts that Avaya had not met its burden of establishing that these documents either reflect or memorialize a privileged communication and asks that the Court reject Avaya's post-hoc unsupported comments.

**A.    Entries 79 and 80**

Log entries 79 and 80 in the Special Master's In Camera Inspection Log for Avaya's July 2, 2010 production indicate the documents are dated November 4, 2002, authored by Douglas Spencer and David Mohler and were sent to "File."  The Special Master recommends that both documents be retained with an asterisk, and with the following comment:

> The log indicates prepared by Spencer and Mohler-both IP Law group non-attorneys. The document bears an original "attorney-client" legend. It appears to be a presentation for management regarding strategy regarding patent portfolio. Nothing on face of document shows any attorney involvement other than the legend, and the recipient is "file."  However the document on its face is a strategy presentation probably for management and does involve attorney-client type information.[8]

Sprint requests that the Court reject the Special Master's recommendation as to entries 79-80

---

[8]In Camera Inspection Log for 7/2/2010 Prod. (ECF No. 786-2, at 5-6).  Due to the Special Master's extensive use of abbreviations and shorthand references, the Court has modified his quoted privilege log comments for readability throughout this Memorandum and Order.

as these documents are prepared by two non-attorneys, sent to "file," and do not reflect the involvement of any counsel.  The Special Master commented that the documents are a strategy presentation "probably" for management.  Sprint argues that Avaya has failed to meet its high burden of showing that the documents reflect attorney-client privileged communications.

Avaya argues that log entries 79 and 80 are identical copies of a July 22, 2006 slide presentation by the Avaya Patent & Licensing Management team about strategic options regarding the patents-in-suit.  It is the same document as log entry 74, which Special Master Bayer recommended without reservation should be retained as attorney-client privileged.  The slide presentation concerns much of the same subject matter as log entry 75, which Special Master Bayer also found privileged and not a "close call." Avaya  suggests that the Special Master's comment and resulting "close call" designation was in error, and inconsistent with the Special Master's other privilege rulings, including his recommendation on entry 74, which is the same document.

Avaya has represented to the Court that the documents identified as entries 79 and 80 are identical copies of a July 22, 2006 slide presentation (entry 74) by the Avaya Patent & Licensing Management team about strategic options regarding the patents-in-suit, which the Special Master recommended without reservation should be retained as attorney-client privileged.  The Court has reviewed entries 79 and 80 and confirms that these documents are essentially identical copies of entry 74, which the Special Master has unequivocally recommended should be retained as attorney-client privileged. The Court therefore adopts the Special Master's recommendations that the documents identified as entries 79-80 be retained as an attorney-client privileged communications.

**B.     Entry 257**

Avaya's log describes entry 257 as authored by "Viva Productions/Avaya" and sent to "File."

The Special Master recommends that the document be retained with an asterisk and with the following comment: "Patent Licensing presentation prepared by IPlaw non-attorneys for license management team.  No attorneys names on document, but bears 'attorney-client' legend.  Does include attorney-client type information."

Sprint argues that Avaya's log for this entry uses the same cut-and-paste "patent analysis" description that the Special Master derided as often "simply untrue" and "disingenuous at best." Sprint asserts that although the Special Master states that the presentation includes attorney-client type of information, it is unclear whether the document's main purpose was for obtaining legal advice.

Avaya asserts that entry 257 is draft version 1.6 of an Avaya slide presentation dated April 13, 2007, stamped attorney-client privileged, about Avaya's project to analyze the patents-in-suit and decide how to exploit them. It is substantially identical to log entry 71, which is draft version 1.5 of the same presentation dated the same day, which Special Master Bayer unequivocally recommended be retained as attorney-client privileged, without any "close call" reservation.  Avaya asserts that the presentation's authors are inventor and Avaya technical consultant Douglas Spencer and Avaya Patent & Licensing Management Group patent licensing director David Mohler, who worked on Avaya's attorney-directed project to analyze the patents-in-suit, the infringing market, and options for Avaya's exploitation of the patents. The document is clearly one they created as part of their work analyzing the patents for Avaya's attorneys.  Indeed, the slides discuss legal issues, speculation on potential defense strategy and other legal matters that reasonably would have originated with Avaya's attorneys and/or were matters for their consideration.

