IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HIGH POINT SARL,

        Plaintiff and
        Counterclaim-Defendants,

v.                                      Case No. 09-2269-CM/DJW

SPRINT NEXTEL CORPORATION,
et al.,

        Defendants and
        Counterclaimants.

## MEMORANDUM AND ORDER

Pending before the Court are High Point's Motion for an Order Permitting Disclosure of Confidential Information to John Storch (ECF No. 805) and Sprint's Cross-Motion to Disqualify John Storch as an Expert for High Point SARL (ECF No. 819). Pursuant to the parties' First Amended Protective Order (ECF No. 498), High Point requests an order permitting it to disclose confidential materials produced in discovery to its technical expert John Storch. In response, Sprint has filed a motion to disqualify Mr. Storch as an expert for High Point. Sprint asserts that because Mr. Storch previously received confidential information relevant to the current litigation while working at a Sprint-affiliated company, he should be disqualified from serving as an expert or in any other capacity for High Point in this case. As explained below, the Court finds that Sprint has not shown that any confidential information Mr. Storch may have received while vice-president of a Sprint-affiliated company was privileged confidential information which would warrant his disqualification. Sprint's Cross-Motion to Disqualify John Storch is therefore denied, and High Point's Motion for an Order Permitting Disclosure of Confidential Information to John Storch is granted.

I.        **BACKGROUND FACTS**

High Point SARL (hereinafter "High Point") filed this patent infringement case against Sprint Nextel Corporation, Sprint Spectrum L.P., SprintCom, Inc., Sprint Communications Company L.P., Sprint Solutions, Inc., APC PCS, LLC, APC Realty and Equipment Company, LLC, and STC Two LLC (collectively referred to as "Sprint").  High Point alleges that Sprint's cellular CDMA telephone networks infringe upon four United States patents assigned to High Point.  Sprint's CDMA infrastructure equipment, and particularly its packetized backhaul transmission systems, are the focus of High Point's infringement contentions in this case.

The December 14, 2010 First Amended Protective Order ("Protective Order") (ECF No. 498) contains specific provisions with regard to disclosing material and information designated as "HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY" to independent experts or consultants. Paragraph 12(e) of the Protective Order allows the parties to disclose "HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY" designated material and information to any independent expert or consultant who

> is engaged by counsel of record in this action, whether or not such expert or consultant is paid directly by a party, and (2) is not regularly employed by or associated with a party hereto, other than by the producing party, provided however that disclosure to such persons shall be made only on the conditions set forth in paragraphs 16 below. [1]

Paragraph 16 of the Protective Order requires the parties to obtain a signed undertaking form from the expert or consultant in which he or she agrees to not disclose any confidential information.  The parties are also required to provide opposing counsel with the curriculum vitae of any such expert or consultant and an opportunity to object to the disclosure.  The Protective

---

[1] First Am. Protective Order (ECF No. 498) at 8-9, ¶ 12.

Order also sets out the time period and procedures for a party to object to the disclosure to the identified expert or consultant:

> No Confidential Materials shall be disclosed to such expert or consultant until after the expiration of a five (5) business day period commencing with the service of a copy of the proposed undertaking and curriculum vitae. If during that five (5) business day period opposing counsel makes an objection to such disclosure, then there shall be no disclosure of Confidential Materials to the expert or consultant pending resolution of the objection either by agreement of the parties or further order of the Court.[2]

On March 28, 2012, High Point notified Sprint that it had retained John Storch as an outside consultant and expert, and intended to disclose to him highly confidential technical information that had been produced by Sprint and others during discovery in this matter. On April 4, 2012, Sprint advised High Point that it objected to the disclosure of confidential information to Mr. Storch because he had access to certain confidential Sprint information during the course of his employment with Clearwire, a Sprint-affiliated entity. High Point then filed its motion for an order permitting disclosure of confidential information to Mr. Storch. In response, Sprint filed its motion to disqualify Mr. Storch as an expert for High Point.