The Court has reviewed the document identified as entry 257 and finds it to be what Avaya

states it to be—an April 13, 2007 presentation on Avaya's CDMA wireless patent license program stamped as attorney-client privileged.  Entry 257 is basically the same presentation identified as entry 71 (entry 257 is the 1.6 draft version while entry 71 is the 1.5 version), which the Special Master unequivocally recommended should be retained as attorney-client privileged. The Court therefore adopts the Special Master's recommendation that the document identified as entry 257 be retained as an attorney-client privileged communication.

### C.      Entry 258

Log entry 258 describes the document as authored by "Viva Productions/Avaya" and sent to "File."   After recommending that the document be retained with an asterisk, the Special Master made the following comment on his privilege review log: "Multi-page presentation regarding monetizing IP.  Bears 'attorney-client' legend.  Several references to 'IPL&M' recommendation, which I take to be an acronym for 'IPLaw and Management.'  Includes some potentially attorney-client comments.  Prepared by IP Law Group."

Sprint argues that discussion of monetary issues such as royalties does not necessarily pertain to the provision of legal advice.  Rather, the discussion must be for purposes of legal advice regarding such monetary issues.  Especially when combined with Avaya's misleading and unhelpful description of the document, Avaya has failed to meet its high burden of showing that this concerns attorney-client privileged communication.

Avaya describes the document identified as entry 258 as an internal slide presentation regarding its possible monetization of the patents-in-suit.  It is the same presentation that the Special Master found to be unequivocally privileged at log entry 1092, except that entry 1092 contains handwritten notes.

The Court has reviewed the document identified as entry 258 and finds it to be what Avaya states it to be—an slide presentation on Avaya's possible monetization of the patents-in-suit. Entry 258 is also identical to the slide presentation identified as entry 1092, except that entry 1092 contains a few handwritten comments. The Court notes that the Special Master unequivocally recommended that entry 1092 be retained as attorney-client privileged. The Court does not find that the handwritten comments are what make entry 1092 to be privileged. The Court further does not find that the topic of the slides—the monetizing of the patents— forecloses that the communication cannot constitute legal advice as argued by Sprint. The Court therefore adopts the Special Master's recommendation that the document identified as entry 258 be retained as an attorney-client privileged communication.

### D.    Entries 267(a) and 474

Log entry 267(a) describes the document as authored by "P&LM/Avaya" and sent to "File." The Special Master recommends that 267(a) be retained with an asterisk, and 267(b) be produced. The Special Master made the following comment on his privilege review log:

> While much of this 267(a) document includes public information, it also does include an "attorney-client" legend and it appears to contain a legal assessment of the scope of various patent claims, which is attorney-client type communication. It was apparently presented to a third party under the "common interest" confidentiality that the Court spoke of as not constituting a "waiver." I do note that no attorney or IP Law group name appears on the face of the document. 267(b) appears to be public market projection information and not privileged.

Entry 474 is authored by Avaya's IP Law Group and sent to "File." The Special Master Recommends that 474 be retained with an asterisk. He commented that the materials were shared with third party iPro regarding Avaya's patents and bear an attorney-client legend. He concluded the document was privileged under the Court's "common interest" ruling.

Sprint argues that neither Avaya's logs, nor the Special Master's findings provide sufficient

10

information to support Avaya's claim of privilege.  The Special Master directed production of most of entry 267; suggesting retention only of what appears to contain a legal assessment of the scope of various patent claims, which is attorney-client type communication.  But neither document reflects an author, and as the Special Master states, it does not mention the name of any attorney.  The Special Master's review also suggested that the document "apparently" was presented to a third party.  Especially when combined with Avaya's misleading and unhelpful description of the document, the Special Master's equivocal comments and assumptions confirm that Avaya cannot to meet its high burden of showing that this entry reflects an attorney-client privileged communication.

Avaya explains that log entries 267(a) and 474 are substantially identical slide presentations by Avaya's IP Law Group to two different third parties with whom Avaya was discussing potential transactions regarding the exploitation of the patents-in-suit.  The only difference between the entries 267(a) and 474 is the identified third party and the inclusion of the notes that can be embedded in a PowerPoint file but not displayed in the slides themselves.  Avaya claims that the presentation identifies its belief regarding certain unlicensed potential targets, relevant royalty considerations, and includes and discusses claims charts prepared as part of Avaya's internal, attorney-directed analysis of the patents.  Avaya points to the declarations of Douglas Spencer and corporate counsel Russell Binns, as well as the content of numerous other similar documents on Avaya's privilege logs that the Special Master unequivocally found to be privileged.  It argues that this demonstrates that the Special Master correctly found that these documents are indeed attorney-client and common interest privileged.