## II.      MOTION TO DISQUALIFY JOHN STORCH AS EXPERT

Sprint contends that Mr. Storch should be disqualified from serving as an expert or in any other capacity for High Point in this case based upon his previously obtaining Sprint confidential information relevant to the technology at issue in this case. Sprint alleges that from 2004 through 2009, Mr. Storch was employed by Clearwire Corporation as a vice president responsible for operations, project management, construction and engineering. During that time period, Sprint and Clearwire Corporation entered into a letter of intent to jointly construct a nationwide broadband network based on WiMAX technology. Roughly a year later, Sprint and

---

[2] *Id.*

Clearwire Corporation announced plans to combine certain wireless businesses to create a new mobile broadband company. Sprint would own about 51% of the new company, which would be called "Clearwire." This new company would provide Sprint's mobile phone users access to improved wireless networks for a range of multimedia applications, such as live videoconferencing and recorded video.

Sprint claims that in connection with these projects, Clearwire employees, including Mr. Storch, were provided with Sprint's confidential information regarding, among other things, (1) Sprint's CDMA sites, including site-specific strategies; (2) Sprint's network coverage; (3) Sprint's backhaul analysis for various sites; and (4) Sprint services involving the routing of packetized transmissions over a network. Sprint alleges that the confidential information disclosed to Mr. Storch is related to its CDMA strategy, business decisions, and network equipment and is highly relevant to this case.  It argues that Mr. Storch should not be permitted to use the confidential information he obtained while working at a Sprint-affiliated company to support expert opinions supporting High Point's claims and contrary to Sprint's interests in this litigation.

High Point argues that Sprint fails to articulate a single reason why it would be prejudiced by Mr. Storch serving as High Point's expert and fails to identify how any of the purportedly confidential information, to which Mr. Storch allegedly had access while employed at Clearwire, could be used to Sprint's detriment in this litigation.   It argues that the evidence provided by Sprint in support of its motion to disqualify does not support Sprint's allegation that Mr. Storch had accesss to Sprint's CDMA strategy, business decisions and network equipment, which are at issue in this case.  Rather there is no evidence that the very limited information reflected in Sprint's exhibits relates to any issues in the case.  High Point also argues that the

4

nature of the alleged information to which Mr. Storch was exposed was not the type of "confidential information" that would warrant disqualification of Mr. Storch.  It argues that for purposes of disqualifying an expert, courts distinguish between confidential information that relates to purely technical or business information that is discoverable in litigation, and information that relates to confidential communications concerning legal strategies or other litigation-related issues that is privileged and not otherwise subject to discovery.

### A.      Legal Standard for Ruling on a Motion to Disqualify Expert Witness

Sprint and High Point generally agree that the Court should apply the commonly used two-prong test for disqualification of a non-attorney expert witness who previously had access to the opposing party's confidential information.[3]  Under that test, disqualification of an expert is warranted when the moving party can show: (1) that it had an objectively reasonable belief that it had a confidential relationship with the expert, and (2) that it disclosed confidential information to the expert that is relevant to the current litigation.[4]  The courts utilizing this approach base their authority to disqualify an expert on the "court's inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise might be breached, and promote public confidence in the legal system."[5]

Although the majority of courts considering the issue have applied some version of the two-prong test for disqualifying a non-attorney expert with a prior confidential relationship with

---

[3] *Excel-Jet, Ltd. v. United States*, No. 07-cv-02181, 2009 WL 1194936, at *2 (D. Colo. May 1, 2009); *Brett ex rel. Brett v. Hillerich & Bradsby Co.*, No. 99-cv-981-C, 2001 WL 36162670, at *1-2 (W.D. Okla. Oct. 5, 2001).

[4] *Excel-Jet*, 2009 WL 1194936, at *2.  *See also English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F. Supp. 1498, 1501-02 (D. Colo. 1993).

[5] *Excel-Jet*, 2009 WL 1194936, at *2 (citing *English Feedlot*, 833 F. Supp. at 1501; *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004)).

the adverse party, the Court was not able to locate any procedural or ethical rules, statutes, or controlling precedent from either the Supreme Court or Tenth Circuit mentioning, adopting, or endorsing the expert disqualification doctrine or the two-prong test applied by district courts.[6] To date, only the Ninth, Fifth, and Federal Circuit Courts of Appeal and a few state appellate courts have recognized the expert disqualification doctrine.[7]

   Despite the absence of Supreme Court or Tenth Circuit controlling precedent, the Court finds that the principles behind the expert disqualification doctrine support its application here in ruling on Sprint's motion to disqualify High Point's expert witness.  The Court agrees with the cases finding that federal courts have the inherent power to disqualify expert witnesses in certain circumstances to protect the integrity of the adversary process, protect privileges that might otherwise be breached, and promote public confidence in the legal system.[8]  One of those circumstances is where an expert is originally retained by one party to litigation, and the expert

----

   [6] *See generally* Kendall Coffey, *Inherent Judicial Authority and the Expert Disqualification Doctrine*, 56 Fla. L. Rev. 195, 196 (2004) (discussing the development of the expert disqualification doctrine as a distinctive jurisprudence not anchored upon the explicit terms of procedural rules, ethical strictures, or Supreme Court precedent).