The Court has reviewed entries 267(a) and 474 and finds they are what Avaya describes them

to be—slide presentations to two third parties setting out Avaya's unlicensed potential targets, relevant royalty considerations, and including and discussing claims charts. Although Avaya claims that the presentations were disclosed to third parties with whom it was discussing potential transactions regarding the exploitation of the patents-in-suit, Avaya does not provide enough information for the Court to conclude that the common interest exception applies to these communications.  In its January 25, 2012 Memorandum and Order (ECF No. 723), the Court required Avaya in this case to show a substantially identical legal interest in the subject of the communication with the entity receiving the privileged material in order to avail itself of the common interest exception to privilege waiver.  Avaya has not shown that it had substantially identical common legal interest in the validity, enforceability, and potential for infringement of the patents-in-suit at the time it disclosed the slide presentations to the two specific companies.  It did not even assert the common interest privilege on its supplemental privilege log.  Finally, Avaya has not shown that it executed non-disclosure agreements with either third-party to whom it presented the slides.  The Court finds that Avaya has thus failed to meets its burden to show the applicability of the common interest exception for entries 267(a) and 474.  The Court therefore rejects the Special Master's recommendation that entries 267(a) and 474 be retained as an attorney-client privileged communications under the common interest exception to waiver of privilege. **<u>Avaya shall produce the documents identified as entries 267(a) and 474 within 30 days of this Memorandum and Order</u>**.

### E.    Entries 269 and 270

Log entry 269 describes the document as authored by "Viva Productions/Avaya" and sent to "File."  The Special Master recommends that 269 be retained with no asterisk.  In his comments,

however, he states:

> Mixed business and some legal advice. Last page says "IP Attorneys" re
> recommendation.   Labeled  confidential  not  Attorney-client.  Marginal  but  I
> recommend retain.

Log entry 270 is authored by Ian Bashaw and sent to "File."  The Special Master recommends
that 270 be retained with an asterisk, but with the following comment:

> This is a summary of the IPLM program to monetize the patent assets. Log states
> authored by Bashaw-an IPLaw group member.   Not apparent on face of the
> document.  Does include potentially attorney-client type communication.

Sprint notes inconsistent statements in the Special Master's privilege log comments.  While
the Special Master states that entry 269 includes potentially attorney-client type communications,
he also describes the document as authored by a non-attorney and as a "summary of the IPLM
program to monetize the patent assets."  Sprint argues that documents discussing monetary issues
such as royalties does not necessarily pertain to the provision of legal advice.  Rather, the discussion
must be for purposes of legal advice regarding such monetary issues in order to potentially qualify
as privileged.

Avaya states in its response that entries 269 and 270 are two different slide presentations of
the IP Law and Management Group describing Avaya evaluations of whether and how to enforce
or otherwise exploit numerous categories of Avaya patents and other intellectual property.  The
Special Master unequivocally recommended that log entry 269 be retained, commenting that while
it contained mixed business and legal advice, the last page contained a recommendation of Avaya's
intellectual property attorneys and management regarding a patent licensing strategy that does not
relate to the patents-in-suit.  Only a small portion of entry 269 on the first page relates the
patents-in-suit in this litigation. Because that notation describes only facts that have by now been

13

disclosed about the Inpro patent sale, Avaya is willing to produce this portion of the document under the protective order, but asks that the Court permit it to redact the discussions of unrelated matters, which represent decisions arrived at through consultation with counsel and that are of no possible relevance to this litigation.

Similarly, log entry 270 is a slide presentation dated August 2008 summarizing numerous patent and other IP programs of the IP Law and Management Group. The document mentions the patents-in-suit in very cursory fashion on only the first and second pages, mentioning a few details concerning the concluded patent sale to Inpro. The remaining materials describe other projects of the Group involving intellectual property unrelated to this litigation, including matters that were "in investigation" by Avaya in consultation with its counsel. As with log entry 269, Avaya asks that the Court permit it to produce a redacted version of the document that discloses the portions related to the patents-in-suit, but redacts the references to the irrelevant projects under consideration that were being evaluated in consultation with counsel.