   [7] *See Hanlon v. Sec'y of Health & Human Svcs.*, 191 F.3d 1344, 1350 (Fed. Cir. 1999) (commenting that disqualification of an expert is not mandated unless it is reasonable to conclude that the expert possessed confidential information that would prejudice the opposing party); *Koch Ref. Co. v. Jennifer L. Boudreaux M/V*, 85 F.3d 1178, 1181-82 (5th Cir.1996) (applying two-prong test for disqualification of expert, i.e., whether there was a reasonable expectation of confidentiality and received, and whether expert received or had reasonable access to the adverse party's confidential information); *Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996) (commenting favorably on without applying rules that other courts have applied in cases in which a party seeks disqualification of an expert witness for "switching sides"). *See also Formosa Plastics Corp., USA v. Kajima Int'l, Inc.*, 216 S.W.3d 436, 450 (Tex. App. 2006) (adopting two-part test for disqualification of an expert based on a prior relationship with adversary); *W. Va. ex rel. Billups v. Clawges*, 620 S.E.2d 162, 167 (W. Va. 2005) (finding no error in the lower court's adoption of the two-prong test for expert witness disqualification); *Mitchell v. Wilmore*, 981 P.2d 172, 175 (Colo. 1999) (applying two-prong test for disqualification of non-attorney expert).

   [8] *Hewlett-Packard,* 330 F. Supp. 2d at 1092; *Space Sys./Loral v. Martin Marietta Corp.*, No. 95-20122, 1995 WL 686369, at *2 (N.D. Cal. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991).

subsequently switches sides to consult as an expert for the other party. These cases are referred to as 'side-switching' cases, and form the most common basis for motions to disqualify.[9] Another situation where disqualification may be appropriate is where a party retains an expert witness who previously worked for or had a confidential relationship with the adversary and acquired confidential information during the course of that relationship.[10] In both cases, a conflict of interest may arise which may preclude the party from using the expert, depending on the nature and extent of the relationship and the exchange of confidential information between each party and the expert.[11]

The expert disqualification doctrine appears to be an extension of the legal principles for disqualification of an attorney. While attorneys have rules of professional conduct regarding conflicts of interest, those rules do not apply to non-attorney expert witnesses. Just as a former attorney's access to a party's privileged confidential information should result in that attorney's disqualification from serving as counsel for an adverse party, similar principles should be applied to non-attorney expert witnesses who have had a prior confidential relationship with and obtained pertinent privileged or confidential information through that relationship.

The expert disqualification doctrine has particular relevance in intellectual property cases, such as this one, where an expert's prior access to and knowledge of the opposing party's privileged or confidential information may prejudice the integrity of the judicial process. The

---

[9] *Wang Labs.,* 762 F. Supp. at 1248 ("To be sure, no one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention. This is a clear case for disqualification.").

[10] *Space Sys./Loral,* 1995 WL 686369, at *2.

[11] *Hansen v. Umtech Industrieservice Und Spedition, GBmbH*, No. 95-516 MMS, 1996 WL 622557, at *3 (D. Del. July 3, 1996).

Court is cognizant, however, that the indiscriminate disqualification of experts in intellectual property cases has potential for abuse.[12] Courts should be careful in disqualifying an expert based upon prior access to confidential information so as to minimize the risk of a party conflicting out experts, especially in cases where there may be only a limited number of experts in a particular field or with specialized scientific or technical expertise.