As Avaya has offered to produce portions of entries 269 and 270, the Court rejects the Special Master's recommendation that these entries be retained as an attorney-client privileged communications.  Because these documents will be subject to the provisions of the protective order limiting the parties disclosure and use of the information contained in the documents, Avaya's request to produce these documents with irrelevant, unrelated matters redacted is denied. **Within 30 days of this Memorandum and Order, Avaya shall produce unredacted copies of the documents identified as entries 269 and 270 on its privilege log for its July 2, 2010 production.**

F.     Entry 1091

Log entry 1091 describes the document as authored by "Avaya" and sent to "File."  The

14

Special Master recommends that 1091 be retained, but with an asterisk.  He commented that the "[h]andwritten note does raise legal question and is potentially an [attorney]-client communication."

Sprint argues that entry 1091 has no author and no recipient, and raising a legal question is not the same as communicating privileged information.  It also argues that Avaya cannot establish that handwritten notes are privileged communications because it cannot identify the author of the handwritten notes, who may or may not be an attorney.  In addition, there is no indication that this document was related to, much less, predominated by, legal advice.

Avaya describes entry 1091 as a draft contract for the Inpro transaction with handwritten questions regarding several provisions of the agreement.  Avaya, however, is unable to identify the author of the handwritten questions, but believes that the comments alone establish that they represent a privileged notation either by an Avaya attorney relating to potential legal advice to be communicated or by a non-attorney of matters to be raised with Avaya's attorneys.  There is no other logical reason why this kind of notation would be on the draft contract, and on that basis, Avaya asks the Court to uphold Special Master Bayer's recommendation that the document be retained as privileged.

The Court has reviewed the document identified as entry 1091 and finds that it is a draft contract with some handwritten questions in the margins.  Although Avaya cannot identify the author of the draft agreement or handwritten questions in the margins, the nature and content of the questions written on the contract are such that they appear to be written as communications to or from an attorney reviewing the draft document.  The Court therefore adopts the Special Master's recommendation that the document identified as entry 1091 be retained as an attorney-client privileged.

### G.    Entry 1095

Avaya lists log entry 1095 as authored by "Ian Bashaw" and sent to "File."  The Special Master recommends that part of the document be produced and part be retained with an asterisk.  He commented that the "first three pages are a copy of INPro's website and are not privileged.  The fourth page is handwritten notes of a IPLaw group member and contains attorney-client type information."

Sprint points out that the Special Master recommends production of the first three pages of this document, but recommends retention of the last page because it contains "handwritten notes of an IPLaw group member" and attorney-client type information.  Based on this description, however, the notes appear to come from a non-attorney and do not suggest any communication to anyone.

Avaya responds that the portion of log entry 1095 that Special Master found to be privileged consists of a page of handwritten notes by former Avaya patent licensing director Ian Bashaw about the patents-in-suit, including an evaluation of relevant technical information, the licensing status of certain potential infringers, and potential damages information.  The Special Master did not explain why he marked this portion of the document with an asterisk as a "close call," noting only that it consisted of the "handwritten notes of an IPLaw group member" and that it contains attorney-client information.  The information in these IPLaw group notes is, indeed, the product of discussions with Avaya's attorneys, and thus, records an attorney-client privileged communication.

The Court has reviewed the document identified as entry 1095 and agrees with the Special Master's recommendation that page 4 should be retained as it appears to contain handwritten notes by Avaya's former patent licensing director about the patents-in-suit.  Avaya has alleged that this information is the product of discussion with Avaya's attorneys and is a record of an attorney-

privileged communication. The Court will therefore adopt the Special Master's privilege recommendation with regard to entry 1095.

### H.     Entries 1143 and 1144

Log entries 1143 and 1144 are authored by "Avaya" and sent to "File."  The Special Master recommends that both entries be retained with an asterisk, commenting that  these documents summarize existing licenses by Avaya to third parties and include comments that are attorney-client type communication, albeit to the "file." He caveats, however, that if being sent to "file" is not deemed a potential attorney-client "communication," then the documents should be produced.