The Court will therefore apply the two-prong test in determining whether disqualification of Mr. Storch is appropriate under the facts presented here. Applying this test will require the Court to determine:  (1) Whether Sprint had a confidential relationship with Mr. Storch, and (2) Whether Sprint disclosed privileged or confidential information to Mr. Storch during that relationship that is relevant to the current litigation.[13]

**B.     Whether Disqualification of High Point's Expert is Appropriate**

**1.     Whether Sprint Had a Prior Confidential Relationship with Mr. Storch**

First, as the party seeking disqualification of High Point's expert witness, Sprint bears the burden[14] of demonstrating that it was reasonable for it to believe that a confidential relationship existed between it and Mr. Storch, [15] and, "if so, whether the relationship developed into a matter

---

[12] *English Feedlot*, 833 F. Supp. at 1505 ("Courts have also expressed concern that if experts are too easily subjected to disqualification, unscrupulous attorneys and clients may attempt to create an inexpensive relationship with potentially harmful experts solely to keep them from the opposing party.").

[13] *Excel-Jet*, 2009 WL 1194936, at *2;  *Space Sys./Loral*, 1995 WL 686369, at *2 (citing  *Wang Labs.,* 762 F. Supp. at 1248).

[14] While Sprint is correct that the First Amended Protective Order (ECF No. 498) places the burden on the party seeking the disclosure of confidential information to an expert or consultant, this does not change Sprint's burden in moving to disqualify Mr. Storch as an expert for High Point. The courts are generally in accord that the party seeking disqualification of an expert bears the burden of demonstrating that disqualification is appropriate. *Koch Ref.*, 85 F.3d at 1181.

[15] *Hewlett-Packard*, 330 F. Supp. 2d at 1093 (citing *Mayer v. Dell*, 139 F.R.D. 1, 3 (D.D.C. 1991)).

sufficiently substantial to make disqualification or some other judicial remedy appropriate."[16] Initially, a court must determine whether the party seeking disqualification and the expert had a relationship in which it would be reasonably expected that any communication between them would be maintained in confidence by the expert.[17]

The majority of expert disqualification cases can generally be grouped into two categories:  Experts who obtained confidential information while serving as a consultant or expert to the opposing party, or experts who obtained confidential information while serving as a former employee of the opposing party. A few courts have considered motions to disqualify experts who were neither consulted as experts nor were employees of the opposing party.[18] In *Dyna-Drill Technologies Inc. v. Conforma Clad Inc.*,[19] the court granted the defendant's motion to disqualify the plaintiff's expert who was an employee of the defendant's predecessor and was substantially involved in the development of the alleged trade secrets at issue in the case. Though the defendant never sought to retain the plaintiff's expert, the court found that because the expert was an employee of the defendant's predecessor and was substantially involved in the development of the alleged trade secrets at issue in the case, the defendant could reasonably expect that it had the type of relationship with the expert whereby certain communications would

---

[16] *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 278 (S.D. Ohio 1988).

[17] *In re Ambassador Grp., Inc., Litig.*, 879 F. Supp. 237, 243 (E.D.N.Y. 1994).

[18] *See Dyna-Drill Techs. Inc. v. Conforma Clad Inc.,* No. H-03-05599, 2005 WL 5979403 (S.D. Tex. May 16, 2005) (expert was employee of the defendant's predecessor company); *U.S. ex rel. Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab Sys., Inc.*, 994 F. Supp. 244, 249-50 (D.N.J. 1997) (expert was the first party's accountant during the time that the actions complained of allegedly occurred and the litigation was first instituted); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.,* No. 95 Civ. 8833(RPP), 2000 WL 42202, at *4 (S.D.N.Y Jan. 19, 2000) (expert was an outside consultant for the first party predating the litigation); *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 590-91 (D. Minn. 1986) (expert was a consulting engineer for the first party at the time he was retained as an expert for the other party).

[19] 2005 WL 5979403.

remain in confidence.  It further commented that "the confidential relationship would seem to be stronger between an employer and a long-time employee than between an employer and a sometime expert."[20]

In this case, Sprint contends that there is no dispute that a confidential relationship existed between it and Mr. Storch.  While Mr. Storch was employed at Clearwire, it was publicly disclosed that Sprint and Clearwire were parties to certain non-disclosure and confidentiality agreements with respect to certain confidential information disclosed during their negotiations. Mr. Storch's frequent access to Sprint's confidential information is, moreover, premised upon the existence of a confidential relationship. The existence of multiple agreements between Sprint and Clearwire incorporating confidentiality provisions and the ongoing and extensive confidential communications from Sprint to Clearwire and Mr. Storch show that Sprint is objectively reasonable in believing that a confidential relationship existed. In the Sprint-Clearwire 2008 transaction agreement, both companies committed that they each would

> hold, and will cause their respective Affiliates and Representatives to hold, in confidence . . . all confidential documents and information concerning any other Party or any Affiliate of another Party that has come into the possession or knowledge of the Receiving Party in the course of negotiating, entering into or performing this Agreement.[21]

Given that agreement, Sprint asserts that it correctly believed that it had a confidential relationship with Clearwire and, by extension, Clearwire's employee, Mr. Storch.