Sprint asks the Court to reject the Special Master's recommendations as to these entries.  It notes that the Special Master recommends production of Entries 1142 and 1145, yet retention of 1143 and 1144. These four entries apparently are materials authored by a non-attorney and sent to "file." Entries 1143 and 1144 apparently summarize existing licenses and includes comments "that are Attorney-Client type communication, albeit to the 'file.'"  Sprint argues that the Court has already held that materials sent to "file" are not presumed privileged. It also argues that the materials are not designated as attorney-client privileged. As the Special Master notes, these materials could just as easily be a financial/marketing exercise.  Such business-related materials are not privileged.

Avaya describes entries 1143 and 1144 as pages 1 and 2 of the same chart relating to a legal analysis of the scope of Avaya's licenses to the patents-in-suit, including discussions of particular contractual provisions.  It maintains that the chart embodied in log entries 1143 and 1144 is attorney-client privileged because, as the log states and as confirmed by the chart's contents, it contains information gathered for the purpose of providing legal advice regarding the licenses to the patents. As such, the chart represents either an actual communication to or from counsel (if sent as

17

is) or a draft communication to or from counsel (if later edited or incorporated into another document, or otherwise conveyed to counsel). In its January 25, 2012 Memorandum and Order, the Court stated that documents to file could be attorney-client privileged if it memorializes or records an attorney-client communication. Such information was directly relevant to Avaya's decision whether and how to exploit the patents against infringers and was reflected in numerous other slide presentations and other documents regarding the licensing status of potential infringers. As such, the document is validly attorney-client privileged, and there is no basis to overturn the Special Master's recommendation that the entries be retained as privileged.

Avaya has convinced the Court that the information on the two charts identified as entries 1143 and 1144, although sent to "file," were compiled for the purpose of providing legal advice on whether and how to exploit the patents against infringers, and was communicated to or from counsel to facilitate that legal advice. As the Special Master found, the comments section of the documents appear to contain attorney-client types of communication. The Court therefore adopts the Special Master's recommendations that the documents identified as entries 1143 and 1144 be retained as attorney-client privileged communications.

## I.     Entry 1152

Log entry 1152 is described as authored by "Avaya" and sent to "File." The Special Master recommends that it unequivocally be retained with the following comment:

> Not labeled as attorney-client or confidential. This is a one page spreadsheet of analysis of handset market by company but also includes a description or opinion of applicable Avaya patents. So it does include some potentially attorney-client communication, assuming sent to file qualifies.

Sprint argues that while the Special Master did not mark these entries with an asterisk, his

18

comments raise similar questions about whether materials merely sent to file are protected as attorney-client communications.  These entries are similar to the prior entries, but apparently reflect potential licensing royalties and related matters. As above, business-related materials are not privileged, nor are materials that do not suggest any attorney-client communication.

Avaya describes entry 1152 as a chart representing the opinion of Avaya's counsel regarding the licensing status of various potential infringers of the patents-in-suit, the scope of the license provisions, and various damages-related information. It points out that the Special Master unequivocally recommended that the document be retained as privileged, noting that it did include some potential attorney-client communication, assuming that a document sent to "file" could be privileged. Avaya submits that the product of this document could only represent information that was generated by an attorney, for conveyance to Avaya in consideration of its evaluation of the exploitation of the patents-in-suit. As such, it represents an actual, recorded, or intended attorney-client communication, and is privileged.

Avaya has convinced the Court that the document identified as entry 1152, although sent to "file," was compiled for the purpose of providing legal advice regarding the evaluation of the exploitation of the patents-in-suit, and was communicated to or from Avaya's counsel to facilitate that legal advice.  The Court therefore adopts the Special Master's unequivocal recommendation that the document identified as entry 1152 be retained as an attorney-client privileged communication.

## IV.    Avaya's Motion for Review of Special Master's Report and Recommendations

Avaya requests in its motion that the Court reject the Special Master's recommendations as to entries 55(a), 121, and 307 and order that these documents be retained as privileged rather than produced.  Avaya states that it believes that the recommendations as to log entries 55 and 307 (which

are identical sets of draft presentation slides), were inadvertent mistakes, given the Special Master's decision that the final slide presentation that incorporated the slides was privileged. Avaya further believes the Special Master's recommendation to produce the third document, log entry 121, was based on a mistaken belief as to the author of the document and the privileged scope of his work, as established in prior declarations of record and the Special Master's recommendations on other documents by the same author.