Mr. Storch is neither a former expert or consultant for Sprint, nor a former employee of Sprint. Instead, by all accounts, he was employed as vice president of operations, project management, construction, and engineering at the Sprint-affiliated company Clearwire. In that

---

[20] *Id.* at *1.

[21] May 7, 2008 Sprint and Clearwire Transaction Agreement, Ex. 7 to Sprint's Motion to Disqualify (ECF No. 820-9).

role, he was provided Sprint's confidential information while working on certain joint projects between Clearwire and Sprint. One of those projects was the construction of a nationwide broadband network based on WiMAX technology, a project that was ultimately not implemented. Mr. Storch received Sprint's confidential information in connection with his work on the Sprint-Clearwire projects.

High Point does not offer much argument to refute Sprint's contention that it had a confidential relationship with Mr. Storch while he was employed at Clearwire and working on joint projects with Sprint, one of which was a project to construct a national broadband network based on WiMAX technology. Sprint has made a sufficient showing that it had a reasonable belief that it had a confidential relationship with Clearwire at the time it disclosed confidential information to Mr. Storch. The Sprint-Clearwire 2008 transaction agreement further extends that confidential relationship to affiliates and representatives of Clearwire, which would include Mr. Storch in his capacity as one of its vice-presidents. Sprint has established that it had a prior confidential relationship with High Point's expert, Mr. Storch, at the time it disclosed confidential information to him.

### 2. Whether Disclosure of Sprint's Confidential Information to Mr. Storch Warrants Disqualification

Having established that Sprint had a confidential relationship with Mr. Storch, the Court must next determine whether, during that confidential relationship, Sprint disclosed privileged or confidential information that warrants the disqualification of Mr. Storch from serving as a technical expert or consultant to High Point in this case. Sprint argues that disqualification of Mr. Storch is warranted here because he received confidential information relevant to the technology at issue in this case. It urges the Court to follow the courts that have disqualified experts who have received confidential technical information wholly unrelated to issues of privileges. It

11

argues that disqualification of an expert is warranted when that expert receives the opposing party's non-privileged confidential technical or business information, and disqualification should not be limited to confidential information protected by the attorney-client privilege. Sprint cites several cases where courts have disqualified experts who gained technical confidential information concerning the patent or technology at issue in the litigation.[22]

Not surprising, High Point advances the opposite position. It contends that disqualification is not warranted where the expert only receives confidential information that relates to purely technical or business information that is discoverable in litigation. It argues that the nature of the alleged confidential information to which Mr. Storch was exposed is not the type of confidential information that would warrant his disqualification. High Point urges the Court to distinguish between confidential information that relates to purely technical or business information that is discoverable in litigation, and information that relates to confidential communications concerning legal strategies or other litigation-related issues that is privileged and not otherwise subject to discovery. High Point argues that such a distinction makes sense because a party's confidential business or technical information is subject to discovery in the ordinary course of litigation. If an expert has only been exposed to that type of information, the party seeking to retain that expert can obtain that same information through routine discovery, and therefore does not obtain any unfair or untoward litigation advantage by retaining the expert

---

[22] *See e.g., Oracle Corp. v. DrugLogic, Inc.*, No. C-11-00910 JCS, 2012 WL 2244305, at *7 (N.D. Cal. June 15, 2012) (disqualifying expert who had access to relevant technical information); *Lifewatch Serv. Inc. v. Braemer Inc.*, No. 09-cv-6001, 2010 WL 3909483, at *2 (N.D. Ill. Sept. 28, 2010) ("With regard to the second part of the test, courts have disqualified experts in patent infringement cases where the expert has gained confidential information concerning the patent or technology at issue in the litigation."); *Alien Tech. Corp. v. Intermec, Inc.*, No. 3:060-CV-51, 2007 WL 4261972, at *2 (D.N.D. Nov. 30, 2007) (disqualifying expert because, among other things, he was knowledgeable about plaintiff's "product line" and "future strategies"). *See also Brett,* 2001 WL 36162670, at *1 (excluding expert whose knowledge was "intertwined with the technology at issue"); *WesternGeco LLC v. Ion Geophysical Corp.,* No. 09-1827, 2010 WL 2266610, at *2 (S.D. Tex. June 2, 2010) (disqualifying former employee as expert).