### A.     Entries 55(a) and 307

Log entry 55 is described as authored by "Avaya" and sent to "File."  The Special Master recommends that the document be produced with the following comment:

> Collection of materials authored by "Avaya" and Sent to "file." Some pages have copyright notices, some have proprietary and confidential, most have no designation. None are marked "Attorney-client" or "privileged."  First group appears to be an assessment of the market for licensing; others are spreadsheets summarizing the patent portfolio. No apparent attorney-client information or communication, not clear as to whom it was presented- so not clearly even "confidential."

Entry 307 was authored by Suresh Sharma and sent to "File."  The Special Master's recommendation is "produce all*" with the following comment:

> 307(a) is revenue estimates. Authored by IP Law group member but does not include an attorney-client legend or anything that would be attorney-client communication. 307(b) is a summary of licensing strategy. No legend other than "confidential." Nothing other than general reference to patents that could be attorney-client communication.

Avaya asks the Court to reject the Special Master's recommendations as to these documents, which are identical sets of draft presentation slides.  It suggests that the Special Master's recommendations are inadvertent mistakes, given the Special Master's decision that the final slide presentation that incorporated the slides (entry 253) was privileged.

Log entry 253 is an Avaya PowerPoint slide presentation relating to and created as part of that licensing program. Upon review, the Special Master expressly found that the first of several documents comprising log entry 253 (denoted 253(a)) included attorney-client material bearing an "Attorney-Client" legend, and accordingly, he recommended that Avaya be permitted to retain those portions as privileged.

Avaya advises the Court that log entry 55(a) is a duplicate of 307(a), and consists of eight draft slides that were incorporated into the PowerPoint presentation of log entry 253, which the Special Master found to be privileged.  Specifically, Avaya points out that pages 2-8 of log entries 55 and 307 are the same as pages 8-10 and 29-31 of log entry 253(a).  It further points out that the Special Master specifically decided that only part (a) of log entry 253 was privileged, while the other parts were not, and the slides on log entries 55 and 307 were drafts of the specific parts of log entry 253 that he found to be privileged. In recommending that log entries 55 and 307 be produced as non-privileged, the Special Master commented that it was not apparent or clear from the face of those documents that they reflected attorney-client communications. Avaya suggests that the Special Master may have missed the connection of these log entries to log entry 253, but that when viewed in context as draft slides incorporated into log entry 253(a), it becomes clear that they are properly viewed as being draft attorney-client communications prepared as part of Avaya's IP Law Group's licensing program.

Sprint disagrees and asks the Court to adopt the Special Master's recommendations with regard to entries 55 and 307.  It argues that neither document is a privileged attorney-client communication.  Notably, the Special Master specifically found that the document listed as entry 55 assessed the market for licensing and summarized the patent portfolio – communications that are

21

clearly not protected by privilege. As the Special Master describes it, the document was not for the purpose of seeking legal advice, contrary to Avaya's argument.  The Special Master found entry 307(a) to be revenue estimate and 307(b) to be a summary of licensing strategy.  The Special Master specifically found that there was no indication that either document was for the purpose of seeking legal advice, let alone that it actually reflected or memorialized a privileged attorney-client communication.

The Court has reviewed the documents identified as entries 55(a), 307(a), and 307(b).  The Court notes that the document identified as both entry 55(a) and 307(a) is marked "Proprietary and Confidential" and does not appear to be "revenue estimates" as commented by the Special Master, but rather is a slide presentation on licensing options and royalty estimates.  The document identified as entry 307(b) is labeled "Highly Confidential - Outside Counsel Only," and does not appear to be accurately described by the Special Master's comments either.  The Court has also reviewed the slide presentation identified as entry 253.  Based on this review, the Court finds that  the specific parts of log entry 253 that the Special Master found to be privileged (pages 8-10, and 29-31) are basically identical to pages 2-4 and 6-8 of log entries 55(a) and 307(a).  The Court therefore rejects the Special Master's produce recommendations with regard to log entries 55 and 307, and finds that they should be instead retained as privileged by Avaya.

### B.    Entry 121

Entry 121 was authored by "Anna A. Spencer, Avaya" and sent to "File."  The Special Master recommended that the document be produced with an asterisk.  He made the following comment in his in camera inspection log:

Lengthy technical analysis of 3g phone technology discussing various transport

22

protocols(public info), then mapping some extant Avaya patent claims against
industry standards. Prepared by non-attorney, non-IP Law group employee. No
legend regarding attorney-client or prepared at direction of counsel. Legend states
proprietary and confidential. Could be privileged BUT nothing in the document
supports that - subject to perhaps additional evidence being offered.