that would warrant disqualification. According to High Point, it makes no difference, as a practical matter, whether the expert became aware of that information via discovery taken in the litigation or some other independent route, and there is no reason to disqualify the expert. By contrast, if the expert is exposed to confidential information relating to a party's litigation strategies, analysis of the strengths or weaknesses of the case, or other similar privileged or litigation-related confidential information, then an adverse party potentially would gain an unfair advantage by retaining the expert and thereby accessing information that would not be otherwise discoverable. In support of its argument, it cites to cases where courts have made such a distinction.[23]

Reviewing the parties' arguments, the Court is convinced of the merits of limiting disqualification of a party's expert to situations where the expert received privileged confidential communications or documents pertaining to litigation, which may reflect information subject to the work-product doctrine or attorney-client privilege.  The Court agrees with the line of cases making a distinction between confidential information that relates to purely technical or business information that is discoverable in litigation, and information that relates to confidential communications concerning legal strategies or other litigation-related issues that is privileged and not otherwise subject to discovery. For example, several courts in ruling on motions to disqualify expert have defined "confidential information" essentially as information "of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege."[24] These cases refer to confidential information

---

[23] *Koch Ref.* 85 F.3d at 1181-82; *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2006 WL 2845212, at *3 (N.D. Cal. Sept. 29, 2006); *Cherry Hill*, 994 F. Supp. at 252;  *Nikkal Indus., Ltd. v. Salton, Inc.,* 689 F. Supp. 187, 191 (S.D.N.Y. 1988).

[24] *JDS Uniphase*, 2006 WL 2845212, at *3;  *Hewlett-Packard*, 330 F. Supp. 2d at 1094; *Cherry Hill,* 994 F. Supp. at 248; *Paul*, 123 F.R.D. at 278; *Nikkal*, 689 F. Supp. at 191-92.

as including discussion of the party's "strategy in the litigation, the kinds of experts [the party] expected to retain, [the party's] view of the strengths and weaknesses of each side, the role of each of the [party's] experts to be hired and anticipated defenses."[25] At least one court has found that "communication based upon technical information as opposed to legal advice" is not considered privileged for purposes of disqualifying an expert.[26] "Unlike attorney-client communications, discussions between parties or counsel and experts do not carry the presumption that confidential information was exchanged."[27]

The Court therefore holds that disqualification of an expert—where the expert in question is neither a former expert or consultant nor a former employee of the party seeking disqualification—should be limited to situations where the expert received confidential information or communications concerning legal strategies or other litigation-related issues that would not otherwise be subject to discovery, as discussed in *Koch Refining Co. v. Boudreaux*.[28] As the expert disqualification doctrine derives from legal principles surrounding attorney conflicts of interest and cases where its purpose is to protect privileges such as the attorney-client privilege, this limitation seems appropriate.

In this case, Sprint claims that Mr. Storch received at least the following confidential information that warrants his disqualification from serving as an expert or consultant to High Point:

---

[25] *Mayer*, 139 F.R.D. at 4.

[26] *Nikkal,* 689 F. Supp. at 191-92 (declining to disqualify the defendant's expert witness as the record was void of any evidence that privileged communication was discussed).

[27] *Stencel v. Fairchild Corp.,* 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2001).

[28] 85 F.3d at 1181.

- "[I]nformation contained in a data warehouse concerning the engineering team and spectrum holdings of Sprint's Xohm business unit."

- Sprint's "frequency information" and "site-specific engineering information."

- A hard drive and CDs containing Sprint site development information.

- A backhaul analysis prepared by Sprint.

- Pricing information for Sprint services involving dedicated internet access over a network.

- An e-mail and spreadsheet reflecting Sprint's network design strategy for CDMA sites.

- A detailed map showing Sprint's estimated coverage for Northern California and Sprint's strategic considerations in that region.