Avaya requests that the Court reject the Special Master's recommendation to produce the
document identified as entry 121 because it was based on an apparent misunderstanding that the
author was someone other than Mr. Spencer.  It suggests that the Special Master's recommendation
was based on a mistaken belief as to the author of the document and the privileged scope of his
work, given the Special Master's recommendations on other documents by the same author.  The
Special Master's comment that the author of the document was a "non-Iplaw group employee" was
apparently based on the privilege log's identification of the author as "Anna A. Spencer, Avaya Inc."
However, the declaration of Avaya's corporate counsel, Russell Binns, identified "Anna Spencer"
as a "metadata alias" for Doug Spencer, whose wife is Anna Spencer.  Avaya states that Mr. Spencer
is one of the named inventors on the patents-in-suit, and was an outside consultant to Avaya's IP
Law Group assisting Avaya's attorneys in connection with their analysis relating to the
patents-in-suit, and in anticipation of potential licensing and litigation relating to patent claims that
the IP Law Group was evaluating.  Avaya also points out that the Special Master found that
numerous patent analyses and other documents related to the patents-in-suit prepared by Mr. Spencer
were privileged and warranted retention.  Avaya cites to log entries 71, 74, and 75, among others
where the Special Master recommended the documents authored by Mr. Spencer be retained as
attorney-client privileged.

Sprint requests that the Court adopt the Special Master's recommendation that this document
be produced.  It argues that the Special Master specifically found that the document included a

"technical analysis" of phone technology and discussed "public" information.  This reason alone supports the Special Master's finding that the document is not protected by the attorney-client privilege. In addition, Avaya's argument that the document was purportedly created by Doug Spencer, who was an inventor on the patents-in-suit, does not make this document privileged.  There is nothing indicating that this document was for the purpose of legal advice, a standard that even Avaya agrees must be met in order for the document to be protected, and that the Special Master found Avaya to have repeatedly and improperly ignored in preparing its privilege logs. Avaya's argument that this document is protected by the attorney-client privilege fails, and this document should be produced as recommended by the Special Master.

Here, it appears that Special Master believed the document identified as entry 121 was prepared by a non-attorney, non-IP law group employee and, at least partially, based his recommendation to produce the document on that belief.  Avaya has convinced the Court that the document was authored by Douglas Spencer, using the alias "Anna A. Spencer," and that Mr. Spencer, as one of the named inventors on the patents-in-suit and consultant to Avaya's IP Law Group, created the document for the purpose of seeking legal advice regarding potential licensing and litigation relating to patent claims that the IP Law Group was evaluating.  That combined with the Court's review of the document and the Special Master's recommendations on other documents authored by Mr. Spencer, persuades the Court that, this document should be retained as attorney-client privileged.  The Court therefore rejects the Special Master's produce recommendation with regard to log entry 121.

**IT IS THEREFORE ORDERED THAT** Sprint's Motion for Review of Special Master Bayer's Report and Recommendations on Privileged Documents (ECF No. 796) is granted in part

and denied in part. The Court adopts the Special Master's retain recommendations with regard to log entries 79-80, 257, 258, 1091, 1095, 1143, 1144, and 1152.  The Court rejects  the Special Master's retain recommendations as to entries 267(a), 269, 270,  and 474. Avaya shall produce to Sprint the documents identified as entries 267(a), 269, 270, and 474 on its privilege log for its July 2, 2010 production **within 30 days of this Memorandum and Order**.  Avaya's request to redact irrelevant, unrelated matters from 269 and 270 is denied.

**IT IS FURTHER ORDERED THAT** Interested Party Avaya Inc.'s Motion for Review of the April 27, 2012 Special Master's Report and Recommendations on Privileged Documents (ECF No. 800) is granted.  For the reasons set forth herein, the Court rejects the Special Master's recommendations that log entries 55(a), 121,  and 307 be produced.

**IT IS FURTHER ORDERED THAT** Sprint and Avaya shall each bear their own costs related to the motions.

**IT IS FURTHER ORDERED THAT** all of the privilege recommendations not challenged or objected to by Sprint or Avaya in the Special Master's April 27, 2012 Report and Recommendations on Privileged Documents (ECF No. 786) are hereby adopted in full.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 29th day of October 2012.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

25