Sprint has not argued that the technical information disclosed to Mr. Storch constituted litigation strategy or attorney work product, or otherwise falls within an attorney-client privilege. The nature of the confidential information described by Sprint also does not suggest that any of the information constitutes privileged confidential communications. The manner in which Mr. Storch received the information—through his employment with a Sprint-affiliated company working with Sprint on a joint project to construct a nationwide broadband network—makes it seem doubtful that Sprint would have disclosed confidential information or communications concerning legal strategies or other litigation-related issues that would not otherwise be subject to discovery.

Even if the Court adopted Sprint's position that disqualification of an expert is warranted when that expert receives the opposing party's non-privileged confidential technical or business information, the Court would not have found disqualification of Mr. Storch was warranted here.

While Sprint claims that it has submitted several examples of Mr. Storch's receipt of confidential information regarding the design, constituent equipment, and backhaul interconnections in Sprint's CDMA infrastructure network, a review of the sealed exhibits filed in support of its motion to disqualify do not support its claims. The Court sees evidence that Mr. Storch received a hard disk drive and CDs containing preliminary site development work for the joint Sprint-Clearwire WiMAX project (Exhibit 8); a spreadsheet containing the site name, latitude/longitude, and height of cell towers on existing iDEN/CDMA sites and a sample plot of cell tower coverage in Northern California (Exhibit 9); backhaul analysis for Clearwire assigned territories (Exhibit 10); and a draft agreement containing pricing services by Sprint involving dedicated internet access over a network (Exhibit 11).[29] The Court is not convinced that this confidential information that Sprint disclosed to Mr. Storch, while he was a vice president at the Sprint-affiliated company Clearwire, constitutes relevant technical information concerning the specific technology at issue in this lawsuit and that would warrant disqualifying Mr. Storch from serving in any capacity to High Point in this case.  Sprint has failed to show how information Mr. Storch may have seen would warrant his disqualification from serving as a technical consultant or expert to High Point in this case, which involves Sprint's CDMA infrastructure equipment. When compared to cases where disqualification of an expert has been granted, the manner in which Mr. Storch received the confidential information and the nature of the information allegedly disclosed is much too attenuated from the technology and issues in this case to warrant the drastic sanction of disqualification. Accordingly, Sprint's motion to disqualify John Storch as an expert witness for High Point in this litigation is denied.

---

[29] ECF No. 821.

**III.     MOTION FOR ORDER PERMITTING DISCLOSURE OF CONFIDENTIAL INFORMATION TO JOHN STORCH**

The Court next considers whether Mr. Storch should be permitted to view information designated as "Confidential Materials" under the parties' Protective Order.  High Point has filed a Motion for an Order Permitting Disclosure of Confidential Information to John Storch. It requests an order permitting it to disclose confidential materials, as defined in the Protective Order, produced in discovery to Mr. Storch.  In support of its motion, High Point states that it has retained Mr. Storch as an expert witness and he has agreed to abide by the terms of the Protective Order.

Sprint objects to allowing High Point to disclose confidential materials to Mr. Storch on the same grounds it asserted in support of its motion to disqualify him, namely that he previously obtained relevant Sprint confidential information during the course of his work on a nationwide broadband network projection while employed with a Sprint-affiliated company. For essentially the same reasons the Court denied Sprint's motion to disqualify Mr. Storch as an expert for High Point, the Court overrules Sprint's objections to allowing Mr. Storch access to its confidential information.

High Point has complied with the provisions of the Protective Order pertaining to experts and the Court has overruled Sprint's objections to allowing High Point to disclose confidential materials to Mr. Storch. High Point is therefore permitted to disclose Confidential Materials, as defined in the Protective Order, to its technical expert John Storch, subject to any other applicable terms and conditions of the Protective Order.

**IT IS THEREFORE ORDERED THAT** Sprint's Cross-Motion to Disqualify John Storch as an Expert for High Point SARL (ECF NO. 819) is denied.

**IT IS FURTHER ORDERED THAT** High Point's Motion for an Order Permitting Disclosure of Confidential Information to John Storch (ECF No. 805) is granted.  High Point is hereby permitted to disclose Confidential Materials, as defined in the parties' First Amended Protective Order, to High Point's technical expert John Storch, subject to any other applicable terms and conditions of the Protective Order.

IT IS SO ORDERED.

Dated this 8th day of February, 2013, at Kansas City, Kansas.

s/ David J. Waxse
David J. Waxse
U. S. Magistrate Judge

18